UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(TAMPA DIVISION)

OHIO SECURITY INSURANCE COMPANY     CASE NO. 8:19-CV-2416

    Plaintiff,

v.

CLEARCOMM OF TAMPA BAY, INC.

    Defendant.

_____/

## COMPLAINT

Ohio Security, Ohio Security Insurance Company ("Ohio Security") sues Clearcomm, Clearcomm of Tampa Bay, Inc. ("Clearcomm") and says:

### JURISDICTION AND PARTIES

1. This is an action for damages exceeding $75,000.00 excluding interest, costs, and fees. This court has jurisdiction of this matter and these parties pursuant to 28 USC §1332.

2. Ohio Security is an Ohio corporation authorized to conduct business in Florida whose principal place of business is in Keene, New Hampshire.

3. Clearcomm is a Florida for-profit corporation whose principal place of business is Largo, Florida.

4. Venue in this District is proper pursuant to 28 USC §1391.

### GENERAL ALLEGATIONS

5. On or about 2 November 2016, Ohio Security issued Clearcomm commercial policy number BZS (17) 57 61 64 46 ("BZS policy"). A copy of the BZS policy is attached as exhibit 1.

6.   The BZS policy covers locations throughout the United States, and carried with it an initial premium of $60,639.21, which grew to $77,885.66 during the life of the policy, of which only $48,773.10 was paid, leaving a balance of $29,112.76.

7.   On or about 2 November 2016, Ohio Security issued Clearcomm umbrella policy USO (17) 57 61 64 46 ("USO policy"). A copy of the USO policy is attached as exhibit 2.

8.   The USO policy carried an estimated premium of $4,733.00, later revised to $3,248.00, of which $2,029.00 has been credited, leaving a balance of $1,219.00.

9.   On or about 2 November 2016, Ohio Security issued Clearcomm workers compensation policy XWS (17) 57 61 64 46 ("XWS policy"). A copy of the XWS policy is attached as exhibit 3.

10. The XWS policy carried an estimated premium of $39,931.00, later revised to $115,525.00, of which $48,758.00 has been paid, leaving a balance of $66,767.00.

11. Ohio Security has demanded payment on all three policies, but has not received a response or payment. A copy of the statement is attached as exhibit 4.

12. Ohio Security performed all of the obligations required of it under the policies. All conditions precedent to this action have occurred or have been waived or performed.

### Count I
### Breach of Contract
### (BZS Policy)

13. Ohio Security realleges paragraphs 1-6 and 11-12 and incorporates them as if here reiterated.

14. The BZS policy is a contract of insurance that contains the respective rights and responsibilities of Ohio Security as the insurer and Clearcomm as the insured.

15. Clearcomm breached its contract by failing and refusing to pay the retrospective premium due.

16. As a result of Clearcomm's breach of contract, Ohio Security has been damaged.

WHEREFORE, Ohio Security, requests the entry of judgment against Clearcomm, for damages in a principal amount according to proof; interest; costs, and such further relief this court deems appropriate.

## Count II
### Breach of Contract
### (USO Policy)

17. Ohio Security realleges paragraphs 1-4, 7-8, and 11-12 and incorporates them as if here reiterated.

18. The USO policy is a contract of insurance that contains the respective rights and responsibilities of Ohio Security as the insurer and Clearcomm as the insured.

19. Clearcomm breached its contract by failing and refusing to pay the retrospective premium due.

20. As a result of Clearcomm's breach of contract, Ohio Security has been damaged.

WHEREFORE, Ohio Security, requests the entry of judgment against Clearcomm, for damages in a principal amount according to proof; interest; costs, and such further relief this court deems appropriate.

## Count III
### Breach of Contract
### (XWS Policy)

1. Ohio Security realleges paragraphs 1-4, and 9-112 and incorporates them as if here reiterated.

2. The XWS policy is a contract of insurance that contains the respective rights and responsibilities of Ohio Security as the insurer and Clearcomm as the insured.

3.  Clearcomm breached its contract by failing and refusing to pay the retrospective premium due.

4.  As a result of Clearcomm's breach of contract, Ohio Security has been damaged.

WHEREFORE, Ohio Security, requests the entry of judgment against Clearcomm, for damages in a principal amount according to proof; interest; costs, and such further relief this court

Dated 30 September 2019                    Respectfully submitted,


/s/ Michael R. Morris
Michael R. Morris
Florida Bar No. 70254
Morris & Morris, P.A.
Attorneys for Ohio Security Insurance Company
777 South Flagler Drive, Suite 800- West Tower
West Palm Beach, Florida 33401
Telephone Number 561.903.05
Facsimile Number 561.828.9351
E-mail address michael@morris.law

34  2992

BZS
57616446
11/02/2017

**INSURANCE INTERMEDIARIES INC**

**280 N HIGH ST STE 300**
**COLUMBUS, OH 43215-2535**



> We strive to produce a quality product for our agents to deliver to the policyholder. In doing so, we ask that you assist us by taking time to review the enclosed policy accuracy. If there are any modifications that need to be made, we request that you return this letter to the Business Center outlining what is in error.

Named Insured:        CLEARCOMM OF TAMPABAY, INC.

Corrections needed to be made on this policy (This form is not for routine change requests):

_____

_____

_____

_____

_____

_____

Thank you for your assistance.

Please send to:        *Liberty Mutual Insurance*

**ATTENTION: C.S.I. UNIT**

_____

CAU:

N O N E

Exhibit

1

Ohio Security v. Clearcomm

exhibitsticker.com

This page intentionally left blank.



**Liberty Mutual.**
**INSURANCE**

## Policyholder   Information



| **Named Insured & Mailing Address** | **Agent Mailing Address & Phone No.** |
|---|---|
| CLEARCOMM OF TAMPABAY, INC.<br>PO Box 10216<br>Largo, FL 33773 | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC<br>280 N HIGH ST STE 300<br>COLUMBUS, OH 43215-2535 |

### *Dear Policyholder:*

We know you work hard to build your business. We work together with your agent,
**INSURANCE INTERMEDIARIES INC      (800) 444-1744**
to help protect the things you care about. Thank you for selecting us.

**Your Commercial Documents**

**THIS IS NOT A BILL**

Enclosed are your insurance documents consisting of:

- Commercial Protector

To find your specific coverages, limits of liability, and premium, please refer to your Declarations page(s).

If you have any questions or changes that may affect your insurance needs, please contact your Agent at (800) 444-1744



**Reminders**

- Verify that all information is correct
- If you have any changes, please contact your Agent at (800) 444-1744
- In case of a claim, call your Agent or  1-800-362-0000

## You Need To Know

- **CONTINUED ON NEXT PAGE**

*To report a claim,  call  your Agent or  1-800-362-0000*

DS 70 20 01 08

**You Need To Know - continued**

- **NOTICE(S) TO POLICYHOLDER(S)**
  The Important Notice(s) to Policyholder(s) provide a general explanation of changes in coverage to your policy. The Important Notice(s) to Policyholder(s) is not a part of your insurance policy and it does not alter policy provisions or conditions. Only the provisions of your policy determine the scope of your insurance protection. It is important that you read your policy carefully to determine your rights, duties and what is and is not covered.

| FORM NUMBER | TITLE |
| --- | --- |
| NP 70 68 02 07 | Texas Important Contact Information |
| NP 70 81 06 01 | Florida Notice |
| NP 72 42 01 15 | Terrorism Insurance Premium Disclosure And Opportunity To Reject |
| NP 73 56 06 04 | Fighting Fraud Insurance |
| NP 74 06 01 06 | Flood Insurance Notice |
| NP 74 44 09 06 | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders |
| NP 74 48 01 16 | Important Notice  Notice to Policyholders Louisiana Fair Plan Emergency Assessment |
| NP 75 07 04 12 | To Our Florida Commercial Policyholders |
| NP 75 24 01 08 | South Carolina - Potential Eligibility for Windstorm Loss Mitigation Premium Discounts Advisory Notice |
| NP 89 69 11 10 | Important Policyholder Information Concerning Billing Practices |
| NP 90 22 09 10 | Ordinance or Law Notice - Virginia |
| NP 93 73 03 13 | Texas Period To File A Claim or Bring Legal Action Against Us Notice - Windstorm or Hail - Catastrophe |
| NP 98 20 01 15 | Jurisdictional Boiler And Pressure Vessel Inspections |
| NP 99 65 01 16 | Important Notice To Policyholders - Employment-Related Practice Exclusion |
| SNI42 02 04 15 | Texas Notice - Notification Of The Availability Of Loss Control Information/Services |

- This policy will be direct billed. You may choose to combine any number of policies on one bill with your billing account. Please contact your agent for more information.



**TEXAS**
**IMPORTANT NOTICE**
**IMPORTANT CONTACT INFORMATION**

To obtain information or make a complaint:

You may call Liberty Mutual Insurance's toll-free telephone number for information or to make a complaint at

**1-800-443-2534**

You may also write to Liberty Mutual Insurance at:

Liberty Mutual Insurance
P.O. Box 833906
Richardson, Texas 75083-3906

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at

**1-800-252-3439**

You may write the Texas Department of Insurance
P.O. Box 149104
Austin, TX 78714-9104
FAX# (512) 475-1771

Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim you should contact the agent or Liberty Mutual Insurance first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.

**TEXAS**
**AVISO IMPORTANTE**
**INFORMACION IMPORTANTE DE COMUNICARSE**

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de Liberty Mutual Insurance para informacion o para someter una queja al

**1-800-443-2534**

Usted tambien puede escribir a Liberty Mutual Insurance:

Liberty Mutual Insurance
P.O. Box 833906
Richardson, Texas 75083-3906

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas
P.O. Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771

Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o Liberty Mutual Insurance primero. Si no se resuelve la disputa, puede entonces comunicarse con el departmento (TDI).

**UNA ESTE AVISO A SU POLIZA:**

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

**NP 70 68 02 07**                                    **Page 1 of 1**

NP 70 81 06 01

# FLORIDA NOTICE

The following   statement  is added  to the policy:

Any questions  or problems  concerning  your policy,  please contact:

**A.**   Your  agent,

**B.**   Your  local Liberty  Mutual  Insurance  Servicing  Office

MAILING  ADDRESS:

P.O. Box  49130
Charlotte,  NC 28277-9130
704-759-7661

11/15/16

CLEARCOMM OF TAMPABAY, INC.

PO Box 10216
Largo, FL 33773

BZS  (17)    57 61 64 46
From 11/02/2016 To 11/02/2017



(800) 444-1744
INSURANCE INTERMEDIARIES INC

280 N HIGH ST STE 300
COLUMBUS, OH 43215-2535

## TERRORISM INSURANCE PREMIUM DISCLOSURE
## AND OPPORTUNITY TO REJECT

**This notice contains important information about the Terrorism Risk Insurance Act and its effect on your policy. Please read it carefully.**

### THE TERRORISM RISK INSURANCE ACT

The Terrorism Risk Insurance Act, including all amendments ("TRIA" or the "Act"), establishes a program to spread the risk of catastrophic losses from certain acts of terrorism between insurers and the federal government. If an individual insurer's losses from certified acts of terrorism exceed a specified deductible amount, the government will reimburse the insurer for a percentage of losses (the "Federal Share") paid in excess of the deductible, but only if aggregate industry losses from such acts exceed the "Program Trigger". An insurer that has met its insurer deductible is not liable for any portion of losses in excess of $100 billion per year. Similarly, the federal government is not liable for any losses covered by the Act that exceed this amount. If aggregate insured losses exceed $100 billion, losses up to that amount may be pro-rated, as determined by the Secretary of the Treasury.

The Federal Share and Program Trigger by calendar year are:

| Calendar Year | Federal Share | Program Trigger |
|---|---|---|
| 2015 | 85% | $100,000,000 |
| 2016 | 84% | $120,000,000 |
| 2017 | 83% | $140,000,000 |
| 2018 | 82% | $160,000,000 |
| 2019 | 81% | $180,000,000 |
| 2020 | 80% | $200,000,000 |

### MANDATORY OFFER OF COVERAGE FOR "CERTIFIED ACTS OF TERRORISM" AND DISCLOSURE OF PREMIUM

TRIA requires insurers to make coverage available for any loss that occurs within the United States (or outside of the U.S. in the case of U.S. missions and certain air carriers and vessels), results from a "certified act of terrorism" AND that is otherwise covered under your policy.

A "certified act of terrorism" means:

[A]ny act that is certified by the Secretary [of the Treasury ] , in consultation with the Secretary of Homeland Security, and the Attorney General of the United States.

**(i)** to be an act of terrorism;

**NP 72 42 01 15**                          © 2015 Liberty Mutual Insurance                          **Page 1 of 2**

**(ii)** to be a violent act or an act that is dangerous to -
   **(I)** human life;
   **(II)** property; or
   **(III)** infrastructure;

**(iii)** to have resulted in damage within the United States, or outside of the United States in the case of -
   **(I)** an air carrier (as defined in section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States); or
   **(II)** the premises of a United States mission; and

**(iv)** to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

## REJECTING TERRORISM INSURANCE COVERAGE - WHAT YOU MUST DO

We have included in your policy coverage for losses resulting from "certified acts of terrorism" as defined above.

THE PREMIUM CHARGE FOR THIS COVERAGE APPEARS ON THE DECLARATIONS PAGE OF THE POLICY AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT. If we are providing you with a quote, the premium charge will also appear on your quote as a separate line item charge.

IF YOU CHOOSE TO REJECT THIS COVERAGE, PLEASE CHECK THE BOX BELOW, SIGN THE ACKNOWLEDGMENT, AND RETURN THIS FORM TO THE ADDRESS BELOW: **Please ensure any rejection is received within thirty (30) days of the effective date of your policy**.

Before making a decision to reject terrorism insurance, refer to the Disclaimer for Standard Fire Policy States located at the end of this Notice.

☐ I hereby reject this offer of coverage. I understand that by rejecting this offer, I will have no coverage for losses arising from "certified acts of terrorism" and my policy will be endorsed accordingly.

| Policyholder/Applicant's   Signature | Print Name | Date Signed |
|---|---|---|
| | | |

| Named Insured | Policy Number |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | BZS (17)   57 61 64 46 |

Policy Effective/Expiration   Date
From 11/02/2016 To 11/02/2017

## IF YOU REJECTED THIS COVERAGE, PLEASE RETURN THIS FORM TO:

Attn:  Commercial Lines Division - Terrorism
PO Box 66400
London, KY 40742-6400

**Note:** Certain states (currently CA, GA, IA, IL, ME, MO, NY, NC, NJ, OR, RI, WA, WI and WV) mandate coverage for loss caused by fire following a "certified act of terrorism" in certain types of insurance policies. If you reject TRIA coverage in these states on those policies, you will not be charged any additional premium for that state mandated coverage.

**The summary of the Act and the coverage under your policy contained in this notice is necessarily general in nature. Your policy contains specific terms, definitions, exclusions and conditions. In case of any conflict, your policy language will control the resolution of all coverage questions. Please read your policy carefully.**

If you have any questions regarding this notice, please contact your agent.

# FIGHTING  INSURANCE  FRAUD

## INSURANCE  FRAUD COSTS YOU MONEY!

More than 10 percent of all insurance claims are fraudulent. Preventing insurance fraud will directly benefit you by lowering the insurance premiums you pay.

We are committed to putting a stop to insurance fraud. Help us by bringing this costly crime to a halt. If you are aware of an individual committing fraud, call the Texas Department of Insurance Fraud Hotline at **1-888-327-8818.**

We and the Texas Committee on Insurance Fraud are fighting insurance fraud through public education, communication and cooperation.



**NP 74 06 01 06**

# FLOOD INSURANCE  NOTICE

Unless  a Flood  Coverage  endorsement   is attached,  your  policy  does not provide  flood  coverage  and you will **not**  have coverage  for property   damage  from  floods  unless  you purchase  a separate  policy  for flood  insurance through  the Federal  Emergency  Management   Agency  (FEMA)  National  Flood  Insurance  Program.

If you  would  like more  information   about  obtaining   coverage  under  the National  Flood  Insurance  Program, please  contact  your agent.

NP 74 44 09 06

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

Please refer any questions you may have to your insurance agent.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© 2011 Liberty Mutual Insurance. All rights reserved.

NP 74 44 09 06     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     **Page 1 of 1**

# IMPORTANT  NOTICE
# NOTICE  TO  POLICYHOLDERS

## Louisiana FAIR Plan Emergency Assessment

**On the declarations  page of your policy, you will  see surcharges  added  to your  policy  as a result of assessments by the Louisiana Citizens Plan. Payment of the surcharge amounts are required to keep your policy in force.**

**Why you are being surcharged:**

The Louisiana  Citizens Plan administers  both the Coastal  Plan and the FAIR (Fair Access  to Insurance Requirements)  Plan. These  plans were  created  by the Louisiana  Legislature  in order to provide  property insurance  for citizens  of Louisiana  that are unable  to obtain  insurance  through  the voluntary  market.  In situations  where the Citizens  Plan pays out more  than they have charged,  they are allowed  to assess all insurers  who write  property  insurance  in the state in order to pay for excess  losses. In turn, insurers  may surcharge  all property  policies  in order to recoup  the amounts  they have been assessed.

If you want  to learn  more  about  the Citizens  plan, you can go to their  website  located  at http://www.lacitizens.com/     .

PLEASE REFER ANY QUESTIONS  YOU MAY HAVE TO YOUR INSURANCE  AGENT.

© 2015 Liberty Mutual Insurance

## TO OUR FLORIDA COMMERCIAL POLICYHOLDERS

The Florida legal code requires insurance companies to make guidelines for risk management plans available to their commercial insureds. To comply with this requirement, we have guidelines and a questionnaire which will be supplied to you upon request. These provisions apply to commercial property and casualty insurance. For the purpose of this law, commercial property insurance means coverage of commercial risks, excluding windstorm coverage.

In addition to the items listed above, safety consultation services are available. There is no charge for our safety consultation services. Safety consultations may result in safety or loss control recommendations that should be completed.

If you are interested in learning more about the program and our guidelines for it, complete the request below and mail it back to us. Sending this request back to us does not obligate you in any way.

I would like to know more about Risk Management. Please send me your guidelines and other related information, which includes a request for consultation services. I understand I am under no obligation.

Name (as shown on policy) _____

Policy Number _____ Effective Date _____

Name of Person to Contact _____

Contact Person's Title or Position _____

Mailing Address _____

_____

_____

Business Phone ( _____ ) _____

Authorized Signature _____

Mail to:

    Liberty Mutual Insurance
    Loss Prevention Department
    P.O. Box 49130
    Charlotte, NC 28277-9130

**BUSINESSOWNERS**
**NP 75 24 01 08**

# SOUTH CAROLINA - POTENTIAL ELIGIBILITY FOR WINDSTORM LOSS MITIGATION PREMIUM DISCOUNTS ADVISORY NOTICE TO POLICYHOLDERS

The purpose of this Notice is to advise you that you may be eligible for a reduction in the premium for your Businessowners insurance if certain steps have been taken to prevent or reduce damage form windstorm. The discounts, if any, would apply only to the portion of the premium attributable to wind coverage.

Contact you producer or insurer for additional information.

NP 89 69 11 10

# IMPORTANT  POLICYHOLDER  INFORMATION
## CONCERNING  BILLING  PRACTICES



**Dear Valued Policyholder:** This insert provides you with important information about our policy billing practices that may affect you. Please review it carefully and contact your agent if you have any questions.

**Premium Notice:** We will mail you a policy Premium Notice separately. The Premium Notice will provide you with specifics regarding your agent, the account and policy billed, the billing company, payment plan, policy number, transaction dates, description of transactions, charges/credits, policy amount balance, minimum amount, and payment due date. This insert explains fees that may apply to and be shown on your Premium Notice.

**Available Premium Payment Plans:**

- **Annual Payment Plan:** When this plan applies, you have elected to pay the entire premium amount balance shown on your Premium Notice in full. No installment billing fee applies when the Annual Payment Plan applies.

- **Installment Payment Plan:** When this plan applies, you have elected to pay your policy premium in installments (e.g.: quarterly or monthly installments - Installment Payment Plans vary by state). As noted below, an installment fee may apply when the Installment Payment Plan applies.

The Premium Payment Plan that applies to your policy is shown on the top of your Premium Notice. Please contact your agent if you want to change your Payment Plan election.

**Installment Payment Plan Fee:** If you elected to pay your premiums in installments using the Installment Premium Payment Plan, an installment billing fee applies to each installment bill. The installment billing charge will not apply, however, if you pay the entire balance due when you receive the bill for the first installment. Because the amount of the installment charge varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Dishonored Payment Fee:** Your financial institution may refuse to honor the premium payment withdrawal request you submit to us due to insufficient funds in your account or for some other reason. If that is the case, and your premium payment withdrawal request is returned to us dishonored, a payment return fee will apply. Because the amount of the return fee varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Late Payment Fee:** If we do not receive the minimum amount due on or before the date or time the payment is due, as indicated on your Premium Notice, you will receive a policy cancellation notice effective at a future date that will also reflect a late payment fee charge. Issuance of the cancellation notice due to non-payment of a scheduled installment(s) may result in the billing and collection of all or part of any outstanding premiums due for the policy period. Late Payment Fees vary from state to state and are not applicable in some states.

**Special Note:** Please note that some states do not permit the charging of certain fees. Therefore, if your state does not allow the charging of an Installment Payment Plan, Dishonored Payment or Late Payment Fee, the disallowed fee will not be charged and will not be included on your Premium Notice.

**EFT-Automatic Withdrawals Payment Option:** When you select this option, you will not be sent Premium Notices and, in most cases, will not be charged installment fees. For more information on our EFT-Automatic Withdrawals payment option, refer to the attached policyholder plan notice and enrollment sheet.

Once again, please contact your agent if you have any questions about the above billing practice information.

**Thank you for selecting us to service your insurance needs.**

# IMPORTANT NOTICE
## CONCERNING VIRGINIA CODE ANN. SECTION 38 2-2124
## BUILDING ORDINANCE OR LAW COVERAGE

To:  Our Policyholders

Coverage can now be added to your policy for increased costs to repair or replace damaged property due to the application of ordinances or laws that regulate construction, repair or demolition.

This additional coverage provides protection when a building damaged by a covered cause of loss must be repaired or replaced in a more costly manner because the type of construction used, when the building was built, does not comply with current building codes. Coverage can also be provided when ordinances or laws require the demolition of the damaged building, including undamaged portions, prior to rebuilding in compliance with current building codes.

**A.**  Description of Coverages Available:

**1.**  Coverage For Loss To The Undamaged Portion Of The Building - Covers loss in value of the undamaged portion of the building due to demolition pursuant to a building ordinance or law. This is not a separate limit of insurance. Building coverage is extended to include loss to the undamaged portion of the building.

**2.**  Demolition Cost Coverage - Covers the cost of demolishing and removing the debris of the undamaged portion of the building, if demolition is required by building ordinance or law. This coverage is not included in the Limit of Insurance applicable to the building.

**3.**  Increased Cost Of Construction - Covers the increased cost to repair, reconstruct or remodel damaged or undamaged parts of the building to comply with building ordinance or law, following damage to the building by a covered cause of loss. This coverage is not included in the Limit of Insurance applicable to the building.

**B.**  There are two Coverages available:

**1.**  Ordinance or Law provides the coverages described in **A.** above, subject to an exclusion of all costs associated with the enforcement of an ordinance or law pertaining to pollution cleanup or assessment.

**2.**  Ordinance or Law Coverage - Virginia (Broad) Endorsement provides the coverages described in **A.** above, but does not exclude all costs associated with the enforcement of an ordinance or law pertaining to pollutant cleanup or assessment. It excludes testing for the existence, concentration or effects of pollutants unless such testing is performed in the course of pollutant cleanup of the building and is required by the ordinance or law. Pollutant cleanup coverage includes cleanup of undamaged parts of a damaged building, if the ordinance or law so requires.

*This notice does not provide any coverage and should not be construed to replace any provision of your policy or endorsements. If there is any conflict between your policy or endorsements and this notice, the provisions of your policy and endorsements shall prevail.*

© 2012 Liberty Mutual Insurance. All rights reserved.

**NP 93 73 03 13**

## TEXAS  PERIOD  TO  FILE  A  CLAIM  OR  BRING LEGAL  ACTION  AGAINST  US  NOTICE - WINDSTORM  OR  HAIL - CATASTROPHE  AREA

This  Notice  does  not  form  a part  of  your  insurance  contract.  No coverage  is provided  by this Notice,  nor can it be construed  to replace  any provisions  of your policy  (including  its endorsements).  If there is any conflict between  this Notice  and the policy  (including  its endorsements),  **the provisions  of the policy  (including  its endorsements)  shall prevail.**

Carefully  read your policy,  including  the endorsements  attached  to your policy.

In accordance  with  Texas  Insurance  Code  Section  2301.010(f),  we are notifying  you that:



1.  With  respect  to loss or damage  in the State  of Texas  caused  by windstorm  or hail in the catastrophe area, as defined  by the Texas  Insurance  Code,  any claim  must  be filed  with  us not later than  one year  after  the date  of the loss or damage  that is the subject  of the claim,  except  that a claim  may be filed  after  the first  anniversary  of the date  of the loss or damage  for good  cause  shown  by the person  filing  the claim;  and

2.  Any  legal  action  brought  against  us under  the policy  for loss or damage  in the State  of Texas caused  by windstorm  or hail in the catastrophe  area, as defined  by the Texas  Insurance  Code,  must be brought  within  the earlier  of the following:

    a.  Two years  and one day from  the date  we accept  or reject  the claim;  or

    b.  Three years  and one day from  the date  of the loss or damage  that is the subject  of the claim.

©  2013 Liberty Mutual Insurance. All rights reserved.

**NP 93 73 03 13**          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          **Page 1 of 1**

## JURISDICTIONAL  BOILER  AND  PRESSURE  VESSEL  INSPECTIONS

Most jurisdictions  (cities or states) are governed  by laws and regulations  that require  owners of boilers  and pressure  vessels to have their equipment  inspected  on a routine  basis. Jurisdictions  require that equipment is installed  and operated  according  to these regulations,  and it is the equipment  breakdown  engineering inspector's  responsibility  to verify the equipment  complies  with all requirements.

Liberty  Mutual  Equipment  Breakdown  is a National  Board  Accredited  Authorized  Inspection  Agency.  This designation  is recognized  by authorities  having  jurisdictions  in the U.S. & provinces  of Canada and gives Liberty  Mutual  commissioned  inspectors  the ability  to perform  jurisdictionally  required  inspection  on boilers and pressure  vessels at insured  locations.  We have field inspectors  strategically  located throughout  the U.S. to perform  boiler and pressure  vessel inspection  for our customers  and clients.

**To request a Jurisdictional  Inspection  please:**

- **Call the LMEB Hotline (877) 526-0020**

**Or**

- **Email your request to LMEBInspections@Libertymutual.com**

The assigned  EB Risk Engineer  will  call  to schedule  within  24 - 48 hours.  When requesting  an inspection please include  the following:

- Current  Policy  Number

- Location  Address

- Contact  Name

- Contact  Phone Number  and/or Email Address

©  2015 Liberty Mutual Insurance

NP 99 65 01 16

# IMPORTANT NOTICE TO POLICYHOLDERS - EMPLOYMENT-RELATED PRACTICES EXCLUSION



Dear Valued Policyholder,

Thank you for selecting us as your carrier for your commercial insurance. This notice contains a brief summary of material (or significant) coverage changes made to your policy.

Please read your policy and review your declarations page for complete coverage information. No coverage is provided by this notice, nor can it be construed to replace any provisions of your policy. If there are discrepancies between your policy and this notice, the provisions of the policy shall prevail.

Should you have questions after reviewing the changes outlined below, please contact your independent agent. Thank you for your business.

**CLARIFICATION OF COVERAGE:**

If not already included on your expiring policy, then Employment-Related Practices Exclusion (BP 04 17 or BP 04 60) has been added to your renewal policy.

If you elected Employment-Related Practices Liability Coverage (BP 82 46), this exclusion form does not reduce coverage under your policy, but clarifies that Employment Related Practices exposures are covered under BP 82 46.

SNI 42 02 04 15

# TEXAS NOTICE - NOTIFICATION  OF THE AVAILABLITY OF
# LOSS CONTROL INFORMATION   SERVICES

We are committed  to providing  loss control  information/services,   at no charge, to Texas commercial  auto-mobile  liability,  general  liability  and professional  liability  policyholders  in an effort  to prevent and reduce potential  claims  and losses.

To obtain  further  information   about these services,  please contact  our Risk Control  Consulting  Center at 1 866 757 7324 or email  RCConsultingCenter@LibertyMutual.com.

© 2015 Liberty Mutual Insurance.

**Liberty Mutual.**
INSURANCE

*Coverage Is Provided In*
Ohio Security Insurance Company

**9450 Seward Road, Fairfield, Ohio 45014**

**Commercial   Protector   Common
Policy   Declarations**

Policy Number:
**BZS (17)  57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

| Named Insured & Mailing Address | Agent Mailing Address & Phone No. |
|---|---|
| CLEARCOMM OF TAMPABAY, INC.<br>PO Box 10216<br>Largo, FL 33773 | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC<br>280 N HIGH ST STE 300<br>COLUMBUS, OH 43215-2535 |

**Named Insured Is:** CORPORATION

**Named Insured Business Is:** CELL PHONE STORE

*In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.*

## SUMMARY  OF COVERAGE PARTS AND CHARGES

These Declarations together with the Businessowners Coverage Form (and other applicable forms and endorsements, if any, issued to form a part of them) complete this policy.

| COVERAGE PART | CHARGES |
|---|---|
| **Commercial Protector** | **$60,539.21** |

*Total Charges for all of the above coverage parts:*   **$60,539.21**
*Certified Acts of Terrorism Coverage:*   *$301.00*   **(Included)**

*Note: This is not a bill*

## IMPORTANT  MESSAGES

- Equipment Breakdown Enhancement Is Included - See Policy Forms and Endorsements summary

| Servicing Office<br>and Issue Date | Ohio Regional Office<br>11/15/16 | |
|---|---|---|
| | | Authorized Representative |

*To report a claim,  call your Agent or  1-800-362-0000*

**DS 70 21 01 08**

# Liberty Mutual. INSURANCE

*Coverage is Provided In*
Ohio Security Insurance Company

**Common Policy Declarations**

**Policy Number**
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

| **Named Insured** | **Agent** |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## OTHER NAMED INSUREDS

See Named Insured Endorsement DS8804

## SUMMARY OF LOCATION(S) AND PREMIUM(S)

| | | |
|---|---|---|
| 0001 | 3909 14th St NW, Washington, DC 20011-5438 | **$1,472.00** |
| 0002 | 2305 Benning Rd NE, Washington, DC 20002-4826 | **$1,337.00** |
| 0003 | 1346 Good Hope Rd SE, Washington, DC 20020-6910 | **$1,337.00** |
| 0004 | 1410 N Capitol St NW 1sf Flr, WASHINGTON, DC 20002 | **$1,493.00** |
| 0005 | 1903A Michigan Ave NE, Washington, DC 20018-3334 | **$1,337.00** |
| 0006 | 3232 Georgia Ave NW Suite102, WASHINGTON, DC 20010 | **$1,185.00** |
| 0007 | 6638 Reisterstown Rd Ste 12, Baltimore, MD 21215-2305 | **$479.00** |
| 0008 | 7730 Wise Ave, Dundalk, MD 21222-3200 | **$378.00** |
| 0009 | 6846 Liberty Rd, RANDALLSTOWN, MD 21133 | **$405.00** |
| 0010 | 5403 East Dr, Arbutus, MD 21227-2605 | **$405.00** |
| 0011 | 7000 Arundel Mills Circle 55, HANOVER, MD 21076 | **$368.00** |
| 0012 | 1134 S Charles St, Baltimore, MD 21230-4240 | **$546.00** |
| 0013 | 10300 Little Patuxent Parkway 65, COLUMBIA, MD 21044 | **$368.00** |
| 0014 | 7553 Ritchie Hwy, Glen Burnie, MD 21061-3716 | **$405.00** |
| 0015 | 6000 Greenbelt Rd Ste 52, Greenbelt, MD 20770-1018 | **$368.00** |
| 0016 | 3222 Greenmount Ave, Baltimore, MD 21218-3438 | **$546.00** |
| 0017 | 229 N Howard St, Baltimore, MD 21201-3555 | **$546.00** |
| 0018 | 8610 Washington Blvd Ste 106, Jessup, MD 20794-9601 | **$522.00** |
| 0019 | 400 West Lexington St E LM 10/11, BALTIMORE, MD 21201 | **$546.00** |

In witness whereof, we have caused this policy to be signed by our authorized officers.

Mark Touhey
Secretary

Paul Condrin
President

**To report a claim, call your Agent or 1-800-362-0000**
DS 70 21 11 16

**Liberty Mutual.**
INSURANCE

*Coverage is Provided In*
Ohio Security Insurance Company

**9450 Seward Road, Fairfield, Ohio 45014**

**Commercial Protector Common Policy Declarations**

*Policy Number*
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time at Insured Mailing Location*

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 <br> INSURANCE INTERMEDIARIES INC |

## SUMMARY OF LOCATION(S) AND PREMIUM(S)  - CONTINUED

| | |
|---|---|
| 0020 5138 Park Heights Ave, Baltimore, MD 21215-5817 | *$546.00* |
| 0021 114 E Patapsco Ave, Brooklyn, MD 21225-1745 | *$546.00* |
| 0022 1640-1642 Pennsylvania Ave, Baltimore, MD 21217-3115 | *$546.00* |
| 0023 6901 Security Blvd Ste 885, Windsor Mill, MD 21244-8415 | *$368.00* |
| 0024 41 Shipping Pl Ste 1ST, Dundalk, MD 21222-4393 | *$522.00* |
| 0025 10610 Baltimore Ave Unit B, Beltsville, MD 20705-2142 | *$405.00* |
| 0026 8200 Perrry Hall Blvd 5517-5518, NOTTINGHAM, MD 21236 | *$368.00* |
| 0027 7387A Baltimore-Annaplois Blvd, Glen Burnie, MD 21061-3222 | *$730.00* |
| 0028 224 N Eutaw St, Baltimore, MD 21201-1709 | *$546.00* |
| 0029 2463 Chillum Rd A-15, HYATTSVILLE, MD 20782 | *$405.00* |
| 0030 950 Largo Town Center Dr No 2, UPPER MARLBORO, MD 20774 | *$405.00* |
| 0031 14312 Spring Hill Dr, Spring Hill, FL 34609-5263 | *$1,012.00* |
| 0032 1801 NW Us Highway 19, Crystal River, FL 34428-6133 | *$1,024.00* |
| 0033 4548 S Suncoast Blvd, Homosassa, FL 34446-1103 | *$1,072.00* |
| 0034 210 US HWY 41 S, INVERNESS, FL 34450 | *$1,072.00* |
| 0035 5480 Spring Hill Dr, Spring Hill, FL 34606-4559 | *$1,401.00* |
| 0036 8482 Lockwood Ridge Rd, Sarasota, FL 34243-2920 | *$1,072.00* |
| 0037 4033 Mariner Blvd, Spring Hill, FL 34609-2467 | *$1,072.00* |
| 0038 11051 Spring Hill Dr, Spring Hill, FL 34608-5049 | *$1,401.00* |
| 0039 3780 Tampa Rd, Oldsmar, FL 34677-3041 | *$1,072.00* |
| 0040 3386 Tampa Rd, Palm Harbor, FL 34684-3425 | *$1,072.00* |
| 0041 6581 102nd Ave, PINELLAS PARK, FL 33782 | *$1,072.00* |
| 0042 10091 Us Highway 19, Port Richey, FL 34668-3742 | *$1,072.00* |
| 0043 1611 SE Us Highway 19, Crystal River, FL 34429-4830 | *$1,171.00* |
| 0044 4385 Commercial Way, Weeki Wachee, FL 34606-1963 | *$2,096.00* |
| 0045 1100 N Tuttle Ave Unit 4, Sarasota, FL 34237-3012 | *$1,032.00* |
| 0046 6224 Commercial Way, Weeki Wachee, FL 34613-6325 | *$1,072.00* |

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 21 11 16**

**Liberty Mutual.**
INSURANCE

Coverage is Provided In
Ohio Security Insurance Company

**9450 Seward Road, Fairfield, Ohio 45014**

**Commercial Protector Common Policy Declarations**

Policy Number
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

| **Named Insured** | **Agent** |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF LOCATION(S) AND PREMIUM(S) - CONTINUED

| | |
|---|---|
| 0047 36948 State Road 54, Zephyrhills, FL 33541-6915 | *$1,072.00* |
| 0048 3023 Wade Hampton Blvd, Taylors, SC 29687-2700 | *$849.00* |
| 0049 201 Mauldin St, Greenville, SC 29601 | *$458.00* |
| 0050 1779 Woodruff Rd SteB, GREENVILLE, SC 29607 | *$458.00* |
| 0051 1170 Woodruff Rd, Greenville, SC 29607-4154 | *$458.00* |
| 0052 609 White Horse Rd, Greenville, SC 29605-3531 | *$409.00* |
| 0053 704 Easley Bridge Rd, Greenville, SC 29611-5124 | *$458.00* |
| 0054 2501 Paxton St, Harrisburg, PA 17111-1034 | *$1,037.00* |
| 0055 921 N 3rd St, Harrisburg, PA 17102-2064 | *$497.00* |
| 0056 4600 Jonestown Rd, Harrisburg, PA 17109-6214 | *$446.00* |
| 0057 910 Great Bridge Blvd, Chesapeake, VA 23320-6642 | *$601.00* |
| 0058 810 High St, Portsmouth, VA 23704-3334 | *$1,190.00* |
| 0059 43 Hidenwood Shopping Ctr, Newport News, VA 23606-2200 | *$576.00* |
| 0060 1075 George Washington Hwy S, Chesapeake, VA 23323-6339 | *$601.00* |
| 0061 4200 Portsmouth Blvd, Chesapeake, VA 23321-2100 | *$601.00* |
| 0062 171 W Ocean View Ave, Norfolk, VA 23503-1502 | *$615.00* |
| 0063 1241 Frederick Blvd, Portsmouth, VA 23707-4124 | *$601.00* |
| 0064 404 E High St, Carlisle, PA 17013-2606 | *$663.00* |
| 0065 4702 Carlisle Pike Ste 28, Mechanicsburg, PA 17050-3099 | *$497.00* |
| 0066 570 W Washington St, Greenville, SC 29601-1923 | *$409.00* |
| 0067 9125 Riggs Rd, Adelphi, MD 20783-1637 | *$405.00* |
| 0068 2230 Veirs Mill Rd, Rockville, MD 20851-1827 | *$405.00* |
| 0069 1052 MAIDEN CHOICE LANE, ARBUTUS, MD 21227 | *$405.00* |
| 0070 5284 Randolph Rd, Rockville, MD 20852-2116 | *$405.00* |
| 0071 4739 Westland Blvd, Arbutus, MD 21227-1320 | *$321.00* |
| 0072 820 Largo Center Dr, Upper Marlboro, MD 20774-3705 | *$405.00* |
| 0073 9 W Patapsco Ave, Baltimore, MD 21225-1604 | *$546.00* |

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 21 11 16**

**Liberty Mutual.** INSURANCE

*Coverage is Provided In*
Ohio Security Insurance Company

9450 Seward Road, Fairfield, Ohio 45014

Commercial  Protector  Common
Policy  Declarations

*Policy Number*
**BZS   (17)  57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY  OF LOCATION(S) AND PREMIUM(S)  - CONTINUED

| | |
|---|---|
| 0074 6776 Reisterstown Rd, Baltimore, MD 21215-2346 | *$546.00* |
| 0075 3765 Old Court Rd, Baltimore, MD 21208-3902 | *$405.00* |
| 0076 801 Hungerford Dr, Rockville, MD 20850-1727 | *$405.00* |
| 0077 807 Bowman St, Lebanon, PA 17046-8430 | *$497.00* |
| 0078 2701 Macarthur Rd, Whitehall, PA 18052-3632 | *$497.00* |
| 0079 1600 Lincoln Way E Unit C, Chambersburg, PA 17202-3346 | *$528.00* |
| 0080 2429 Easton-Nazareth Road, EASTON, PA 18045 | *$528.00* |
| 0081 1200 Market St Unit 368, Lemoyne, PA 17043-1417 | *$547.00* |
| 0082 1604 S 4th St, Allentown, PA 18103-4922 | *$497.00* |
| 0083 9846 Liberty Rd, Randallstown, MD 21133-2007 | *$405.00* |
| 0084 5562 Silver Hill Rd, District Heights, MD 20747-1104 | *$405.00* |
| 0085 900 E Mccart St, Krum, TX 76249-7165 | *$391.00* |
| 0086 4428 Youree Dr, Shreveport, LA 71105-3621 | *$420.00* |

## POLICY  FORMS  AND ENDORSEMENTS

This section lists the Forms and Endorsements for your policy. Refer to these documents as needed for detailed
information concerning your coverage.

| FORM NUMBER | TITLE |
|---|---|
| BP 00 03 07 13 | Businessowners Coverage Form |
| BP 01 18 11 14 | Texas Changes |
| BP 01 21 03 15 | South Carolina Changes |
| BP 01 30 03 12 | Louisana Changes |
| BP 01 32 10 15 | Virginia Changes |
| BP 01 42 03 15 | Pennsylvania Changes |
| BP 01 59 08 08 | Water Exclusion Endorsement |
| BP 01 64 01 15 | Maryland Changes |
| BP 01 82 07 02 | District of Columbia Changes |
| BP 01 91 07 02 | Pennsylvania Notice |
| BP 03 03 03 16 | Florida Changes |

*To report a claim,  call your Agent or  1-800-362-0000*

**DS 70 21 11 16**

**Liberty Mutual.** INSURANCE

*Coverage Is Provided In*
Ohio Security Insurance Company

**9450 Seward Road, Fairfield, Ohio 45014**

**Commercial Protector Common Policy Declarations**

*Policy Number*
**BZS   (17)  57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time at Insured Mailing Location*

| **Named Insured** | **Agent** |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## POLICY FORMS AND ENDORSEMENTS - CONTINUED

This section lists the Forms and Endorsements for your policy. Refer to these documents as needed for detailed information concerning your coverage.

| FORM NUMBER | TITLE |
|---|---|
| BP 03 11 02 12 | Florida - Sinkhole Loss Coverage |
| BP 03 12 01 06 | Windstorm or Hail Percentage Deductibles |
| BP 03 12 01 10 | Windstorm or Hail Percentage Deductibles |
| BP 03 16 01 10 | South Carolina Windstorm or Hail Percentage Deductibles |
| BP 04 02 07 13 | Additional Insured - Managers or Lessors of Premises |
| BP 04 04 01 06 | Hired Auto and Non-Owned Auto Liability |
| BP 04 04 01 10 | Hired Auto and Non-Owned Auto Liability |
| BP 04 17 01 10 | Employment - Related Practices Exclusion |
| BP 04 51 07 13 | Additional Insured - Owners, Lessees Or Contractors - With Additional Insured Required In Construction Contract |
| BP 04 97 01 06 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |
| BP 05 23 01 15 | Cap On Losses From Certified Acts Of Terrorism |
| BP 05 77 01 06 | Fungi or Bacteria Exclusion (Liability) |
| BP 05 90 01 06 | Fungi or Bacteria Exclusion (Liability) |
| BP 12 03 01 10 | Loss Payable Clauses |
| BP 12 16 07 02 | Virginia - Effective Time Changes - Replacement of 12 Noon |
| BP 12 17 07 02 | Virginia Changes - Time Period |
| BP 14 88 07 13 | Primary And Noncontributory - Other Insurance Condition |
| BP 15 04 05 14 | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability - With Limited Bodily Injury Exception |
| BP 17 02 07 13 | Condominium Commercial Unit-Owners Coverage |
| BP 70 02 01 01 | General Endorsement |
| BP 79 74 02 08 | Amendment of Pollution Exclusion (Premises) |
| BP 79 74 07 13 | Amendment of Pollution Exclusion (Premises) |
| BP 79 96 07 10 | Businessowners Liability Extension Endorsement |
| BP 79 96 07 13 | Businessowners Liability Extension Endorsement |
| BP 79 96 09 16 | Businessowners Liability Extension Endorsement |
| BP 80 79 01 07 | Texas Equipment Breakdown Amendatory Endorsement |
| BP 81 15 03 11 | Exclusion - Asbestos |
| BP 81 18 01 07 | Medical Expense At Your Request Endorsement |
| BP 82 37 08 15 | Equipment Breakdown Coverage Endorsement |

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 21 11 16**

**Liberty Mutual.**
INSURANCE

*Coverage Is Provided In*
Ohio Security Insurance Company

**9450 Seward Road, Fairfield, Ohio 45014**

**Commercial Protector Common Policy Declarations**

*Policy Number*
**BZS   (17)  57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**

*12:01 am Standard Time at Insured Mailing Location*

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 INSURANCE INTERMEDIARIES INC |

## POLICY FORMS AND ENDORSEMENTS - CONTINUED

This section lists the Forms and Endorsements for your policy. Refer to these documents as needed for detailed information concerning your coverage.

| FORM NUMBER | TITLE |
|---|---|
| BP 82 85 07 13 | Virginia - Businessowners Liability Extension Endorsement |
| BP 88 02 06 09 | Limitation - Time Element Coverage (Windstorm or Hail) |
| BP 88 04 03 12 | Exclusion - Professional Services |
| BP 88 04 03 14 | Exclusion - Professional Services (Real Estate Agents, Insurance Agents, Travel Agents, Financial Services, Computer Software, Insurance Operations) |
| BP 88 04 06 09 | Exclusion - Professional Services |
| BP 88 12 03 14 | Data Compromise Coverage |
| BP 88 16 06 09 | Business Income Changes - 24 Hour Time Period |
| BP 88 19 07 10 | Businessowners Property Endorsement |
| BP 88 19 07 13 | Businessowners Property Endorsement |
| BP 88 19 09 16 | Businessowners Property Endorsement |
| BP 88 55 07 15 | Virginia Changes Amendment |
| BP 88 77 07 13 | Identity Theft Administrative Services and Expense Coverage |
| BP 88 78 07 13 | Business Personal Property Limit - Automatic Increase |
| BP 88 90 03 14 | CyberOne Coverage |
| BP 89 03 08 15 | Maryland Equipment Breakdown Coverage Endorsement |
| BP 89 08 06 16 | Louisiana Uninsured Motorists Coverage (Includes Underinsured Motorist) - Bodily Injury |
| NP 89 48 10 13 | Louisiana - Uninsured/Underinsured Motorists Bodily Injury Coverage Form |

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 21 11 16**

This page intentionally left blank.

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Policy Declarations**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF LIMITS AND CHARGES



| Businessowners Liability Limits of Insurance | DESCRIPTION | LIMIT |
|---|---|---|
| | Liability and Medical Expenses - Occurrence | 1,000,000 |
| | Aggregate Limits of Insurance | |
| |     Products-Completed Operations | 2,000,000 |
| |     Other than Products-Completed Operations | 2,000,000 |
| | Broadened Coverage For Damage To Premises Rented To You | 1,000,000 |
| | Medical Expenses (Any One Person) | 15,000 |

| Explanation of Charges | DESCRIPTION | PREMIUM |
|---|---|---|
| | Businessowners Location(s) Total | $59,674.00 |
| | Businessowners Other Coverage(s) Total | $533.00 |
| | FL Emergency Management, Preparedness & Assistance Trust Fund Surcharge | $4.00 |
| | FL Fire College Trust Fund Assessment | $19.82 |
| | LA FAIR Plan 2005 Emergency Assessment | $7.39 |
| | Certified Acts of Terrorism Coverage | $301.00 |

*Total Charges:* $60,539.21

*Note: This is not a bill*

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 22 01 08**

11/15/16    57616446    N0164234    560    OCAOPPNO    AGENT COPY    005687    PAGE 29 OF 376

# Liberty Mutual. INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

BZS (17) 57 61 64 46

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION

**0001   3909 14th St NW, Washington, DC 20011-5438**

| **Property Characteristics** | **Description:** |
|---|---|
| | **Construction:** Masonry Non-Combustible |

| **Business Personal Property Coverage** | **Occupancy:** Phone Stores - No Auto Installation - Retail | |
|---|---|---|
| | **DESCRIPTION** | |
| | Limit of Insurance | **$60,000** |
| | **Covered Causes of Loss** | |
| | Special Form | |
| | Deductible | **$1,000** |
| | Deductible - Windstorm or Hail | **5%** |
| | Automatic Increase Business Personal Property | **2%** |
| | *Premium* | *$1,337.00* |

| **Additional Insured** | **DESCRIPTION** | |
|---|---|---|
| | **Managers or Lessors of Premises** | |
| | See Endorsement | |
| | *Premium* | *$135.00* |

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual. INSURANCE**

Coverages Provided by:
Ohio Security Insurance Company

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 <br> INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

**0002    2305 Benning Rd NE, Washington,  DC 20002-4826**

**Property Characteristics**

Description:

Construction: Masonry Non-Combustible

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | **$60,000** |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | **$1,000** |
| Deductible - Windstorm or Hail | **5%** |
| Automatic Increase Business Personal Property | **2%** |
| *Premium* | *$1,337.00* |

**0003    1346 Good Hope Rd SE, Washington,  DC 20020-6910**

**Property Characteristics**

Description:

Construction: Masonry Non-Combustible

*To report a claim,  call your Agent or  1-800-362-0000*

**DS 70 23 01 08**

## Liberty Mutual. INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
BZS (17) 57 61 64 46
Policy Period:
From 11/02/2016 To 11/02/2017
12:01 am Standard Time
at Insured Mailing Location

### Commercial Protector
### Declarations Schedule

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

Continuation of 0003 1346 Good Hope Rd SE, Washington, DC 20020-6910

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$1,337.00* |

0004   1410 N Capitol St NW 1sf Flr, WASHINGTON, DC 20002

**Property Characteristics**

Description:

**Construction:** Joisted Masonry

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

Coverage Is Provided In:
Ohio Security Insurance Company

**Liberty Mutual.**
INSURANCE

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0004 1410 N Capitol St NW 1sf Flr, WASHINGTON, DC 20002*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| | *Premium* $1,493.00 |

---

*0005  1903A Michigan Ave NE, Washington, DC 20018-3334*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0005 1903A Michigan Ave NE, Washington, DC 20018-3334*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| **Premium** | **$1,337.00** |

*0006   3232 Georgia Ave NW Suite102,   WASHINGTON, DC 20010*

**Property
Characteristics**

**Description:**

**Construction:** Fire Resistive

*To report a claim,  call  your Agent or  1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0006 3232 Georgia Ave NW Suite102, WASHINGTON, DC 20010*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| **DESCRIPTION** | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| **Premium** | **$1,185.00** |

*0007 6638 Reisterstown Rd Ste 12, Baltimore, MD 21215-2305*

**Property Characteristics**

**Description:**

**Construction:** Fire Resistive

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0007 6638 Reisterstown Rd Ste 12, Baltimore, MD 21215-2305*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| **DESCRIPTION** | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$479.00* |

*0008 7730 Wise Ave, Dundalk, MD 21222-3200*

**Property Characteristics**

Description:

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual**
INSURANCE

Coverage is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0008 7730 Wise Ave, Dundalk, MD 21222-3200*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

### DESCRIPTION

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$378.00** |

*0009  6846 Liberty Rd, RANDALLSTOWN,MD 21133*

**Property Characteristics**

Description:

**Construction:** Masonry Non-Combustible

**Liberty Mutual INSURANCE**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
BZS (17) 57 61 64 46
Policy Period:
From 11/02/2016 To 11/02/2017
12:01 am Standard Time
at Insured Mailing Location

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0009 6846 Liberty Rd, RANDALLSTOWN, MD 21133*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| **Premium** | **$405.00** |

---

*0010   5403 East Dr, Arbutus, MD 21227-2605*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

DS 70 23 01 08



Liberty Mutual. INSURANCE

Coverage is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0010 5403 East Dr, Arbutus, MD 21227-2605*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$405.00** |

*0011   7000 Arundel Mills Circle 55, HANOVER,MD 21076*

**Property Characteristics**

**Description:**

**Construction:** Fire Resistive

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number
BZS (17) 57 61 64 46
Policy Period:
From 11/02/2016 To 11/02/2017
12:01 am Standard Time
at Insured Mailing Location

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0011 7000 Arundel Mills Circle 55, HANOVER, MD 21076*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | $368.00 |

*0012 1134 S Charles St, Baltimore, MD 21230-4240*

**Property Characteristics**

Description:

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

# Liberty Mutual. INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

## Commercial Protector Declarations Schedule

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0012 1134 S Charles St, Baltimore, MD 21230-4240*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

### DESCRIPTION

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$546.00* |

---

*0013    10300 Little Patuxent Parkway 65, COLUMBIA, MD 21044*

**Property Characteristics**

**Description:**

**Construction:** Fire Resistive

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0013 10300 Little Patuxent Parkway 65, COLUMBIA, MD 21044*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

### DESCRIPTION

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$368.00** |

*0014  7553 Ritchie Hwy, Glen Burnie, MD 21061-3716*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0014 7553 Ritchie Hwy, Glen Burnie, MD 21061-3716*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| **DESCRIPTION** | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$405.00** |

---

*0015   6000 Greenbelt Rd Ste 52, Greenbelt, MD 20770-1018*

**Property Characteristics**

**Description:**

**Construction:** Fire Resistive

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

# Liberty Mutual. INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0015 6000 Greenbelt Rd Ste 52, Greenbelt, MD 20770-1018*

**Business**
**Personal**
**Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$368.00* |

---

*0016    3222 Greenmount Ave, Baltimore, MD 21218-3438*

**Property**
**Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

DS 70 23 01 08



**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |



## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0016 3222 Greenmount Ave, Baltimore, MD 21218-3438*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| ***Premium*** | **$546.00** |

*0017    229 N Howard St, Baltimore,  MD 21201-3555*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
12:01 am Standard Time
at Insured Mailing Location

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744
INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0017 229 N Howard St, Baltimore, MD 21201-3555*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | $546.00 |

*0018   8610 Washington Blvd Ste 106, Jessup, MD 20794-9601*

**Property Characteristics**

**Description:**

**Construction:** Joisted Masonry

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0018 8610 Washington Blvd Ste 106, Jessup, MD 20794-9601*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$522.00** |

**0019    400 West Lexington St E LM 10/11**
**1-74-CU**
**BALTIMORE, MD 21201**

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
BZS (17) 57 61 64 46
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial    Protector
Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0019400 West Lexington St E LM 10/11*
*1-74-CU*
*BALTIMORE, MD 21201*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$546.00* |

*0020*    *5138 Park Heights Ave, Baltimore, MD 21215-5817*

**Property
Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0020 5138 Park Heights Ave, Baltimore, MD 21215-5817*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$546.00* |

0021    114 E Patapsco Ave, Brooklyn, MD 21225-1745

**Property Characteristics**

Description:

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual** INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0021 114 E Patapsco Ave, Brooklyn, MD 21225-1745*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | $546.00 |

*0022 1640-1642 Pennsylvania Ave, Baltimore, MD 21217-3115*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

DS 70 23 01 08

**Liberty Mutual**
**INSURANCE**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

**Named Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0022 1640-1642 Pennsylvania Ave, Baltimore, MD 21217-3115*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| **Premium** | **$546.00** |

*0023 6901 Security Blvd Ste 885, Windsor Mill, MD 21244-8415*

**Property Characteristics**

**Description:**

**Construction:** Fire Resistive

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial   Protector**
**Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0023 6901 Security Blvd Ste 885, Windsor Mill, MD 21244-8415*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$368.00* |

---

**0024   41 Shipping Pl Ste 1ST, Dundalk, MD 21222-4393**

**Property Characteristics**

**Description:**

**Construction:** Joisted Masonry

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

| 11/15/16 | 57616446 | N0164234 | 560 | OCAOPPNO | AGENT COPY | 005687 | PAGE 52 OF 376 |
|---|---|---|---|---|---|---|---|

**Liberty Mutual INSURANCE**

Coverage is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

## Commercial Protector Declarations Schedule

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0024 41 Shipping Pl Ste 1ST, Dundalk, MD 21222-4393*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$522.00** |

---

**0025  10610 Baltimore Ave Unit B, Beltsville, MD 20705-2142**

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual** INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17)  57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial   Protector**
**Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0025 10610 Baltimore Ave Unit B, Beltsville, MD 20705-2142*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$405.00* |

0026   8200 Perrry Hall Blvd 5517-5518,   NOTTINGHAM, MD 21236

**Property
Characteristics**

Description:

**Construction:** Fire Resistive

*To report a claim, call your Agent or 1-800-362-0000*

DS 70 23 01 08

| 11/15/16 | 57616446 | N0164234 | 560 | OCAOPPNO | AGENT COPY | 005687 | PAGE 54 OF 376 |
|---|---|---|---|---|---|---|---|



**Liberty Mutual® INSURANCE**

**Policy Number:**
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0026 8200 Perrry Hall Blvd 5517-5518, NOTTINGHAM, MD 21236*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| **DESCRIPTION** | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$368.00* |

---

*0027   7387A Baltimore-Annaplois  Blvd, Glen Burnie, MD 21061-3222*

**Property Characteristics**

**Description:**

**Construction:** Fire Resistive

---

*To report a claim,  call  your Agent or  1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0027 7387A Baltimore-Annaplois Blvd, Glen Burnie, MD 21061-3222*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $130,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$730.00** |

**0028    224 N Eutaw St, Baltimore,  MD 21201-1709**

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim,  call your Agent or  1-800-362-0000*

**DS 70 23 01 08**



**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0028 224 N Eutaw St, Baltimore, MD 21201-1709*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | $546.00 |

---

0029  2463 Chillum Rd A-15, HYATTSVILLE, MD 20782

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0029 2463 Chillum Rd A-15, HYATTSVILLE, MD 20782*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$405.00* |

0030   950 Largo Town Center Dr No 2, UPPER MARLBORO, MD 20774

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

**Liberty Mutual** INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744
INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0030 950 Largo Town Center Dr No 2, UPPER MARLBORO, MD 20774*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$405.00** |

*0031    14312 Spring Hill Dr, Spring Hill, FL 34609-5263*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual. INSURANCE**

Coverage Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0031 14312 Spring Hill Dr, Spring Hill, FL 34609-5263*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| *Premium* | **$1,012.00** |

---

**0032   1801 NW Us Highway 19, Crystal River, FL 34428-6133**

**Property Characteristics**

**Description:**

**Construction:** Fire Resistive

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| *Premium* | **$1,024.00** |

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17)  57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial   Protector**
**Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

---

**0033   4548 S Suncoast Blvd, Homosassa, FL 34446-1103**

| Property Characteristics | Description: |
|---|---|
| | Construction: Masonry Non-Combustible |

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | **$60,000** |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | **$1,000** |
| Deductible - Windstorm or Hail | **5%** |
| *Premium* | **$1,072.00** |

---

**0034   210 US HWY 41 S, INVERNESS, FL 34450**

| Property Characteristics | Description: |
|---|---|
| | Construction: Masonry Non-Combustible |

---

*To report a claim,  call your Agent or  1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.** INSURANCE

Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

**Named Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0034 210 US HWY 41 S, INVERNESS, FL 34450*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---:|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| **Premium** | **$1,072.00** |

---

*0035    5480 Spring Hill Dr, Spring Hill, FL 34606-4559*

**Property
Characteristics**

**Description:**

**Construction:** Joisted Masonry

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---:|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| **Premium** | **$1,401.00** |

---

*To report a claim, call your Agent or 1-800-362-0000*

DS 70 23 01 08

Coverage Is Provided In:

**Liberty Mutual. INSURANCE**

Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

**0036    8482 Lockwood Ridge Rd, Sarasota, FL 34243-2920**

**Property Characteristics**

Description:
_____

**Construction:** Masonry Non-Combustible

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| **DESCRIPTION** | |
|---|---|
| Limit of Insurance | **$60,000** |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | **$1,000** |
| Deductible - Windstorm or Hail | **5%** |
| *Premium* | **$1,072.00** |

**0037    4033 Mariner Blvd, Spring Hill, FL 34609-2467**

**Property Characteristics**

Description:
_____

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0037 4033 Mariner Blvd, Spring Hill, FL 34609-2467*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| **DESCRIPTION** | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| | **Premium**    **$1,072.00** |

---

**0038 11051 Spring Hill Dr, Spring Hill, FL 34608-5049**

**Property
Characteristics**

**Description:**

**Construction:** Joisted Masonry

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| **DESCRIPTION** | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| | **Premium**    **$1,401.00** |

*To report a claim, call your Agent or 1-800-362-0000*

DS 70 23 01 08

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

**0039   3780 Tampa Rd, Oldsmar, FL 34677-3041**

**Property Characteristics**

Description:
_____

Construction: Masonry Non-Combustible

**Business Personal Property Coverage**

Occupancy: Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | **$60,000** |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | **$1,000** |
| Deductible - Windstorm or Hail | **5%** |
| *Premium* | **$1,072.00** |

**0040   3386 Tampa Rd, Palm Harbor, FL 34684-3425**

**Property Characteristics**

Description:
_____

Construction: Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

Coverage Is Provided In:

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0040 3386 Tampa Rd, Palm Harbor, FL 34684-3425*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| *Premium* | **$1,072.00** |

---

**0041  6581 102nd Ave, PINELLASPARK, FL 33782**

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| *Premium* | **$1,072.00** |

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual. INSURANCE**

Coverage Is Provided In:
Ohio Security Insurance Company

**Policy Number:**
BZS (17) 57 61 64 46

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial   Protector
Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

**0042    10091 Us Highway 19, Port Richey, FL 34668-3742**

| Property Characteristics | Description: |
|---|---|
| | Construction: Masonry Non-Combustible |

**Business Personal Property Coverage**

Occupancy: Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| *Premium* | **$1,072.00** |

**0043    1611 SE Us Highway 19, Crystal River, FL 34429-4830**

| Property Characteristics | Description: |
|---|---|
| | Construction: Masonry Non-Combustible |

*To report a claim, call your Agent or 1-800-362-0000*

DS 70 23 01 08

Ohio Security Insurance Company

**Liberty Mutual.**
INSURANCE

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0043 1611 SE Us Highway 19, Crystal River, FL 34429-4830*

**Business**
**Personal**
**Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| *Premium* | *$1,171.00* |

---

**0044  4385 Commercial Way, Weeki Wachee, FL 34606-1963**

**Property**
**Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

**Business**
**Personal**
**Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $130,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| *Premium* | *$2,096.00* |

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

**0045  1100 N Tuttle Ave Unit 4, Sarasota, FL 34237-3012**

**Property Characteristics**

Description:

Construction: Masonry Non-Combustible

**Business Personal Property Coverage**

Occupancy: Phone Stores - No Auto Installation - Retail

### DESCRIPTION

| | |
|---|---|
| Limit of Insurance | **$60,000** |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | **$1,000** |
| Deductible - Windstorm or Hail | **5%** |
| *Premium* | **$1,032.00** |

**0046  6224 Commercial Way, Weeki Wachee, FL 34613-6325**

**Property Characteristics**

Description:

Construction: Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.** INSURANCE

Coverage is Provided in:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0046 6224 Commercial Way, Weeki Wachee, FL 34613-6325*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

### DESCRIPTION

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| *Premium* | *$1,072.00* |

---

**0047  36948 State Road 54, Zephyrhills, FL 33541-6915**

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

### DESCRIPTION

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| *Premium* | *$1,072.00* |

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

Ohio Security Insurance Company

**Liberty Mutual.**
INSURANCE

**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

**0048    3023 Wade Hampton Blvd, Taylors, SC 29687-2700**

**Property Characteristics**

Description:

Construction: Masonry Non-Combustible

**Business Personal Property Coverage**

Occupancy: Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $130,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$849.00* |

**0049    201 Mauldin St, Greenville, SC 29601**

**Property Characteristics**

Description:

Construction: Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual**
INSURANCE

Coverage is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0049 201 Mauldin St, Greenville, SC 29601*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$458.00* |

**0050    1779 Woodruff Rd SteB, GREENVILLE, SC 29607**

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*



**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0050 1779 Woodruff Rd SteB, GREENVILLE,SC 29607*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | $458.00 |

---

*0051  1170 Woodruff Rd, Greenville,  SC 29607-4154*

**Property
Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0051 1170 Woodruff Rd, Greenville, SC 29607-4154*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$458.00* |

---

**0052 609 White Horse Rd, Greenville, SC 29605-3531**

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

Coverage Is Provided In:
Ohio Security Insurance Company

**Liberty Mutual.**
**INSURANCE**

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED



*Continuation of 0052 609 White Horse Rd, Greenville, SC 29605-3531*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$409.00* |

**0053 704 Easley Bridge Rd, Greenville, SC 29611-5124**

**Property Characteristics**

Description:
_____

**Construction:** Masonry Non-Combustible

_____

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0053 704 Easley Bridge Rd, Greenville, SC 29611-5124*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

### DESCRIPTION

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$458.00* |

*0054 2501 Paxton St, Harrisburg, PA 17111-1034*

**Property Characteristics**

Description:

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

DS 70 23 01 08

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0054 2501 Paxton St, Harrisburg, PA 17111-1034*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $130,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$1,037.00* |

---

*0055 921 N 3rd St, Harrisburg, PA 17102-2064*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0055 921 N 3rd St, Harrisburg, PA 17102-2064*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$497.00* |

---

*0056    4600 Jonestown Rd, Harrisburg, PA 17109-6214*

**Property Characteristics**

Description:

**Construction:** Fire Resistive

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Policy Number
BZS (17)  57 61 64 46

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial   Protector**
**Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0056 4600 Jonestown Rd, Harrisburg, PA 17109-6214*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$446.00* |

---

*0057    910 Great Bridge Blvd, Chesapeake,  VA 23320-6642*

**Property
Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

---

*To report a claim,  call your Agent or  1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17)  57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial    Protector**
**Declarations    Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0057 910 Great Bridge Blvd, Chesapeake, VA 23320-6642*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| **DESCRIPTION** | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$601.00* |

---

0058    810 High St, Portsmouth, VA 23704-3334

**Property Characteristics**

Description:

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**



**Coverage Is Provided In:**

Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0058 810 High St, Portsmouth, VA 23704-3334*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $130,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| | *Premium* **$1,190.00** |

**0059 43 Hidenwood Shopping Ctr, Newport News, VA 23606-2200**

**Property
Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0059 43 Hidenwood Shopping Ctr, Newport News, VA 23606-2200*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$576.00* |

**0060    1075 George Washington Hwy S, Chesapeake,  VA 23323-6339**

**Property
Characteristics**

Description:
_____

**Construction:** Masonry Non-Combustible

*To report a claim,  call your Agent or  1-800-362-0000*

**DS 70 23 01 08**

# Liberty Mutual. INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
BZS (17) 57 61 64 46

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

**Named Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0060 1075 George Washington Hwy S, Chesapeake, VA 23323-6339*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
| --- | --- |
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$601.00* |

0061    4200 Portsmouth Blvd, Chesapeake,  VA 23321-2100

**Property
Characteristics**

Description:

**Construction:** Masonry Non-Combustible

*To report a claim,  call your Agent or  1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial    Protector
Declarations    Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0061 4200 Portsmouth Blvd, Chesapeake, VA 23321-2100*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

### DESCRIPTION

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$601.00* |

*0062    171 W Ocean View Ave, Norfolk, VA 23503-1502*

**Property
Characteristics**

Description:

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0062 171 W Ocean View Ave, Norfolk, VA 23503-1502*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| **Premium** | **$615.00** |

*0063 1241 Frederick Blvd, Portsmouth, VA 23707-4124*

**Property Characteristics**

Description:

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

# Liberty Mutual
## INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

**Named Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0063 1241 Frederick Blvd, Portsmouth, VA 23707-4124*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$601.00* |

0064    404 E High St, Carlisle, PA 17013-2606

**Property
Characteristics**

Description:

**Construction:** Joisted Masonry

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**



Coverage is Provided in:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Liberty Mutual.**
**INSURANCE**

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0064 404 E High St, Carlisle, PA 17013-2606*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| **DESCRIPTION** | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 8% |
| *Premium* | **$663.00** |

---

*0065 4702 Carlisle Pike Ste 28, Mechanicsburg, PA 17050-3099*

**Property
Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0065 4702 Carlisle Pike Ste 28, Mechanicsburg, PA 17050-3099*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| **DESCRIPTION** | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$497.00* |

*0066 570 W Washington St, Greenville, SC 29601-1923*

**Property Characteristics**

Description:

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

DS 70 23 01 08

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0066 570 W Washington St, Greenville, SC 29601-1923*

**Business
Personal
Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

### DESCRIPTION

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| **Premium** | **$409.00** |

---

*0067  9125 Riggs Rd, Adelphi, MD 20783-1637*

**Property
Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0067 9125 Riggs Rd, Adelphi, MD 20783-1637*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$405.00* |

---

*0068   2230 Veirs Mill Rd, Rockville, MD 20851-1827*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0068 2230 Veirs Mill Rd, Rockville, MD 20851-1827*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$405.00** |

**0069   1052 MAIDEN CHOICELANE, ARBUTUS, MD 21227**

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0069 1052 MAIDEN CHOICELANE, ARBUTUS, MD 21227*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| **Premium** | **$405.00** |

**0070 5284 Randolph Rd, Rockville, MD 20852-2116**

**Property Characteristics**

Description:

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 <br> INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0070 5284 Randolph Rd, Rockville, MD 20852-2116*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$405.00** |

---

*0071 4739 Westland Blvd, Arbutus, MD 21227-1320*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial   Protector
Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0071 4739 Westland Blvd, Arbutus, MD 21227-1320*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

### DESCRIPTION

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$321.00* |

---

*0072   820 Largo Center Dr, Upper Marlboro, MD 20774-3705*

**Property Characteristics**

Description:

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number
BZS (17) 57 61 64 46

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0072 820 Largo Center Dr, Upper Marlboro, MD 20774-3705*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| **Premium** | **$405.00** |

---

*0073 9 W Patapsco Ave, Baltimore, MD 21225-1604*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number
BZS (17)  57 61 64 46
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial   Protector
Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0073 9 W Patapsco Ave, Baltimore, MD 21225-1604*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| **DESCRIPTION** | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | $546.00 |

*0074   6776 Reisterstown Rd, Baltimore, MD 21215-2346*

**Property Characteristics**

Description:

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*



**Liberty Mutual.**
**INSURANCE**

Ohio Security Insurance Company

Coverage Is Provided In:

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0074 6776 Reisterstown Rd, Baltimore, MD 21215-2346*

**Business**
**Personal**
**Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$546.00** |

*0075 3765 Old Court Rd, Baltimore, MD 21208-3902*

**Property**
**Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
BZS (17) 57 61 64 46
Policy Period:
From 11/02/2016 To 11/02/2017
12:01 am Standard Time
at Insured Mailing Location

**Commercial Protector**
**Declarations Schedule**

**Named Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0075 3765 Old Court Rd, Baltimore, MD 21208-3902*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
| --- | --- |
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$405.00* |

*0076    801 Hungerford Dr, Rockville, MD 20850-1727*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

DS 70 23 01 08

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17)  57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial   Protector**
**Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0076 801 Hungerford Dr, Rockville, MD 20850-1727*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$405.00** |

*0077   807 Bowman St, Lebanon, PA 17046-8430*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
BZS (17) 57 61 64 46

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0077 807 Bowman St, Lebanon, PA 17046-8430*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| **DESCRIPTION** | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$497.00* |

*0078   2701 Macarthur Rd, Whitehall,  PA 18052-3632*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

---

*To report a claim,  call  your Agent or  1-800-362-0000*

**DS 70 23 01 08**

Liberty Mutual.
**INSURANCE**

*Coverage Is Provided In:*
Ohio Security Insurance Company

*Policy Number*
**BZS (17)  57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial   Protector**
**Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0078 2701 Macarthur Rd, Whitehall, PA 18052-3632*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

### DESCRIPTION

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$497.00** |

*0079    1600 Lincoln Way E Unit C, Chambersburg, PA 17202-3346*

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

Coverage Is Provided In:

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

**Policy Number**
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0079 1600 Lincoln Way E Unit C, Chambersburg, PA 17202-3346*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$528.00* |

---

*0080    2429 Easton-Nazareth Road, EASTON, PA 18045*

**Property Characteristics**

Description:

_____

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

**Policy Number:**
**BZS (17)  57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial   Protector**
**Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM  OF  TAMPABAY,  INC. | (800) 444-1744<br>INSURANCE  INTERMEDIARIES  INC |

## SUMMARY  OF  COVERAGES  BY  LOCATION  -  CONTINUED

*Continuation of 0080 2429 Easton-Nazareth Road, EASTON,PA 18045*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$528.00* |

*0081    1200  Market  St Unit 368,  Lemoyne,  PA 17043-1417*

**Property Characteristics**

**Description:**

**Construction:** Non-Combustible

---

*To report a claim,  call your Agent or  1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.** INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial Protector
Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0081 1200 Market St Unit 368, Lemoyne, PA 17043-1417*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$547.00* |

**0082    1604 S 4th St, Allentown, PA 18103-4922**

**Property Characteristics**

Description:

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**



**Liberty Mutual.**
INSURANCE

Ohio Security Insurance Company

**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0082 1604 S 4th St, Allentown, PA 18103-4922*

**Business**
**Personal**
**Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

### DESCRIPTION

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$497.00** |

*0083    9846 Liberty Rd, Randallstown, MD 21133-2007*

**Property**
**Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**
Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
|  | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0083 9846 Liberty Rd, Randallstown, MD 21133-2007*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| **DESCRIPTION** | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$405.00* |

0084   5562 Silver Hill Rd, District Heights, MD 20747-1104

**Property Characteristics**

Description:

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

DS 70 23 01 08

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0084 5562 Silver Hill Rd, District Heights, MD 20747-1104*

**Business**
**Personal**
**Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | **$405.00** |

*0085 900 E Mccart St, Krum, TX 76249-7165*

**Property**
**Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number:
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0085 900 E Mccart St, Krum, TX 76249-7165*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

**DESCRIPTION**

| | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| Automatic Increase Business Personal Property | 2% |
| *Premium* | *$391.00* |

---

**0086   4428 Youree Dr, Shreveport, LA 71105-3621**

**Property Characteristics**

**Description:**

**Construction:** Masonry Non-Combustible

---

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

108   of 376

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number
**BZS (17)  57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial   Protector**
**Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## SUMMARY OF COVERAGES BY LOCATION - CONTINUED

*Continuation of 0086 4428 Youree Dr, Shreveport, LA 71105-3621*

**Business Personal Property Coverage**

**Occupancy:** Phone Stores - No Auto Installation - Retail

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $60,000 |
| **Covered Causes of Loss** | |
| Special Form | |
| Deductible | $1,000 |
| Deductible - Windstorm or Hail | 5% |
| *Premium* | *$420.00* |

## SUMMARY OF OTHER COVERAGES

**Employee Dishonesty Including Forgery and Alteration**

| DESCRIPTION | |
|---|---|
| Limit of Insurance | $25,000 |
| Number of Employees | 262 |
| Deductible | $500 |
| *Premium* | *Included* |

**Hired and Non-Owned Auto Liability**

| DESCRIPTION | |
|---|---|
| Hired and Non-Owned Liability | |
| Coverage Characteristics | **See Endorsement** |
| *Premium* | *$230.00* |

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In:
Ohio Security Insurance Company

Policy Number
**BZS (17)  57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*

**Commercial   Protector
Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## SUMMARY OF OTHER COVERAGES - continued

| Additional Insured | DESCRIPTION |
|---|---|
| | Owners, Lessees or Contractors with Additional<br>Insured Required for Other Parties in Construction Contract |
| | See Endorsement |

| | *Premium* | *$42.00* |
|---|---|---|

| Additional Insured | DESCRIPTION |
|---|---|
| | Primary and Noncontributory<br>Other Insurance Condition |
| | See Endorsement |

| | *Premium* | *$42.00* |
|---|---|---|

| Identity Recovery Coverage for Defined Individuals | DESCRIPTION |
|---|---|
| | See Endorsement |

| | *Premium* | *$12.00* |
|---|---|---|

| Data Compromise Coverage | DESCRIPTION |
|---|---|
| | See Endorsement |

| | Premium | Included |
|---|---|---|

CyberOne Coverage
**DESCRIPTION**
See Endorsement

| | Premium | Included |
|---|---|---|

| | *Total Premium* | *$207.00* |
|---|---|---|

*To report a claim,  call your Agent or  1-800-362-0000*

**DS 70 23 01 08**



**Liberty Mutual.**
INSURANCE

*Coverage Is Provided In:*
Ohio Security Insurance Company

*Policy Number:*
**BZS (17) 57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial Protector**
**Declarations Schedule**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

| | |
|---|---:|
| **Businessowners Location(s) Total** | **$59,674.00** |
| **Businessowners Other Coverage(s) Total** | **$533.00** |
| **Businessowners Schedule Total** | **$60,207.00** |

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

This page intentionally left blank.

**Named Insured Endorsement**

POLICY NUMBER
**BZS   (17)  57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time
at Insured Mailing Location*



This Endorsement Changes The Policy. Please Read it Carefully.

The complete Named Insured reads as follows:

CLEARCOMM OF TAMPABAY, INC.

CLEARCOMM NC INC

WIRELESS WORKS LLC

CLEARCOMM BAWA INC

CLEARCOMM PENN INC

CLEARCOMM NA INC

METROPAY INC

CLEARCOMM OF TEXAS, INC

CLEARCOMM SOVA, INC

**DS 88 04 03 15**

This page intentionally left blank.

**BUSINESSOWNERS**
**BP 03 11 02 12**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE



| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

   **a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

   **b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

© Insurance Services Office, Inc., 2011

**c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**H.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

BUSINESSOWNERS
BP 03 11 02 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

1. We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

2. Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

© Insurance Services Office, Inc., 2011



The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

© Insurance Services Office, Inc., 2011

**c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**H.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.




**BUSINESSOWNERS**
**BP 03 11 02 12**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

**BP 03 11 02 12**   © Insurance Services Office, Inc., 2011   **Page 1 of 3**

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

B. Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

C. With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

D. With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

E. Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

F. The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

G. For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

© Insurance Services Office, Inc., 2011

**c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**H.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

1. We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

2. Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

© Insurance Services Office, Inc., 2011



The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

© Insurance Services Office, Inc., 2011

c. Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

d. Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

e. Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

2. "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

3. "Primary structural system" means an assemblage of "primary structural members".

H. If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

I. You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

J. If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

K. As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

© Insurance Services Office, Inc., 2011

**BUSINESSOWNERS**
**BP 03 11 02 12**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |



With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

**BP 03 11 02 12** © Insurance Services Office, Inc., 2011 Page 1 of 3

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

B. Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

C. With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

D. With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

E. Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

F. The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

G. For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

   © Insurance Services Office, Inc., 2011

   **c.**  Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

   **d.**  Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

   **e.**  Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**2.**  "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.**  "Primary structural system" means an assemblage of "primary structural members".

**H.**  If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.**  You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.**  If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.**  As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

BUSINESSOWNERS
BP 03 11 02 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

1. We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

2. Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

 © Insurance Services Office, Inc., 2011

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;



**c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**H.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

**BUSINESSOWNERS**
**BP 03 11 02 12**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE





| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

   **a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

   **b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

**c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**H.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

BUSINESSOWNERS
BP 03 11 02 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

1. We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

2. Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

   **a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

   **b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;



   © Insurance Services Office, Inc., 2011   BP 03 11 02 12

**c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**H.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

BUSINESSOWNERS
BP 03 11 02 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||



With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

1. We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

2. Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

© Insurance Services Office, Inc., 2011

**c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**H.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

1. We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

2. Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

**BP 03 11 02 12**         © Insurance Services Office, Inc., 2011         **Page 1 of 3**

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

**a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

**b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

© Insurance Services Office, Inc., 2011   **BP 03 11 02 12**

  c. Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

  d. Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

  e. Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

 2. "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

 3. "Primary structural system" means an assemblage of "primary structural members".

**H.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

**BUSINESSOWNERS**
**BP 03 11 02 12**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||



With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

1. We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

2. Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

**BP 03 11 02 12**  &copy; Insurance Services Office, Inc., 2011  **Page 1 of 3**

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

   **a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

   **b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

© Insurance Services Office, Inc., 2011

**c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**H.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

**BUSINESSOWNERS**
**BP 03 11 02 12**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;



© Insurance Services Office, Inc., 2011

**BP 03 11 02 12**

c. Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

d. Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

e. Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

2. "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

3. "Primary structural system" means an assemblage of "primary structural members".

H. If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

I. You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

J. If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

K. As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

BUSINESSOWNERS
BP 03 11 02 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

c.  Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

d.  Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

e.  Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

2.  "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

3.  "Primary structural system" means an assemblage of "primary structural members".

**H.**  If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.**  You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.**  If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.**  As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

BUSINESSOWNERS
BP 03 11 02 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

 © Insurance Services Office, Inc., 2011

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation;  or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

© Insurance Services Office, Inc., 2011         **BP 03 11 02 12**

    **c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

    **d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

    **e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**H.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

BUSINESSOWNERS
BP 03 11 02 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||



With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

1. We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

2. Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

© Insurance Services Office, Inc., 2011

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

   **a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

   **b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

© Insurance Services Office, Inc., 2011

c. Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

d. Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

e. Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

2. "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

3. "Primary structural system" means an assemblage of "primary structural members".

**H.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

BUSINESSOWNERS
BP 03 11 02 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

© Insurance Services Office, Inc., 2011

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

© Insurance Services Office, Inc., 2011



    **c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

    **d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

    **e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**H.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

**BUSINESSOWNERS**
**BP 03 11 02 12**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number | Building Number |
|---|---|
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||



57616446

005687

560

of 376

163

With respect to the location(s) indicated in the Schedule, the following provisions apply.

**A.** The following is added to this policy as a Covered Cause of Loss and as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your sinkhole loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

**BP 03 11 02 12**           © Insurance Services Office, Inc., 2011           **Page 1 of 3**

The stabilization and all other repairs to the Covered Property must be completed with 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**B.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**C.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**D.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**E.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this policy) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**F.** The following provision is added to the **Section I - Duties In The Event Of Loss Or Damage** Property Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.** For the purposes of this endorsement, the following is added to the **Definitions** in Section I - Property:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

© Insurance Services Office, Inc., 2011   **BP 03 11 02 12**

c. Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

d. Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

e. Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

2. "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

3. "Primary structural system" means an assemblage of "primary structural members".

H. If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

I. You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

J. If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

K. As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

POLICY NUMBER:                                                     **BUSINESSOWNERS**
                                                                  **BP 04 02 07 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED-MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

**Designation Of Premises (Part Leased To You):**
```
3909 14th St NW

Washington
DC
20011-5438
```

**Name Of Person(s) Or Organization(s) (Additional Insured):**
```
AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266
```

**Additional Premium:    $**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II - Liability** is amended as follows:

**A.** The following is added to Paragraph **C. Who Is An Insured:**

   **3.** The person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule.

   However:

     **a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

     **b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds the following additional exclusions apply:

   This insurance does not apply to:

   **1.** Any "occurrence" that takes place after you cease to be a tenant in the premises described in the Schedule.

   **2.** Structural alterations, new construction or demolition operations performed by or for the person(s) or organization(s) designated in the Schedule.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

   **1.** Required by the contract or agreement; or

   **2.** Available under the applicable Limits Of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits Of Insurance shown in the Declarations.

POLICY NUMBER:                                                          **BUSINESSOWNERS**
**BP 04 02 07 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED-MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

**Designation Of Premises (Part Leased To You):**
3909 14th St NW

Washington
DC
20011-5438

**Name Of Person(s) Or Organization(s) (Additional Insured):**
ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

**Additional Premium:   $**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.



**Section II - Liability** is amended as follows:

**A.** The following is added to Paragraph **C. Who Is An Insured:**

   **3.** The person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule.

   However:

     **a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

     **b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds the following additional exclusions apply:

   This insurance does not apply to:

   **1.** Any "occurrence" that takes place after you cease to be a tenant in the premises described in the Schedule.

   **2.** Structural alterations, new construction or demolition operations performed by or for the person(s) or organization(s) designated in the Schedule.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

   **1.** Required by the contract or agreement; or

   **2.** Available under the applicable Limits Of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits Of Insurance shown in the Declarations.



POLICY NUMBER:                                                                    **BUSINESSOWNERS**
                                                                                 **BP 04 02 07 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED-MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

**Designation Of Premises (Part Leased To You):**

    3909 14th St NW

    Washington
    DC
    20011-5438

**Name Of Person(s) Or Organization(s) (Additional Insured):**

    JBG/RETAIL MANAGEMENT LLC

    4445 WILLARD AVE STE 400

    CHEVY CHASE, MD 20815

**Additional Premium:**    $

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

**Section II - Liability** is amended as follows:

**A.** The following is added to Paragraph **C. Who Is An Insured:**

**3.** The person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds the following additional exclusions apply:

This insurance does not apply to:

**1.** Any "occurrence" that takes place after you cease to be a tenant in the premises described in the Schedule.

**2.** Structural alterations, new construction or demolition operations performed by or for the person(s) or organization(s) designated in the Schedule.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits Of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits Of Insurance shown in the Declarations.

---

POLICY NUMBER:                                                    **BUSINESSOWNERS**
                                                                 **BP 04 97 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM



**SCHEDULE\***

**Name Of Person Or Organization:**

```
T-MOBILE INC US
ITS AFFILIATES & SUBSIDIARIES
510 VIRGINIA DR
FORT WASHINGTON, PA 19034
```

Paragraph **K. Transfer Of Rights Of Recovery Against Others To Us** in **Section III - Common Policy Conditions** is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

\*Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

POLICY NUMBER:                                                              **BUSINESSOWNERS**
                                                                           **BP 04 97 01 06**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

**SCHEDULE\***

**Name Of Person Or Organization:**
    SEE GENERAL ENDORSEMENT BP7002

Paragraph  **K. Transfer Of Rights Of Recovery Against Others To Us** in **Section III - Common Policy Conditions** is amended  by the addition  of the following:

We waive any right of recovery we may have against the person or organization  shown in the Schedule above because of payments  we make for injury or damage arising out of your ongoing operations or "your work"  done under a contract with that person or organization and included in the "products-completed   operations  hazard". This waiver applies only to the person or organization shown in the Schedule above.

\*Information   required  to complete  this Schedule,  if not shown above, will  be shown  in the Declarations.

POLICY NUMBER:                                                   **BUSINESSOWNERS**
                                                                **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 6846 Liberty Rd | | A |
| RANDALLSTOWN | | |
| MD | | |
| 21133 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                          **BUSINESSOWNERS**
                                                                       **BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 4600 Jonestown Rd | | A |

Harrisburg
PA
17109-6214

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information  required  to complete  this Schedule,  if not shown  above,  will  be shown  in the Declarations.

Nothing  in this endorsement  increases the applicable Limit of Insurance.  We will  not pay any Loss Payee more than their financial  interest  in the Covered Property,  and we will  not pay more than the applicable  Limit of Insurance  on the Covered Property.

The following  is added to the **Loss Payment** Property  Loss Condition  in **Section  I - Property**, as shown  in the Declarations  or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property  in which both you and a Loss Payee shown  in the Schedule or in the Declarations  have an insurable  interest, we will:

1.  Adjust  losses with you; and

2.  Pay any claim for loss or damage jointly  to you and the Loss Payee, as interests  may appear.

**B.  Lender's Loss Payable Clause**

1.  The Loss Payee shown  in the Schedule or in the Declarations  is a creditor,  including  a mortgageholder  or trustee,  whose interest  in that Covered Property  is established by such written  instruments  as:

    **a.**  Warehouse  receipts;

    **b.**  A contract  for deed;

    **c.**  Bills of lading;

    **d.**  Financing  statements;  or

    **e.**  Mortgages,  deeds of trust, or security agreements.

2.  For Covered Property  in which both you and a Loss Payee have an insurable  interest:

    **a.**  We will  pay for covered loss or damage to each Loss Payee in their order of precedence,  as interests  may appear.

**BP 12 03 01 10**          ©  Insurance  Services  Office, Inc., 2009          **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                          **BUSINESSOWNERS**
                                                                       **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 570 W Washington St | | | A |
| Greenville | | | |
| SC | | | |
| 29601-1923 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**            © Insurance Services Office, Inc., 2009            **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 7553 Ritchie Hwy | | A |
| Glen Burnie MD 21061-3716 | | |

**Description of Property**

Cellphone Store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.**  Adjust losses with you; and

**2.**  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

**1.**  The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.**  Warehouse receipts;

**b.**  A contract for deed;

**c.**  Bills of lading;

**d.**  Financing statements; or

**e.**  Mortgages, deeds of trust, or security agreements.

**2.**  For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.**  We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                                   **BUSINESSOWNERS**
                                                                                                **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 807 Bowman St | | A |

Lebanon
PA
17046-8430

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 910 Great Bridge Blvd | | A |
| Chesapeake VA 23320-6642 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property** , as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 229 N Howard St | | | A |
| Baltimore MD 21201-3555 | | | |

**Description of Property**

Cellphone Store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.**  Adjust losses with you; and

**2.**  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

**1.**  The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.**  Warehouse receipts;

**b.**  A contract for deed;

**c.**  Bills of lading;

**d.**  Financing statements; or

**e.**  Mortgages, deeds of trust, or security agreements.

**2.**  For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.**  We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

  For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:  

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 229 N Howard St | | | A |
| Baltimore | | | |
| MD | | | |
| 21201-3555 | | | |

**Description of Property**

    cellphone store

**Loss Payee (Name & Address)**

    AVIVA LIFE AND ANNUITY COMPANY

    7700 MILLS CIVIC PKWY

    WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

© Insurance Services Office, Inc., 2009

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                          **BUSINESSOWNERS**
                                                                                        **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 7387A Baltimore-Annaplois Blvd | | A |
| Glen Burnie | | |
| MD | | |
| 21061-3222 | | |

**Description of Property**

    cellphone store

**Loss Payee (Name & Address)**

    AVIVA LIFE AND ANNUITY COMPANY

    7700 MILLS CIVIC PKWY

    WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**                  © Insurance Services Office, Inc., 2009                  **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                    **BUSINESSOWNERS**
                                                                                 **BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 8482 Lockwood Ridge Rd | | | A |
| Sarasota FL 34243-2920 | | | |

**Description  of Property**

  cellphone store

**Loss Payee (Name & Address)**

  JBG/RETAIL MANAGEMENT LLC

  4445 WILLARD AVE STE 400

  CHEVY CHASE, MD 20815

Information  required  to complete  this Schedule,  if not shown  above,  will  be shown  in the Declarations.

Nothing  in this endorsement  increases the appli-cable Limit  of Insurance. We will  not pay any Loss Payee more than  their  financial  interest in the Covered Property,  and we will  not pay more than the applicable  Limit  of Insurance  on the Covered Property.

The following  is added to the **Loss Payment** Prop-erty Loss Condition  in **Section  I - Property** , as shown  in the Declarations  or in the Schedule:

**A.  Loss Payable Clause**

  For Covered Property in which both you and a Loss Payee shown  in the Schedule or in the Declarations  have an insurable  interest, we will:

  **1.**  Adjust  losses with you; and

  **2.**  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

  **1.**  The Loss Payee shown  in the Schedule or in the Declarations  is a creditor,  including a mortgageholder  or trustee, whose in-terest in that Covered Property is estab-lished by such written  instruments  as:

  **a.**  Warehouse  receipts;

  **b.**  A contract  for deed;

  **c.**  Bills  of lading;

  **d.**  Financing  statements;  or

  **e.**  Mortgages,  deeds of trust, or secu-rity agreements.

  **2.**  For Covered Property in which both you and a Loss Payee have an insurable  inter-est:

  **a.**  We will  pay for covered loss or dam-age to each Loss Payee in their  order of precedence, as interests  may ap-pear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                    **BUSINESSOWNERS**
                                                                 **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 1779 Woodruff Rd SteB | | | A |
| GREENVILLE | | | |
| SC | | | |
| 29607 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

---

**BP 12 03 01 10**          © Insurance Services Office, Inc., 2009          **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

  For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                      **BUSINESSOWNERS**
                                                                   **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM



## SCHEDULE

| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 2230 Veirs Mill Rd | | A |
| Rockville | | |
| MD | | |
| 20851-1827 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;
   **b.** A contract for deed;
   **c.** Bills of lading;
   **d.** Financing statements; or
   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 171 W Ocean View Ave<br><br>Norfolk<br>VA<br>23503-1502 | | A |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**

© Insurance Services Office, Inc., 2009

Page 1 of 2

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 5403 East Dr | | | A |
| Arbutus MD 21227-2605 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

© Insurance Services Office, Inc., 2009

b.  The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

c.  If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

(1)  Pays any premium due under this policy at our request if you have failed to do so;

(2)  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

(3)  Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

d.  If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1)  The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2)  The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3.  If we cancel this policy, we will written notice to the Loss Payee at least:

a.  10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b.  30 days before the effective date of cancellation if we cancel for any other reason.

4.  If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C.  Contract Of Sale Clause**

1.  The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2.  For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

a.  Adjust losses with you; and

b.  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3.  The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D.  Building Owner Loss Payable Clause**

1.  The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

2.  We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3.  We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                    **BUSINESSOWNERS**
                                                                 **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 810 High St | | A |
| Portsmouth | | |
| VA | | |
| 23704-3334 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1.  Adjust losses with you; and

2.  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

1.  The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

    **a.**  Warehouse receipts;

    **b.**  A contract for deed;

    **c.**  Bills of lading;

    **d.**  Financing statements; or

    **e.**  Mortgages, deeds of trust, or security agreements.

2.  For Covered Property in which both you and a Loss Payee have an insurable interest:

    **a.**  We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                 **BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM



## SCHEDULE

| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 1052 MAIDEN CHOICE LANE | | | A |
| ARBUTUS | | | |
| MD | | | |
| 21227 | | | |

**Description of Property**

    cellphone store

**Loss Payee (Name & Address)**

    AVIVA LIFE AND ANNUITY COMPANY

    7700 MILLS CIVIC PKWY

    WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                       **BUSINESSOWNERS**
                                                                                     **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 224 N Eutaw St | | A |
| Baltimore | | |
| MD | | |
| 21201-1709 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 4702 Carlisle Pike Ste 28 | | A |
| Mechanicsburg | | |
| PA | | |
| 17050-3099 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**

© Insurance Services Office, Inc., 2009

Page 1 of 2

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 1346 Good Hope Rd SE | | | A |
| Washington DC 20020-6910 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**

© Insurance Services Office, Inc., 2009

**Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                                            **BUSINESSOWNERS**
                                                                                                         **BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under  the  following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 4548 S Suncoast Blvd | | | A |

Homosassa
FL
34446-1103

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information  required  to complete  this Schedule, if not shown  above, will  be shown  in the Declarations.

Nothing  in this endorsement  increases the appli-cable Limit of Insurance. We will  not pay any Loss Payee more than their financial interest  in the Covered Property, and we will  not pay more than the applicable  Limit of Insurance on the Covered Property.

The following  is added to the **Loss Payment** Prop-erty Loss Condition  in **Section I - Property** , as shown  in the Declarations  or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown  in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown  in the Schedule or in the Declarations  is a creditor, including a mortgageholder  or trustee, whose in-terest in that Covered Property is estab-lished by such written  instruments  as:

**a.** Warehouse  receipts;

**b.** A contract  for deed;

**c.** Bills of lading;

**d.** Financing  statements;  or

**e.** Mortgages,  deeds of trust, or secu-rity agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable inter-est:

**a.** We will  pay for covered loss or dam-age to each Loss Payee in their order of precedence, as interests  may ap-pear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

of 376

210

POLICY NUMBER:                                                    **BUSINESSOWNERS**
                                                                 **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 224 N Eutaw St | | A |
| Baltimore MD 21201-1709 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

© Insurance Services Office, Inc., 2009

POLICY NUMBER:                                                          **BUSINESSOWNERS**
                                                                       **BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 2429 Easton-Nazareth Road | | | A |
| EASTON | | | |
| PA | | | |
| 18045 | | | |

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information  required  to complete  this Schedule,  if not shown  above, will  be shown  in the Declarations.

Nothing  in this endorsement  increases the appli- cable Limit of Insurance. We will  not pay any Loss Payee more than their financial  interest  in the Covered Property, and we will  not pay more than the applicable  Limit of Insurance on the Covered Property.

The following  is added to the **Loss Payment** Prop- erty Loss Condition  in **Section  I - Property** , as shown  in the Declarations  or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown  in the Schedule or in the Declarations  have an insurable  interest, we will:

**1.**  Adjust losses with you; and

**2.**  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

**1.**  The Loss Payee shown  in the Schedule or in the Declarations  is a creditor, including a mortgageholder  or trustee, whose in- terest in that Covered Property is estab- lished by such written  instruments  as:

**a.**  Warehouse  receipts;

**b.**  A contract  for deed;

**c.**  Bills of lading;

**d.**  Financing  statements;  or

**e.**  Mortgages,  deeds of trust, or secu- rity agreements.

**2.**  For Covered Property in which both you and a Loss Payee have an insurable  inter- est:

**a.**  We will  pay for covered loss or dam- age to each Loss Payee in their order of precedence, as interests  may ap- pear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

BUSINESSOWNERS
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 1170 Woodruff Rd | | | A |
| Greenville | | | |
| SC | | | |
| 29607-4154 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 4702 Carlisle Pike Ste 28 | | | A |

Mechanicsburg
PA
17050-3099

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM



## SCHEDULE

| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 210 US HWY 41 S | | A |
| INVERNESS FL 34450 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

  For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                   **BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 1604 S 4th St | | A |
| Allentown PA 18103-4922 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information  required to complete  this Schedule, if not shown  above, will  be shown in the Declarations.

Nothing in this endorsement  increases the applicable Limit of Insurance. We will  not pay any Loss Payee more than their financial  interest in the Covered Property, and we will  not pay more than the applicable  Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition  in **Section I - Property**, as shown in the Declarations  or in the Schedule:

**A.   Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.   Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

BUSINESSOWNERS
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 2501 Paxton St | | | A |
| Harrisburg | | | |
| PA | | | |
| 17111-1034 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

---

**BP 12 03 01 10** © Insurance Services Office, Inc., 2009 Page 1 of 2

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

  For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

© Insurance Services Office, Inc., 2009

POLICY NUMBER:                                                                    **BUSINESSOWNERS**
                                                                                 **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 2463 Chillum Rd A-15 | | | A |

HYATTSVILLE
MD
20782

**Description of Property**

    cellphone store

**Loss Payee (Name & Address)**

    JBG/RETAIL MANAGEMENT LLC

    4445 WILLARD AVE STE 400

    CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                          **BUSINESSOWNERS**
                                                                       **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 1346 Good Hope Rd SE | | | A |
| Washington DC 20020-6910 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:
   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.
2. For Covered Property in which both you and a Loss Payee have an insurable interest:
   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

    **(1)** Pays any premium due under this policy at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

    **a.** Adjust losses with you; and

    **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

© Insurance Services Office, Inc., 2009

POLICY NUMBER:                                                        **BUSINESSOWNERS**
                                                                     **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 8200 Perrry Hall Blvd 5517-5518 | | A |
| NOTTINGHAM | | |
| MD | | |
| 21236 | | |

**Description of Property**

    cellphone store

**Loss Payee (Name & Address)**

    JBG/RETAIL MANAGEMENT LLC

    4445 WILLARD AVE STE 400

    CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

BUSINESSOWNERS
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 1100 N Tuttle Ave Unit 4 | | A |

Sarasota
FL
34237-3012

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM



## SCHEDULE

| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 41 Shipping Pl Ste 1ST | | | A |
| Dundalk MD 21222-4393 | | | |

**Description of Property**

    Cellphone Store

**Loss Payee (Name & Address)**

    ROSENFELD INVESTMENT LLC

    7101 WISCONSIN AVE

    BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

BUSINESSOWNERS
BP 12 03 01 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 1611 SE Us Highway 19 | | | A |
| Crystal River FL 34429-4830 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:
   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:
   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

BP 12 03 01 10 © Insurance Services Office, Inc., 2009 Page 1 of 2

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                    **BUSINESSOWNERS**
                                                                                  **BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 4702 Carlisle Pike Ste 28 | | A |
| Mechanicsburg | | |
| PA | | |
| 17050-3099 | | |

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information  required to complete  this Schedule, if not shown  above, will  be shown  in the Declarations.

Nothing  in this endorsement  increases the applicable Limit of Insurance. We will  not pay any Loss Payee more than their financial  interest  in the Covered Property, and we will  not pay more than the applicable  Limit of Insurance on the Covered Property.

The following  is added to the **Loss Payment** Property Loss Condition  in **Section  I - Property** , as shown  in the Declarations  or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown  in the Schedule or in the Declarations  have an insurable  interest, we will:

1.  Adjust losses with you; and

2.  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may  appear.

**B.  Lender's Loss Payable Clause**

1.  The Loss Payee shown  in the Schedule or in the Declarations  is a creditor,  including a mortgageholder  or trustee, whose  interest  in that Covered  Property is established  by such written  instruments  as:

   **a.**  Warehouse  receipts;

   **b.**  A contract  for deed;

   **c.**  Bills of lading;

   **d.**  Financing  statements;  or

   **e.**  Mortgages,  deeds of trust, or security  agreements.

2.  For Covered Property in which both you and a Loss Payee have an insurable  interest:

   **a.**  We will  pay for covered loss or damage to each Loss Payee in their order of precedence, as interests  may appear.

**BP 12 03 01 10**                    © Insurance  Services  Office, Inc., 2009                    Page 1 of 2

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

238                                                                                of  376

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 1134 S Charles St | | A |
| Baltimore | | |
| MD | | |
| 21230-4240 | | |

**Description of Property**

Cellphone Store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A.   Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.**   Adjust losses with you; and

**2.**   Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.   Lender's Loss Payable Clause**

**1.**   The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.**   Warehouse receipts;

**b.**   A contract for deed;

**c.**   Bills of lading;

**d.**   Financing statements; or

**e.**   Mortgages, deeds of trust, or security agreements.

**2.**   For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.**   We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

BUSINESSOWNERS
**BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE

| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 7553 Ritchie Hwy | | | A |
| Glen Burnie MD 21061-3716 | | | |

**Description  of Property**

cellphone store



**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information  required  to complete  this Schedule,  if not shown  above,  will  be shown  in the Declarations.

Nothing  in this endorsement  increases the appli-cable Limit of Insurance.  We will  not pay any Loss Payee more than their financial  interest  in the Covered Property,  and we will  not pay more than the applicable  Limit of Insurance  on the Covered Property.

The following  is added to the **Loss Payment** Prop-erty Loss Condition  in **Section  I - Property** , as shown  in the Declarations  or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which  both you and a Loss Payee shown  in the Schedule or in the Declarations  have an insurable  interest,  we will:

1.  Adjust  losses with  you; and

2.  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

1.  The Loss Payee shown  in the Schedule or in the Declarations  is a creditor,  including a mortgageholder  or trustee,  whose in-terest  in that Covered Property is estab-lished  by such written  instruments  as:

a.  Warehouse  receipts;

b.  A contract  for deed;

c.  Bills  of lading;

d.  Financing  statements;  or

e.  Mortgages,  deeds of trust,  or secu-rity  agreements.

2.  For Covered Property in which  both you and a Loss Payee have an insurable  inter-est:

a.  We will  pay for covered loss or dam-age to each Loss Payee in their order of precedence,  as interests  may ap-pear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER: BUSINESSOWNERS
BP 12 03 01 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 1241 Frederick Blvd | | | A |
| Portsmouth VA 23707-4124 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                    **BUSINESSOWNERS**
                                                                                 **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 3780 Tampa Rd | | | A |
| Oldsmar FL 34677-3041 | | | |

**Description of Property**

    cellphone store

**Loss Payee (Name & Address)**

    AVIVA LIFE AND ANNUITY COMPANY

    7700 MILLS CIVIC PKWY

    WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

    **a.** Warehouse receipts;

    **b.** A contract for deed;

    **c.** Bills of lading;

    **d.** Financing statements; or

    **e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

    **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 3023 Wade Hampton Blvd | | | A |
| Taylors SC 29687-2700 | | | |

**Description of Property**

   cellphone store

**Loss Payee (Name & Address)**

   ROSENFELD INVESTMENT LLC

   7101 WISCONSIN AVE

   BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

  **a.** Warehouse receipts;

  **b.** A contract for deed;

  **c.** Bills of lading;

  **d.** Financing statements; or

  **e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

  **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

  For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 704 Easley Bridge Rd | | | A |
| Greenville | | | |
| SC | | | |
| 29611-5124 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**        © Insurance Services Office, Inc., 2009        **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                          **BUSINESSOWNERS**
                                                                       **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 2701 Macarthur Rd | | | A |
| Whitehall | | | |
| PA | | | |
| 18052-3632 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                        **BUSINESSOWNERS**
                                                                                      **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 11051 Spring Hill Dr | | | A |
| Spring Hill FL 34608-5049 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:
   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.
2. For Covered Property in which both you and a Loss Payee have an insurable interest:
   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**                    © Insurance Services Office, Inc., 2009                    **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

    **(1)** Pays any premium due under this policy at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

    **a.** Adjust losses with you; and

    **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

©  Insurance Services Office, Inc., 2009

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 14312 Spring Hill Dr | | | A |
| Spring Hill FL 34609-5263 | | | |

**Description of Property**

Cellphone Store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:
   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:
   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                  **BUSINESSOWNERS**
                                                                **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 4548 S Suncoast Blvd | | | A |
| Homosassa FL 34446-1103 | | | |

**Description of Property**

    cellphone store

**Loss Payee (Name & Address)**

    JBG/RETAIL MANAGEMENT LLC

    4445 WILLARD AVE STE 400

    CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property** , as shown in the Declarations or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.**  Adjust losses with you; and

**2.**  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

**1.**  The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.**  Warehouse receipts;

**b.**  A contract for deed;

**c.**  Bills of lading;

**d.**  Financing statements; or

**e.**  Mortgages, deeds of trust, or security agreements.

**2.**  For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.**  We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

    **(1)** Pays any premium due under this policy at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

    **a.** Adjust losses with you; and

    **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 4548 S Suncoast Blvd | | | A |
| Homosassa FL 34446-1103 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

    a. Warehouse receipts;

    b. A contract for deed;

    c. Bills of lading;

    d. Financing statements; or

    e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

    a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**        © Insurance Services Office, Inc., 2009        **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 5284 Randolph Rd | | | A |
| Rockville | | | |
| MD | | | |
| 20852-2116 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property** , as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                    **BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 114 E Patapsco Ave | | A |
| Brooklyn MD 21225-1745 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**             © Insurance Services Office, Inc., 2009             Page 1 of 2

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 9846 Liberty Rd | | A |
| Randallstown | | |
| MD | | |
| 21133-2007 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

© Insurance Services Office, Inc., 2009

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                **BUSINESSOWNERS**
                                                                              **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 2501 Paxton St | | | A |
| Harrisburg | | | |
| PA | | | |
| 17111-1034 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**              © Insurance Services Office, Inc., 2009              **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:  **BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 224 N Eutaw St | | | A |
| Baltimore MD 21201-1709 | | | |

**Description  of Property**

Cellphone Store

**Loss Payee (Name & Address)**

ROSENFELD  INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information  required  to complete  this Schedule, if not shown  above, will  be shown  in the Declarations.

Nothing  in this endorsement  increases the appli-
cable Limit of Insurance. We will  not pay any Loss
Payee more than their financial  interest  in the
Covered Property, and we will  not pay more than
the applicable  Limit of Insurance  on the Covered
Property.

The following  is added to the **Loss Payment** Prop-
erty Loss Condition  in **Section  I - Property** , as
shown in the Declarations  or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which both you and a
Loss Payee shown in the Schedule or in the
Declarations  have an insurable  interest, we
will:

**1.**  Adjust  losses with you; and

**2.**  Pay any claim for loss or damage jointly
to you and the Loss Payee, as interests
may appear.

**B.  Lender's Loss Payable Clause**

**1.**  The Loss Payee shown  in the Schedule or
in the Declarations  is a creditor, including
a mortgageholder  or trustee, whose in-
terest  in that Covered Property is estab-
lished by such written  instruments  as:

**a.**  Warehouse  receipts;

**b.**  A contract  for deed;

**c.**  Bills of lading;

**d.**  Financing  statements;  or

**e.**  Mortgages, deeds of trust, or secu-
rity agreements.

**2.**  For Covered Property in which both you
and a Loss Payee have an insurable  inter-
est:

**a.**  We will  pay for covered loss or dam-
age to each Loss Payee in their order
of precedence, as interests  may ap-
pear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

of 376

© Insurance Services Office, Inc., 2009

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 3222 Greenmount Ave | | | A |
| Baltimore | | | |
| MD | | | |
| 21218-3438 | | | |

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information  required  to complete  this Schedule,  if not shown  above,  will  be shown  in the Declarations.

Nothing  in this endorsement  increases the applicable  Limit of Insurance.  We will  not pay any Loss Payee more  than their  financial  interest  in the Covered  Property,  and we will  not pay more  than the applicable  Limit of Insurance  on the Covered Property.

The following  is added to the **Loss Payment**  Property  Loss Condition  in **Section I - Property** , as shown  in the Declarations  or in the Schedule:

**A.**  **Loss Payable Clause**

For Covered  Property  in which  both  you and a Loss Payee shown  in the Schedule  or in the Declarations  have an insurable  interest,  we will:

**1.**  Adjust  losses  with  you; and

**2.**  Pay any claim  for loss or damage jointly to you and the Loss Payee, as interests may  appear.

**B.**  **Lender's Loss Payable Clause**

**1.**  The Loss Payee shown  in the Schedule  or in the Declarations  is a creditor,  including a mortgageholder  or trustee,  whose  interest  in that Covered  Property  is established  by such written  instruments  as:

**a.**  Warehouse  receipts;

**b.**  A contract  for deed;

**c.**  Bills  of lading;

**d.**  Financing  statements;  or

**e.**  Mortgages,  deeds of trust,  or security  agreements.

**2.**  For Covered  Property  in which  both  you and a Loss Payee have an insurable  interest:

**a.**  We will  pay for covered  loss or damage to each Loss Payee in their  order of precedence,  as interests  may  appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

© Insurance Services Office, Inc., 2009

POLICY NUMBER:                                                    **BUSINESSOWNERS**
                                                                 **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 10610 Baltimore Ave Unit B | | | A |
| Beltsville | | | |
| MD | | | |
| 20705-2142 | | | |

**Description of Property**

   cellphone store

**Loss Payee (Name & Address)**

   JBG/RETAIL MANAGEMENT LLC

   4445 WILLARD AVE STE 400

   CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:
   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.
2. For Covered Property in which both you and a Loss Payee have an insurable interest:
   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**                © Insurance Services Office, Inc., 2009                **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

© Insurance Services Office, Inc., 2009

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 2463 Chillum Rd A-15 | | | A |

HYATTSVILLE
MD
20782

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

© Insurance Services Office, Inc., 2009

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

**BP 12 03 01 10**     © Insurance Services Office, Inc., 2009     **Page 2 of 2**

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 820 Largo Center Dr | | A |
| Upper Marlboro MD 20774-3705 | | |

**Description of Property**

    cellphone store

**Loss Payee (Name & Address)**

    AVIVA LIFE AND ANNUITY COMPANY

    7700 MILLS CIVIC PKWY

    WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;
   **b.** A contract for deed;
   **c.** Bills of lading;
   **d.** Financing statements; or
   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**       © Insurance Services Office, Inc., 2009      **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 6581 102nd Ave | | A |
| PINELLAS PARK | | |
| FL | | |
| 33782 | | |

**Description of Property**

   cellphone store

**Loss Payee (Name & Address)**

   ROSENFELD INVESTMENT LLC

   7101 WISCONSIN AVE

   BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

© Insurance Services Office, Inc., 2009

**b.** The Loss Payee has the right to re-ceive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Prop-erty.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this poli-cy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after re-ceiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or sub-stantial change in risk known to the Loss Payee.

All of the terms of **Section I - Prop-erty** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Pay-ee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued in-terest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will writ-ten notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any oth-er reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organi-zation you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable in-terest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" in-cludes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will sat-isfy your claims against us for the own-er's property.

**3.** We will adjust losses to tenant's im-provements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 801 Hungerford Dr | | | A |
| Rockville MD 20850-1727 | | | |

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information  required  to complete  this Schedule,  if not shown  above,  will  be shown  in the Declarations.

Nothing  in this endorsement  increases the applicable Limit of Insurance. We will  not pay any Loss Payee more  than their  financial  interest  in the Covered  Property, and we will  not pay more  than the applicable  Limit  of Insurance  on the Covered Property.

The following  is added  to the **Loss Payment** Property  Loss Condition  in **Section  I - Property** , as shown  in the Declarations  or in the Schedule:

**A.  Loss Payable Clause**

For Covered  Property  in which  both you and a Loss Payee shown  in the Schedule  or in the Declarations  have an insurable  interest,  we will:

**1.**  Adjust  losses with you; and

**2.**  Pay any claim  for loss or damage  jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

**1.**  The Loss Payee shown  in the Schedule  or in the Declarations  is a creditor,  including a mortgageholder  or trustee,  whose  interest  in that Covered  Property  is established by such written  instruments  as:

**a.**  Warehouse  receipts;

**b.**  A contract  for deed;

**c.**  Bills  of lading;

**d.**  Financing  statements;  or

**e.**  Mortgages,  deeds  of trust, or security  agreements.

**2.**  For Covered  Property  in which  both you and a Loss Payee have an insurable  interest:

**a.**  We will  pay for covered  loss or damage  to each Loss Payee in their  order of precedence,  as interests  may appear.

©  Insurance  Services  Office,  Inc., 2009

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

© Insurance Services Office, Inc., 2009

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 8200 Perrry Hall Blvd 5517-5518 | | A |

NOTTINGHAM
MD
21236

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information  required  to complete  this Schedule, if not shown  above, will  be shown  in the Declarations.

Nothing  in this endorsement  increases the appli-cable Limit of Insurance. We will  not pay any Loss Payee more than their financial  interest  in the Covered Property,  and we will  not pay more than the applicable  Limit of Insurance  on the Covered Property.

The following  is added to the **Loss Payment** Prop-erty Loss Condition  in **Section I - Property** , as shown in the Declarations  or in the Schedule:

**A.   Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown  in the Schedule or in the Declarations  have an insurable  interest, we will:

**1.**   Adjust losses with you; and

**2.**   Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.   Lender's Loss Payable Clause**

**1.**   The Loss Payee shown  in the Schedule or in the Declarations  is a creditor, including  a mortgageholder  or trustee, whose in-terest  in that Covered Property is estab-lished by such written  instruments  as:

**a.**   Warehouse  receipts;

**b.**   A contract  for deed;

**c.**   Bills of lading;

**d.**   Financing  statements;  or

**e.**   Mortgages,  deeds of trust, or secu-rity agreements.

**2.**   For Covered Property in which both you and a Loss Payee have an insurable  inter-est:

**a.**   We will  pay for covered loss or dam-age to each Loss Payee in their order of precedence,  as interests  may ap-pear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 404 E High St | | A |

Carlisle
PA
17013-2606

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 6638 Reisterstown Rd Ste 12 | | | A |
| Baltimore MD 21215-2305 | | | |

**Description of Property**

Cellphone Store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property** , as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 10610 Baltimore Ave Unit B | | | A |
| Beltsville | | | |
| MD | | | |
| 20705-2142 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**

© Insurance Services Office, Inc., 2009

Page 1 of 2

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                              **BUSINESSOWNERS**
                                                                           **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

<strong>SCHEDULE</strong>




| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 1241 Frederick Blvd | | A |
| Portsmouth VA 23707-4124 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                    **BUSINESSOWNERS**
                                                                                  **BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 4033 Mariner Blvd | | A |
| Spring Hill FL 34609-2467 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information  required  to complete  this Schedule,  if not shown  above,  will  be shown  in the Declarations.

Nothing  in this endorsement  increases the appli-cable Limit of Insurance. We will  not pay any Loss Payee more than their financial  interest  in the Covered Property, and we will  not pay more than the applicable  Limit of Insurance on the Covered Property.

The following  is added to the **Loss Payment** Prop-erty Loss Condition  in **Section I - Property** , as shown  in the Declarations  or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown  in the Schedule or in the Declarations  have an insurable  interest, we will:

**1.**  Adjust  losses with you; and

**2.**  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may  appear.

**B.  Lender's Loss Payable Clause**

**1.**  The Loss Payee shown  in the Schedule or in the Declarations  is a creditor, including a mortgageholder  or trustee, whose in-terest  in that Covered Property is estab-lished by such written  instruments  as:

**a.**  Warehouse receipts;

**b.**  A contract  for deed;

**c.**  Bills  of lading;

**d.**  Financing  statements;  or

**e.**  Mortgages,  deeds of trust, or secu-rity  agreements.

**2.**  For Covered Property in which  both you and a Loss Payee have an insurable  inter-est:

**a.**  We will  pay for covered loss or dam-age to each Loss Payee in their order of precedence, as interests  may ap-pear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

© Insurance Services Office, Inc., 2009

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 36948 State Road 54 | | | A |

Zephyrhills
FL
33541-6915

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 7730 Wise Ave | | | A |
| Dundalk | | | |
| MD | | | |
| 21222-3200 | | | |

**Description of Property**

    cellphone store

**Loss Payee (Name & Address)**

    AVIVA LIFE AND ANNUITY COMPANY

    7700 MILLS CIVIC PKWY

    WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                    **BUSINESSOWNERS**
                                                                                  **BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 704 Easley Bridge Rd | | | A |
| Greenville | | | |
| SC | | | |
| 29611-5124 | | | |

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information  required  to complete  this Schedule,  if not shown  above,  will  be shown  in the Declarations.

Nothing  in this endorsement  increases the applicable Limit of Insurance. We will  not pay any Loss Payee more  than their  financial  interest  in the Covered Property, and we will  not pay more  than the applicable  Limit of Insurance  on the Covered Property.

The following  is added to the **Loss Payment** Property  Loss Condition  in **Section I - Property** , as shown  in the Declarations  or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property  in which  both you and a Loss Payee shown  in the Schedule or in the Declarations  have an insurable  interest,  we will:

**1.**  Adjust  losses with  you; and

**2.**  Pay any claim  for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

**1.**  The Loss Payee shown  in the Schedule or in the Declarations  is a creditor, including  a mortgageholder  or trustee, whose interest  in that Covered Property is established  by such written  instruments  as:

**a.**  Warehouse  receipts;

**b.**  A contract  for deed;

**c.**  Bills of lading;

**d.**  Financing  statements;  or

**e.**  Mortgages,  deeds of trust, or security  agreements.

**2.**  For Covered Property  in which  both you and a Loss Payee have an insurable  interest:

**a.**  We will  pay for covered loss or damage to each Loss Payee in their order of precedence, as interests  may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

    **(1)** Pays any premium due under this policy at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

    **a.** Adjust losses with you; and

    **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 1903A Michigan Ave NE | | | A |
| Washington DC 20018-3334 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 6581 102nd Ave | | | A |
| PINELLAS PARK FL 33782 | | | |

**Description  of Property**

    cellphone store

**Loss Payee (Name & Address)**

    AVIVA LIFE AND ANNUITY COMPANY

    7700 MILLS CIVIC PKWY

    WEST DES MOINES, IA 50266

Information  required  to complete  this Schedule, if not shown  above, will  be shown in the Declarations.

Nothing  in this endorsement  increases the applicable Limit of Insurance. We will  not pay any Loss Payee more than their financial  interest  in the Covered Property, and we will  not pay more than the applicable  Limit of Insurance  on the Covered Property.

The following  is added to the **Loss Payment** Property Loss Condition  in **Section  I - Property**, as shown in the Declarations  or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations  have an insurable  interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations  is a creditor, including a mortgageholder  or trustee, whose interest  in that Covered Property is established  by such written instruments  as:

**a.** Warehouse  receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing  statements;  or

**e.** Mortgages,  deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable  interest:

**a.** We will  pay for covered loss or damage to each Loss Payee in their order of precedence, as interests  may appear.

**BP 12 03 01 10**            © Insurance  Services  Office, Inc., 2009            Page 1 of 2

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER: BUSINESSOWNERS
BP 12 03 01 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 6224 Commercial Way | | | A |
| Weeki Wachee | | | |
| FL | | | |
| 34613-6325 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:
   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.
2. For Covered Property in which both you and a Loss Payee have an insurable interest:
   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

© Insurance Services Office, Inc., 2009

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                          **BUSINESSOWNERS**
                                                                       **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 1611 SE Us Highway 19 | | A |
| Crystal River FL 34429-4830 | | |

**Description of Property**

    cellphone store

**Loss Payee (Name & Address)**

    AVIVA LIFE AND ANNUITY COMPANY

    7700 MILLS CIVIC PKWY

    WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 807 Bowman St | | A |

Lebanon
PA
17046-8430

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

    **a.** Warehouse receipts;

    **b.** A contract for deed;

    **c.** Bills of lading;

    **d.** Financing statements; or

    **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

    **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

© Insurance Services Office, Inc., 2009

POLICY NUMBER:                                                                    **BUSINESSOWNERS**
                                                                                  **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 3765 Old Court Rd | | | A |

Baltimore
MD
21208-3902

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**                     © Insurance Services Office, Inc., 2009                     **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                **BUSINESSOWNERS**
                                                                             **BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises<br>Number | Building<br>Number | | Applicable Clause<br>(Indicate Paragraph<br>A, B, C or D): |
|---|---|---|---|
| 5284 Randolph Rd | | | A |

Rockville
MD
20852-2116

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information  required  to complete  this Schedule,  if not shown  above,  will  be shown  in the Declarations.

Nothing  in this endorsement  increases the applicable Limit of Insurance.  We will  not pay any Loss Payee more than their financial  interest  in the Covered Property,  and we will  not pay more than the applicable  Limit of Insurance  on the Covered Property.

The following  is added to the **Loss Payment** Property Loss Condition  in **Section  I - Property** , as shown  in the Declarations  or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown  in the Schedule or in the Declarations  have an insurable  interest,  we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown  in the Schedule or in the Declarations  is a creditor,  including a mortgageholder  or trustee, whose interest  in that Covered Property is established by such written  instruments  as:
   a. Warehouse  receipts;
   b. A contract  for deed;
   c. Bills of lading;
   d. Financing  statements;  or
   e. Mortgages,  deeds of trust, or security agreements.
2. For Covered Property in which  both you and a Loss Payee have an insurable  interest:
   a. We will  pay for covered loss or damage to each Loss Payee in their order of precedence,  as interests  may appear.

**BP 12 03 01 10**                   © Insurance  Services  Office,  Inc., 2009                   Page 1 of 2

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 1604 S 4th St | | A |
| Allentown | | |
| PA | | |
| 18103-4922 | | |

**Description of Property**

   cellphone store

**Loss Payee (Name & Address)**

   JBG/RETAIL MANAGEMENT LLC

   4445 WILLARD AVE STE 400

   CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 921 N 3rd St | | A |
| Harrisburg | | |
| PA | | |
| 17102-2064 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**

© Insurance Services Office, Inc., 2009

Page 1 of 2

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                         **BUSINESSOWNERS**
                                                                       **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 5138 Park Heights Ave | | | A |
| Baltimore MD 21215-5817 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 921 N 3rd St | | A |
| Harrisburg | | |
| PA | | |
| 17102-2064 | | |

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information  required  to complete  this Schedule,  if not shown  above,  will  be shown  in the Declarations.

Nothing  in this endorsement  increases the appli- cable Limit  of Insurance.  We will  not pay any Loss Payee more  than their  financial  interest  in the Covered  Property,  and we will  not pay more  than the applicable  Limit  of Insurance  on the Covered Property.

The following  is added to the **Loss Payment** Prop- erty Loss Condition  in **Section  I - Property** , as shown  in the Declarations  or in the Schedule:

**A.   Loss Payable Clause**

For Covered  Property  in which  both  you and a Loss Payee shown  in the Schedule  or in the Declarations  have an insurable  interest,  we will:

**1.**   Adjust  losses with  you; and

**2.**   Pay any claim  for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.   Lender's Loss Payable Clause**

**1.**   The Loss Payee shown  in the Schedule  or in the Declarations  is a creditor,  including a mortgageholder  or trustee,  whose  in- terest  in that Covered  Property  is estab- lished  by such written  instruments  as:

**a.**   Warehouse  receipts;

**b.**   A contract  for deed;

**c.**   Bills  of lading;

**d.**   Financing  statements;  or

**e.**   Mortgages,  deeds of trust,  or secu- rity  agreements.

**2.**   For Covered  Property  in which  both  you and a Loss Payee have an insurable  inter- est:

**a.**   We will  pay for covered  loss or dam- age to each Loss Payee in their  order of precedence,  as interests  may ap- pear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                              **BUSINESSOWNERS**
                                                                            **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 10091 Us Highway 19 | | | A |

Port Richey
FL
34668-3742

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                    **BUSINESSOWNERS**
                                                                 **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 3023 Wade Hampton Blvd | | | A |

Taylors
SC
29687-2700

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

  For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

BUSINESSOWNERS
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 7000 Arundel Mills Circle 55 | | | A |
| HANOVER MD 21076 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

    **(1)** Pays any premium due under this policy at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

    **a.** Adjust losses with you; and

    **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

BUSINESSOWNERS
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 7387A Baltimore-Annaplois Blvd | | | A |
| Glen Burnie | | | |
| MD | | | |
| 21061-3222 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 570 W Washington St | | | A |
| Greenville | | | |
| SC | | | |
| 29601-1923 | | | |

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information  required  to complete  this Schedule, if not shown  above, will  be shown  in the Declarations.

Nothing  in this endorsement  increases the appli-cable Limit of Insurance. We will  not pay any Loss Payee more than their financial  interest in the Covered Property, and we will  not pay more than the applicable  Limit of Insurance on the Covered Property.

The following  is added to the **Loss Payment** Prop-erty Loss Condition  in **Section I - Property** , as shown  in the Declarations  or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown  in the Schedule or in the Declarations  have an insurable  interest, we will:

1. Adjust  losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown  in the Schedule or in the Declarations  is a creditor,  including a mortgageholder  or trustee, whose in-terest in that Covered Property is estab-lished by such written  instruments  as:
   a. Warehouse  receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing  statements;  or
   e. Mortgages,  deeds of trust, or secu-rity agreements.
2. For Covered Property in which both you and a Loss Payee have an insurable  inter-est:
   a. We will  pay for covered loss or dam-age to each Loss Payee in their order of precedence,  as interests  may ap-pear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

**BP 12 03 01 10**　　　© Insurance Services Office, Inc., 2009　　　**Page 2 of 2**

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 11051 Spring Hill Dr | | | A |
| Spring Hill FL 34608-5049 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

© Insurance Services Office, Inc., 2009

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 4385 Commercial Way | | | A |
| Weeki Wachee FL 34606-1963 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

© Insurance Services Office, Inc., 2009

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 10091 Us Highway 19 | | | A |
| Port Richey FL 34668-3742 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property** , as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:
   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:
   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

© Insurance Services Office, Inc., 2009

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

    **(1)** Pays any premium due under this policy at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

    **a.** Adjust losses with you; and

    **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                           **BUSINESSOWNERS**
                                                                         **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM



### SCHEDULE

| Premises<br>Number | Building<br>Number | | Applicable Clause<br>(Indicate Paragraph<br>A, B, C or D): |
|---|---|---|---|
| 8610 Washington Blvd Ste 106 | | | A |
| Jessup<br>MD<br>20794-9601 | | | |

**Description of Property**

Cellphone Store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER: **BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 4033 Mariner Blvd | | | A |
| Spring Hill | | | |
| FL | | | |
| 34609-2467 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                    **BUSINESSOWNERS**
                                                                                  **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 1134 S Charles St | | | A |
| Baltimore MD 21230-4240 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                          **BUSINESSOWNERS**
                                                                       **BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

### SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 1100 N Tuttle Ave Unit 4 | | | A |
| Sarasota FL 34237-3012 | | | |

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information  required  to complete  this Schedule,  if not shown  above,  will be shown  in the Declarations.

Nothing  in this endorsement  increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable  Limit of Insurance on the Covered Property.

The following  is added to the **Loss Payment** Property Loss Condition  in **Section I - Property** , as shown in the Declarations  or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations  have an insurable  interest, we will:

**1.**  Adjust losses with you; and

**2.**  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

**1.**  The Loss Payee shown in the Schedule or in the Declarations  is a creditor, including a mortgageholder  or trustee, whose interest in that Covered Property is established by such written instruments  as:

**a.**  Warehouse  receipts;

**b.**  A contract for deed;

**c.**  Bills of lading;

**d.**  Financing  statements;  or

**e.**  Mortgages,  deeds of trust, or security agreements.

**2.**  For Covered Property in which both you and a Loss Payee have an insurable  interest:

**a.**  We will pay for covered loss or damage to each Loss Payee in their order of precedence,  as interests  may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

  For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                                    **BUSINESSOWNERS**
                                                                                 **BP 12 03 01 10**

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

### SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 5562 Silver Hill Rd | | | A |
| District Heights MD 20747-1104 | | | |

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information  required to complete  this Schedule, if not shown  above, will  be shown in the Declarations.

Nothing  in this endorsement  increases the applicable Limit of Insurance. We will  not pay any Loss Payee more than their financial interest in the Covered Property, and we will  not pay more than the applicable  Limit of Insurance on the Covered Property.

The following  is added to the **Loss Payment** Property  Loss Condition  in **Section I - Property** , as shown in the Declarations  or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown  in the Schedule or in the Declarations  have an insurable  interest, we will:

1.  Adjust losses with you; and

2.  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

1.  The Loss Payee shown  in the Schedule or in the Declarations  is a creditor, including a mortgageholder  or trustee, whose interest in that Covered Property is established by such written  instruments  as:

a.  Warehouse  receipts;

b.  A contract for deed;

c.  Bills of lading;

d.  Financing  statements;  or

e.  Mortgages,  deeds of trust, or security agreements.

2.  For Covered Property in which both you and a Loss Payee have an insurable  interest:

a.  We will  pay for covered loss or damage to each Loss Payee in their order of precedence, as interests  may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                          **BUSINESSOWNERS**
                                                                       **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 1346 Good Hope Rd SE | | | A |
| Washington DC 20020-6910 | | | |

**Description of Property**

Cellphone Store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

---

**BP 12 03 01 10**                    © Insurance Services Office, Inc., 2009                    **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 1903A Michigan Ave NE | | A |
| Washington | | |
| DC | | |
| 20018-3334 | | |

**Description of Property**

Cellphone Store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**          © Insurance Services Office, Inc., 2009          **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                          **BUSINESSOWNERS**
                                                                        **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 2463 Chillum Rd A-15 | | A |

HYATTSVILLE

MD

20782

**Description of Property**

Cellphone Store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

of 376

354

POLICY NUMBER:                                                    **BUSINESSOWNERS**
                                                                 **BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 114 E Patapsco Ave | | | A |
| Brooklyn MD 21225-1745 | | | |

**Description of Property**

    cellphone store

**Loss Payee (Name & Address)**

    JBG/RETAIL MANAGEMENT LLC

    4445 WILLARD AVE STE 400

    CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**              © Insurance Services Office, Inc., 2009              **Page 1 of 2**

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 3386 Tampa Rd | | | A |
| Palm Harbor FL 34684-3425 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**BP 12 03 01 10**

© Insurance Services Office, Inc., 2009

Page 1 of 2

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

  For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                    **BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 910 Great Bridge Blvd | | A |
| Chesapeake | | |
| VA | | |
| 23320-6642 | | |

**Description of Property**

    cellphone store

**Loss Payee (Name & Address)**

    JBG/RETAIL MANAGEMENT LLC

    4445 WILLARD AVE STE 400

    CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:                                                              **BUSINESSOWNERS**
**BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE



| Premises Number | Building Number | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|
| 5562 Silver Hill Rd | | A |
| District Heights MD 20747-1104 | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

ROSENFELD INVESTMENT LLC

7101 WISCONSIN AVE

BETHESDA, MD 20814

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:
BUSINESSOWNERS
BP 12 03 01 10

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement  modifies  insurance  provided  under the following:

BUSINESSOWNERS  COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 201 Mauldin St | | | A |
| Greenville SC 29601 | | | |

**Description  of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information  required  to complete  this Schedule,  if not shown  above,  will  be shown  in the Declarations.

Nothing  in this endorsement  increases the appli- cable Limit of Insurance.  We will  not pay any Loss Payee more  than their  financial  interest  in the Covered Property,  and we will  not pay more  than the applicable  Limit of Insurance  on the Covered Property.

The following  is added  to the **Loss Payment**  Prop- erty Loss Condition  in **Section I - Property** , as shown  in the Declarations  or in the Schedule:

**A.  Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown  in the Schedule or in the Declarations  have an insurable  interest,  we will:

1. Adjust  losses with you; and

2. Pay any claim  for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lender's Loss Payable Clause**

1. The Loss Payee shown  in the Schedule or in the Declarations  is a creditor,  including a mortgageholder  or trustee, whose in- terest  in that Covered Property is estab- lished by such written  instruments  as:

   **a.** Warehouse  receipts;

   **b.** A contract  for deed;

   **c.** Bills of lading;

   **d.** Financing  statements;  or

   **e.** Mortgages,  deeds of trust, or secu- rity agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable  inter- est:

   **a.** We will  pay for covered loss or dam- age to each Loss Payee in their  order of precedence, as interests  may ap- pear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 1640-1642 Pennsylvania Ave | | | A |
| Baltimore | | | |
| MD | | | |
| 21217-3115 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

AVIVA LIFE AND ANNUITY COMPANY

7700 MILLS CIVIC PKWY

WEST DES MOINES, IA 50266

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this policy at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:

**BUSINESSOWNERS
BP 12 03 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE



| Premises Number | Building Number | | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|
| 1611 SE Us Highway 19 | | | A |
| Crystal River | | | |
| FL | | | |
| 34429-4830 | | | |

**Description of Property**

cellphone store

**Loss Payee (Name & Address)**

JBG/RETAIL MANAGEMENT LLC

4445 WILLARD AVE STE 400

CHEVY CHASE, MD 20815

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property**, as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER
**BZS   (17)  57 61 64 46**

Policy Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

## General  Endorsement



This Endorsement  Changes The Policy.  Please Read it Carefully.

WAIVER OF TRANSFER OF RIGHTS OF
RECOVERY AGAINST OTHERS TO US
BP 0497

"ANY PERSON OR OGANIZATION WHEN
REQUIRED BY WRITTEN CONTRACT OR
AGREEMENT"

---

*To report a claim,  call your Agent or 1-800-362-0000*

**BP 70 02 01 01**                                                                                   **Page 1 of 2**

**General Endorsement**

POLICY NUMBER
**BZS    (17)  57 61 64 46**

Policy  Period:
**From 11/02/2016 To 11/02/2017**
*12:01 am Standard Time*
*at Insured Mailing Location*

---

BUSINESSOWNERS
BP 88 02 06 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION - TIME ELEMENT COVERAGE (WINDSTORM OR HAIL)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE*




**Location(s)**

171 W Ocean View Ave

Norfolk
VA
23503-1502

* Information required to completed this Schedule, if not shown on this endorsement, will be shown in the Declarations.

This endorsement applies only to the location(s) shown in Schedule, and applies only when loss or damage is caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. If loss or damage from a covered weather condition other than Windstorm or Hail occurs, and that loss or damage would not have occurred but for Windstorm or Hail, such loss or damage shall be considered to be caused by Windstorm or Hail.

The coverage provided by this endorsement is subject to the provisions of the **SECTION I - PROPERTY,** except as provided below.

**A.** Paragraph **A. COVERAGE, 5. Additional Coverages,** is amended as follows:

    **5.   Additional Coverages**

        **f.   Business Income -** is replaced by the following:

           **(1) Business Income**

               **(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

                   With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

               **(i)** The portion of the building which you rent, lease, or occupy; and

               **(ii)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

 ©2009 Liberty Mutual Insurance Company. All rights reserved.

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 2 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

**(c)** Business Income means the:

   **(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of any increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

   **(ii)** Continuing normal operating expenses incurred, including payroll.

**(d)** Ordinary payroll expenses:

   **(i)** Mean payroll expenses for all your employees except:

   **i.** Officers;

   **ii.** Executives;

   **iii.** Department Managers;

   **iv.** Employees under contract; and

   **v.** Additional Exemptions shown in the Declarations as:
   Job Classification; or
   Employees.

   **(ii)** Include:

   **i.** Payroll;

   **ii.** Employee benefits, if directly related to payroll;

   **iii.** FICA payments you pay;

   **iv.** Union dues you pay; and

   **v.** Worker's compensation premiums.

**(2) Extended Business Income**

**(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

   **(i)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

   **(ii)** Ends on the earlier of:

   **i.** The date you could restore your "operations" with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

   **ii** 30 consecutive days after the date determined in paragraph **(a)(i)** above, unless a greater number of consecutive days is shown in the Declarations.

   However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

**(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from a Covered Cause of Loss.

   The most we will pay under this Coverage Extension is $1,000 in any one occurrence.

**(3)** With respect to coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; and

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**BP 88 02 06 09**    ©2009 Liberty Mutual Insurance Company. All rights reserved.    **Page 2 of 4**



**(4)** This Additional Coverage is not subject to the Limits of Insurance of **SECTION I - PROPERTY.**

**(5) Business Income Coverage Extensions**

**(a) Newly Acquired Locations**

**(i)** You may extend your Business Income Coverage to apply to property at a location you acquire other than at fairs or exhibitions.

**(ii)** The most we will pay for loss or damage under this Extension is $10,000 at each location in any one occurrence.

**(iii)** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**i.** This policy expires;

**ii.** 60 days expire after you acquire or begin to construct the property;

**iii.** You report values to us; or

**iv.** The property is more specifically insured.

**(b) Utility Services**

We will pay for the actual loss of Business Income at the described premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following types of property located outside of a covered building described in the Declarations.

**(i) Water Supply Services,** meaning the following types of property supplying water to the described premises:

**i.** Pumping stations; and

**ii.** Water mains.

**(ii) Communication Supply Services,** meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

**i.** Communication transmission lines, including optic fiber transmission lines;

**ii.** Coaxial cables; and

**iii.** Microwave radio relays except satellites. It does not include overhead transmission lines.

**(iii) Power Supply Services,** meaning the following types of property supplying electricity, steam or gas to the described premises:

**i.** Utility generating plants;

**ii.** Switching stations;

**iii.** Substations;

**iv.** Transformers; and

**v.** Transmission lines.

It does not include overhead transmission lines.

The most we will pay under this Coverage Extension is $1,000 in any one occurrence.

**g. Extra Expense -** is replaced by the following:

**(1)** We will pay necessary and reasonable Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

©2009 Liberty Mutual Insurance Company. All rights reserved.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means

**(a)** The portion of the building which you rent, lease, or occupy; and

**(b)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to the described premises.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including relocation expenses and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records"; to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or the Additional Coverage **f.** Business Income.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; and

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** We will only pay for Extra Expense that occurs within 2 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of **SECTION I - PROPERTY.**

**i.** **Civil Authority -** is replaced by the following:

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from a Covered Cause of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for necessary Extra Expense will begin immediately after the time of that action and ends:

**(1)** 3 consecutive weeks after the time of that action; or

**(2)** When your Business Income coverage ends;

whichever is later.

The definition of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of **SECTION I - PROPERTY.**

©2009 Liberty Mutual Insurance Company. All rights reserved.

NP 89 48 10 13

# STATE OF LOUISIANA

This form may not be altered or modified

## UNINSURED/UNDERINSURED   MOTORIST BODILY INJURY COVERAGE FORM

**Uninsured/Underinsured  Motorists Bodily Injury Coverage,** referred to as **"UMBI"** in this form, is insurance that pays persons insured by your policy who are injured in an accident caused by an owner or operator of an uninsured or underinsured  motor vehicle. Depending on the coverage purchased, UMBI Coverage can provide compensation  for both economic and non-economic  losses.

**Economic losses** are those that can be measured  in specific monetary  terms including  but not limited  to medical costs, funeral expenses, lost wages, and out of pocket expenses.

**Non-economic**  losses are losses other than economic  losses and include  but are not limited  to pain, suffering, inconvenience,  mental anguish and other non-economic  damages otherwise  recoverable  under the laws of this state.

**By law, your policy will include UMBI Coverage at the same limits as your Bodily Injury Liability Coverage unless you request otherwise.** If you wish to reject UMBI Coverage, select lower limits of UMBI Coverage, or select Economic-Only  UMBI Coverage, you must complete  this form and return it to your insurance agent or insurance company. (Economic-Only  UMBI Coverage may not be available from your insurance company. In this case, your company  will have marked options  2 and 3 below as "Not Available"  or "NA.")

### UNINSURED/UNDERINSURED   MOTORIST BODILY INJURY COVERAGE

You may select one of the following  UMBI Coverage options (initial  only one option):

1. _____   **I select UMBI Coverage** which provides compensation  for economic  and non-economic
   Initials   losses **with limits lower** than the Bodily Injury Liability  Coverage limits indicated on the
   policy:

   $ \_\_NA\_\_ each person          **OR** $ _____  each accident/occurrence
   $ \_\_NA\_\_ each accident/occurrence

2. _____   **I select Economic-Only UMBI Coverage,** which provides compensation  for economic
   Initials   losses **with the same limits** as the Bodily Injury Liability  Coverage indicated on the policy.

3. _____   **I select Economic-Only UMBI Coverage,** which provides compensation  for economic
   Initials   losses with limits  lower than the Bodily Injury Liability  Coverage limits indicated on the
   policy:

   $ \_\_NA\_\_ each person          **OR** $ _____  each accident/occurrence
   $ \_\_NA\_\_ each accident/occurrence

4. _____   **I do not want UMBI Coverage.** I understand  that **I will not be compensated  through  UMBI**
   Initials   coverage for losses arising  from an accident  caused by an uninsured/underinsured    motorist.

### SIGNATURE

The choice indicated  and initialed  on this form will apply to all persons and/or entities  insured  under this policy. This choice shall apply to the motor  vehicles  described  in this policy and to any replacement vehicles, to all renewals of this policy, and to all reinstatement,  substitute  or amended  policies until a written  request is made for a change to the Bodily Injury Liability  Limits, the UMBI limits or UMBI Coverage.

_____

**Named Insured or Legal Representative  (Please Print)**

_____

**Signature  of a Named  Insured  or Legal Representative**

_____          BZS (17) 57616446

**Date**                              **Policy Number**

Ohio Security Insurance Company

**Insuring  Company**

© 2013 Liberty Mutual Insurance. All rights reserved.

NP 89 48 10 13     Includes copyrighted material of Insurance Services Office, Inc., with  its permission.     **Page 1 of 1**

This page intentionally left blank.

34  2992

USO
57616446
11/02/2017

**INSURANCE INTERMEDIARIES INC**

**280 N HIGH ST STE 300**
**COLUMBUS, OH 43215-2535**



> We strive to produce a quality product for our agents to deliver to the policyholder. In doing so, we ask that you assist us by taking time to review the enclosed policy accuracy. If there are any modifications that need to be made, we request that you return this letter to the Business Center outlining what is in error.

Named Insured:          CLEARCOMM OF TAMPABAY, INC.

Corrections needed to be made on this policy (This form is not for routine change requests):

_____

_____

_____

_____

_____

_____

Thank you for your assistance.


Please send to:      *Liberty Mutual Insurance*


### ATTENTION:  C.S.I. UNIT

_____

CAU:


N O N E

**Exhibit**

**2**

Ohio Security v. Clearcomm

This page intentionally left blank.



**INSURANCE**

**Policyholder   Information**

| Named Insured & Mailing Address | Agent Mailing Address & Phone No. |
|---|---|
| CLEARCOMM OF TAMPABAY, INC.<br>PO Box 10216<br>C / O Bruce Kadoura<br>Largo, FL 33773 | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC<br>280 N HIGH ST STE 300<br>COLUMBUS, OH 43215-2535 |



### *Dear Policyholder:*



**Your Commercial Documents**

We know you work hard to build your business. We work together with your agent,
**INSURANCE INTERMEDIARIES INC        (800) 444-1744**
to help protect the things you care about. Thank you for selecting us.

Enclosed are your insurance documents consisting of:



**THIS IS NOT A BILL**

- Commercial Umbrella

To find your limits of insurance and premium please refer to your Declarations page(s). Please refer to your policy for specific coverages.

If you have any questions or changes that may affect your insurance needs, please contact your Agent at (800) 444-1744



**Reminders**

- Verify that all information is correct
- If you have any changes, please contact your Agent at (800) 444-1744
- In case of a claim, call your Agent or  1-800-362-0000

**You Need To Know**

- **CONTINUED ON NEXT PAGE**

*To report a claim,  call  your Agent or 1-800-362-0000*

DS 70 20 01 08

**You Need To Know - continued**

- **NOTICE(S) TO POLICYHOLDER(S)**
  The Important Notice(s) to Policyholder(s) provide a general explanation of changes in coverage to your policy. The Important Notice(s) to Policyholder(s) is not a part of your insurance policy and it does not alter policy provisions or conditions. Only the provisions of your policy determine the scope of your insurance protection. It is important that you read your policy carefully to determine your rights, duties and what is and is not covered.

| FORM NUMBER | TITLE |
| --- | --- |
| NP 73 12 01 15 | Terrorism Insurance Premium Notice And Opportunity To Reject |
| NP 89 69 11 10 | Important Policyholder Information Concerning Billing Practices |
| NP 99 99 02 16 | Important Notice to Policyholders Amendment of Aircraft Exclusion |

- This policy will be direct billed. You may choose to combine any number of policies on one bill with your billing account. Please contact your agent for more information.

11/15/2016

CLEARCOMM OF TAMPABAY, INC.

PO Box 10216
Largo, FL 33773

USO  (17)   57 61 64 46
From 11/02/2016 To 11/02/2017



(800) 444-1744
INSURANCE INTERMEDIARIES INC

280 N HIGH ST STE 300
COLUMBUS, OH 43215-2535

## TERRORISM INSURANCE PREMIUM DISCLOSURE
## AND OPPORTUNITY TO REJECT

**This notice contains important information about the Terrorism Risk Insurance Act and its effect on your policy. Please read it carefully.**

### THE TERRORISM RISK INSURANCE ACT

The Terrorism Risk Insurance Act, including all amendments ("TRIA" or the "Act"), establishes a program to spread the risk of catastrophic losses from certain acts of terrorism between insurers and the federal government. If an individual insurer's losses from certified acts of terrorism exceed a specified deductible amount, the government will reimburse the insurer for a percentage of losses (the "Federal Share") paid in excess of the deductible, but only if aggregate industry losses from such acts exceed the "Program Trigger". An insurer that has met its insurer deductible is not liable for any portion of losses in excess of $100 billion per year. Similarly, the federal government is not liable for any losses covered by the Act that exceed this amount. If aggregate insured losses exceed $100 billion, losses up to that amount may be pro-rated, as determined by the Secretary of the Treasury.

The Federal Share and Program Trigger by calendar year are:

| Calendar Year | Federal Share | Program Trigger |
|---|---|---|
| 2015 | 85% | $100,000,000 |
| 2016 | 84% | $120,000,000 |
| 2017 | 83% | $140,000,000 |
| 2018 | 82% | $160,000,000 |
| 2019 | 81% | $180,000,000 |
| 2020 | 80% | $200,000,000 |

### MANDATORY OFFER OF COVERAGE FOR "CERTIFIED ACTS OF TERRORISM" AND DISCLOSURE OF PREMIUM

TRIA requires insurers to make coverage available for any loss that occurs within the United States (or outside of the U.S. in the case of U.S. missions and certain air carriers and vessels), results from a "certified act of terrorism" AND that is otherwise covered under your policy.

A "certified act of terrorism" means:

[A]ny act that is certified by the Secretary [of the Treasury ], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States.

(i)   to be an act of terrorism;

(ii)  to be a violent  act or an act that is dangerous  to
    (I)  human life;
    (II)  property;  or
    (III)  infrastructure;

(iii)  to have resulted  in damage  within  the United  States, or outside  of the United  States in the case of
    (I)  an air carrier  (as defined  in section  40102 of title  49, United  States Code) or United  States flag vessel  (or a vessel based principally  in the United  States, on which  United  States income  tax is paid and whose insurance  coverage  is subject to regulation  in the United  States); or
    (II)  the premises  of a United  States mission;  and

(iv)  to have been committed   by an individual   or individuals   as part of an effort  to coerce the civilian population   of the United  States or to influence  the policy  or affect  the conduct  of the United  States Government   by coercion.

### REJECTING TERRORISM INSURANCE COVERAGE - WHAT YOU MUST DO

We have included  in your policy  coverage  for losses resulting  from "certified   acts of terrorism"   as defined above.

THE PREMIUM  CHARGE FOR THIS COVERAGE APPEARS ON THE DECLARATIONS  PAGE OF THE POLICY AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOV-ERNMENT UNDER THE ACT. If we are providing  you with a quote, the premium  charge will also appear on your quote as a separate line item charge.

IF YOU CHOOSE TO REJECT THIS COVERAGE, PLEASE CHECK THE BOX BELOW, SIGN THE ACKNOWL-EDGEMENT, AND RETURN THIS FORM TO THE ADDRESS BELOW: **Please ensure any rejection  is received within  (30) days of the effective  date of your policy.**

Before  making  a decision  to reject terrorism  insurance,  refer to the Underlying  Coverage  Requirement located  at the end of this Notice.

☐  I hereby  reject this offer of coverage.  I understand  that by rejecting  this offer, I will have no coverage  for losses arising  from a "certified  acts of terrorism"  and my policy  will be endorsed  accordingly.

Policyholder/Applicant's   Signature          Print  Name          Date Signed

_____    _____    _____

Named  Insured                Policy  Number
CLEARCOMM OF TAMPABAY, INC.        USO  (17)   57 61 64 46

Policy  Effective/Expiration   Date
From 11/02/2016 To 11/02/2017

### UNDERLYING  COVERAGE REQUIREMENT

This policy  will apply to Terrorism  Coverage  only in excess of the total amounts  stated as the applicable limits  of the underlying  policies listed in the Schedule  of Underlying  Insurance  and the applicable  limits  of any other insurance providing  coverage  to you during  the Policy Period.

If you fail to comply  with this Underlying  Coverage  Requirement  and you do not maintain  your underlying limits  as scheduled,  we will only be liable  to the same extent  that we would  have been had you fully complied  with this requirement.

### IF YOU REJECTED THIS COVERAGE, PLEASE RETURN THIS FORM TO:

Attn: Commercial  Lines Division  - Terrorism
P.O. Box 66400
London, KY 40742-6400

**The summary of the Act and the coverage under your policy contained  in this notice is necessarily general in nature. Your policy contains specific terms, definitions, exclusions and conditions. In case of any conflict, your policy  language will control  the resolution  of all coverages questions. Please read your policy carefully.**

If you have any questions  regarding  this notice, please contact  your agent.

# IMPORTANT  POLICYHOLDER INFORMATION
# CONCERNING  BILLING  PRACTICES



**Dear Valued Policyholder:** This insert provides you with important information about our policy billing practices that may affect you. Please review it carefully and contact your agent if you have any questions.

**Premium Notice:** We will mail you a policy Premium Notice separately. The Premium Notice will provide you with specifics regarding your agent, the account and policy billed, the billing company, payment plan, policy number, transaction dates, description of transactions, charges/credits, policy amount balance, minimum amount, and payment due date. This insert explains fees that may apply to and be shown on your Premium Notice.

**Available Premium Payment Plans:**

- **Annual Payment Plan:** When this plan applies, you have elected to pay the entire premium amount balance shown on your Premium Notice in full. No installment billing fee applies when the Annual Payment Plan applies.

- **Installment Payment Plan:** When this plan applies, you have elected to pay your policy premium in installments (e.g.: quarterly or monthly installments - Installment Payment Plans vary by state). As noted below, an installment fee may apply when the Installment Payment Plan applies.

The Premium Payment Plan that applies to your policy is shown on the top of your Premium Notice. Please contact your agent if you want to change your Payment Plan election.

**Installment Payment Plan Fee:** If you elected to pay your premiums in installments using the Installment Premium Payment Plan, an installment billing fee applies to each installment bill. The installment billing charge will not apply, however, if you pay the entire balance due when you receive the bill for the first installment. Because the amount of the installment charge varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Dishonored Payment Fee:** Your financial institution may refuse to honor the premium payment withdrawal request you submit to us due to insufficient funds in your account or for some other reason. If that is the case, and your premium payment withdrawal request is returned to us dishonored, a payment return fee will apply. Because the amount of the return fee varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Late Payment Fee:** If we do not receive the minimum amount due on or before the date or time the payment is due, as indicated on your Premium Notice, you will receive a policy cancellation notice effective at a future date that will also reflect a late payment fee charge. Issuance of the cancellation notice due to non-payment of a scheduled installment(s) may result in the billing and collection of all or part of any outstanding premiums due for the policy period. Late Payment Fees vary from state to state and are not applicable in some states.

**Special Note:** Please note that some states do not permit the charging of certain fees. Therefore, if your state does not allow the charging of an Installment Payment Plan, Dishonored Payment or Late Payment Fee, the disallowed fee will not be charged and will not be included on your Premium Notice.

**EFT-Automatic Withdrawals Payment Option:** When you select this option, you will not be sent Premium Notices and, in most cases, will not be charged installment fees. For more information on our EFT-Automatic Withdrawals payment option, refer to the attached policyholder plan notice and enrollment sheet.

Once again, please contact your agent if you have any questions about the above billing practice information.

**Thank you for selecting us to service your insurance needs.**

# IMPORTANT  NOTICE  TO  POLICYHOLDERS
# AMENDMENT   OF AIRCRAFT EXCLUSION

Dear Valued Policyholder,

Thank you for selecting us as your carrier for your excess liability insurance. This notice contains a brief summary of the coverage changes made to your policy.

The changes outlined below are organized by individual endorsements. Please note that not all of the endorsements noted may apply to your specific policy. In addition, this notice does not reference every editorial change made to the endorsement or coverage form, only material (or significant) coverage changes.

Please read your policy and review your Declarations page for complete coverage information. No coverage is provided by this notice, nor can it be construed to replace any provisions of your policy. If there are discrepancies between your policy and this notice, the provisions of the policy shall prevail.

Should you have questions after reviewing the changes outlined below, please contact your independent agent. Thank you for your business.

## SUMMARY  OF POLICY CHANGES

*If your renewal policy contains endorsement* **CU 89 21 07 15 AMENDMENT  OF AIRCRAFT EXCLUSION** *and your prior policy contained endorsement* **CU 89 21 01 13 AMENDMENT  OF AIRCRAFT EXCLUSION** *then the following changes apply to your policy:*

### POTENTIAL RESTRICTION OF COVERAGE

Coverage is potentially restricted in that the exclusionary wording is amended to exclude "bodily injury" and "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, if such aircraft is owned or operated by or rented or loaned to any "insured".

### CLARIFYING, EDITORIAL AND PROCEDURAL CHANGES

This endorsement has been revised to align more closely with the aircraft exclusionary language in your underlying liability insurance. Language was added for those aircraft operated by or rented or loaned to any "insured".

Editorial changes are made throughout to achieve consistency among forms and improve readability .

 © 2015 Liberty Mutual Insurance

**Liberty Mutual.**
**INSURANCE**

The Ohio Casualty Insurance Company

## Commercial Umbrella
## Policy Declarations

Basis: Occurrence

| (ITEM 1) NAMED INSURED & MAILING ADDRESS | AGENT MAILING ADDRESS & PHONE NO. |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| PO Box 10216 | INSURANCE INTERMEDIARIES INC |
| C / O Bruce Kadoura | 280 N HIGH ST STE 300 |
| Largo, FL 33773 | COLUMBUS, OH 43215-2535 |

**Named Insured Is:** CORPORATION

**Named Insured Business Is:** CELL PHONE STORE

### (ITEM 2) POLICY PERIOD

From 11/02/2016 TO 11/02/2017 12:01 AM Standard Time at Insured Mailing Location

### (ITEM 3) PREMIUM CHARGES

| Explanation of Charges | DESCRIPTION | | PREMIUM |
|---|---|---|---|
| | Commercial Umbrella | | $4,733.00 |
| | Certified Acts of Terrorism Coverage | $47.00 | (Included) |

*Total Advance Charges* **$4,733.00**

*Note: This is not a bill*

BASIS OF PREMIUM:        NON-AUDITABLE( X )        AUDITABLE(  )

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY WILL RECEIVE AND RETAIN NO LESS THAN (*0%*  ) OF THE POLICY PREMIUM AS THE MINIMUM RETAINED PREMIUM PLUS CERTIFIED ACTS OF TERRORISM COVERAGE AND ANY APPLICABLE TAXES AND SURCHARGES.

### (ITEM 4) LIMITS OF INSURANCE

| DESCRIPTION | LIMIT |
|---|---|
| EACH OCCURRENCE | $5,000,000 |
| AGGREGATE (WHERE APPLICABLE) | $5,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE | $5,000,000 |
| SELF-INSURED RETENTION | $10,000 |

| Servicing Office and Issue Date | Ohio Regional Office 11/15/16 | Authorized Representative |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 22 01 08**

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In:

The Ohio Casualty Insurance Company

USO  (17)  57 61 64 46

**(ITEM 5) SCHEDULE OF UNDERLYING INSURANCE:**

| CARRIER, POLICY NUMBER AND PERIOD | TYPE OF COVERAGE | LIMITS OF INSURANCE | |
|---|---|---|---|
| OHIO SECURITY INSURANCE COMPANY | BUSINESSOWNERS LIABILITY | *$1,000,000* | LIABILITY AND MEDICAL EXPENSE LIMIT |
| | | *$2,000,000* | OTHER THAN PRODUCTS - COMPLETED OPERATIONS AGGREGATE |
| | | *$2,000,000* | PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT |
| | Includes Non-Owned and/or Hired Auto Liability | | |
| BZS(17)57616446 11/02/2016 - 11/02/2017 | | | |
| OHIO SECURITY INSURANCE COMPANY | EMPLOYERS LIABILITY* | *$1,000,000* | BODILY INJURY EACH ACCIDENT LIMIT |
| XWS(17)57616446 11/02/2016 - 11/02/2017 | | *$1,000,000* | BODILY INJURY BY DISEASE AGGREGATE LIMIT |
| | | *$1,000,000* | BODILY INJURY BY DISEASE EACH EMPLOYEE LIMIT |

*EMPLOYERS LIABILITY COVERAGE IS NOT PROVIDED FOR CLAIMS BY EMPLOYEES WHO ARE SUBJECT TO THE WORKERS COMPENSATION LAWS OF NEW YORK

*To report a claim, call your Agent or 1-800-362-0000*

**DS 70 23 01 08**

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
The Ohio Casualty Insurance Company

Policy Number
USO (17) 57 61 64 46

## POLICY FORMS AND ENDORSEMENTS

This section lists all the Forms and Endorsements for your policy. Refer to these documents as needed for detailed information concerning your coverage.

| FORM NUMBER | TITLE |
|---|---|
| CU 60 02 06 97 | Commercial Umbrella Coverage Form |
| CU 60 05 06 97 | Named Insured |
| CU 60 30 06 97 | Care, Custody or Control Exclusion - Real or Personal Property |
| CU 60 39 01 15 | Cap On Losses From Certified Acts Of Terrorism |
| CU 60 40 01 15 | Underlying Coverage Requirement For Certified Acts Of Terrorism |
| CU 61 06 01 13 | Auto Liability - Following Form |
| CU 61 79 09 00 | District of Columbia Changes - Cancellation |
| CU 63 44 06 97 | Foreign Liability - Following Form |
| CU 63 80 12 04 | Fungi or Bacteria Exclusion |
| CU 64 79 05 09 | Exclusion - Recording and Distribution of Material or Information in Violation of the Law |
| CU 64 82 07 14 | Amendment - Electronic Data |
| CU 64 87 10 05 | Economic or Trade Sanctions Condition Endorsement |
| CU 64 92 01 13 | Mobile Equipment - Following Form |
| CU 64 95 12 07 | Waiver Transfer Rights of Recovery Against Others |
| CU 65 08 01 15 | Exclusion Of Punitive Damages Related To A Certified Act Of Terrorism |
| CU 88 01 12 02 | War Liability Exclusion |
| CU 88 03 12 07 | Employment Related Practices Exclusion |
| CU 88 04 07 14 | Professional Services Exclusion |
| CU 88 31 05 09 | Personal and Advertising Injury - Following Form |
| CU 88 39 07 14 | Amendment of Definition of Insured |
| CU 88 41 02 10 | Amendment of Pollution Exclusion |
| CU 88 54 09 00 | District of Columbia Changes - Suspension of Auto Coverage |
| CU 89 19 01 13 | Amendment of Watercraft Exclusion |
| CU 89 21 07 15 | Amendment of Aircraft Exclusion |
| CU 89 40 05 16 | Crisis Management Coverage |
| CU 89 45 10 14 | Access or Disclosure Of Confidential Or Personal Information And Data-Related - Liability with Limited Bodily Injury Exception Exclusion |

In witness whereof, we have caused this policy to be signed by our authorized officers.

Mark Touhey
Secretary

Paul Condrin
President

**To report a claim, call your Agent or 1-800-362-0000**
DS 70 23 01 08

This page intentionally left blank.

CU 60 05 06 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NAMED INSURED

The Named Insured listed in Item **1** of the Declarations is changed to the following:

CLEARCOMM OF TAMPABAY, INC

CLEARCOMM NC INC

WIRELESS WORKS LLC

CLEARCOMM BAWA INC

CLEARCOMM PENN INC

CLEARCOMM NA INC

METROPAY INC

CLEARCOMM OF TEXAS, INC

CLEARCOMM SOVA, INC

This endorsement does not change any other provision of the policy.

**CU 60 05 06 97**                    **(Page 1 of 1)**

This page intentionally left blank.

34  2992

XWS
57616446
11/02/2017

**INSURANCE INTERMEDIARIES INC**

**280 N HIGH ST STE 300**
**COLUMBUS, OH 43215-2535**



---

We strive to produce a quality product for our agents to deliver to the policyholder. In doing so, we ask that you assist us by taking time to review the enclosed policy accuracy. If there are any modifications that need to be made, we request that you return this letter to the Business Center outlining what is in error.

---

Named Insured:          CLEARCOMM OF TAMPABAY, INC.

Corrections needed to be made on this policy (This form is not for routine change requests):

_____

_____

_____

_____

_____

_____

Thank you for your assistance.

Please send to:          *Liberty Mutual Insurance*

## ATTENTION:  C.S.I. UNIT

_____

CAU:

N O N E



Exhibit

**3**

Ohio Security v. Clearcomm

This page intentionally left blank.



**Liberty Mutual.**
INSURANCE

## Policyholder   Information

| **Named Insured & Mailing Address** | **Agent Mailing Address & Phone No.** |
|---|---|
| CLEARCOMM OF TAMPABAY, INC.<br>PO Box 10216<br>Largo, FL 33773 | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC<br>280 N HIGH ST STE 300<br>COLUMBUS, OH 43215-2535 |





**Your Commercial Documents**

### *Dear Policyholder:*

We know you work hard to build your business. We work together with your agent,
**INSURANCE INTERMEDIARIES INC       (800) 444-1744**
to help protect the things you care about. Thank you for selecting us.

Enclosed are your insurance documents consisting of:

THIS IS
NOT A
BILL

* Workers Compensation And Employers Liability Insurance
  Policy, Information Page, Endorsements and Other Documents

To find your specific coverages, limits of liability and premium, please refer to your
Workers Compensation and Employers Liability Insurance Policy Information Page,
extensions, the policy and endorsements.

If you have any questions or changes that may affect your insurance needs, please
contact your Agent at (800) 444-1744



**Reminders**

* Verify that all information is correct
* If you have any changes, please contact your
  Agent at (800) 444-1744
* In case of a claim, call your Agent or 1-800-362-0000

### You Need To Know

* **CONTINUED ON NEXT PAGE**

**You Need To Know - continued**

- **NOTICE(S) TO POLICYHOLDER(S)**

  The Important Notice(s) to Policyholder(s) provide a general explanation of changes in coverage to your policy. The Important Notice(s) to Policyholder(s) is not a part of your insurance policy and it does not alter policy provisions or conditions. Only the provisions of your policy determine the scope of your insurance protection. It is important that you read your policy carefully to determine your rights, duties and what is and is not covered.

| FORM NUMBER | TITLE |
| --- | --- |
| DN E- 1A | Deductible Notice of Election |
| NP 70 04 07 16 | Important Notice To Policyholders Drug-Free Workplace Premium Credit Program |
| NP 70 53 01 00 | Virginia Important Information Regarding Your Insurance |
| NP 70 68 02 07 | Texas Important Contact Information |
| NP 70 81 06 01 | Florida Notice |
| NP 71 87 07 04 | Application for Drug-Free Workplace Premium Credit Program |
| NP 74 44 09 06 | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders |
| NP 76 00 10 13 | Texas Workers Compensation Policyholder Notice |
| NP 88 61 04 10 | Notice to Policyholders - South Carolina Workers' Compensation Deductible Program |
| NP 88 91 04 10 | Florida Workers Compensation Deductible Program |
| NP 89 69 11 10 | Important Policyholder Information Concerning Billing Practices |
| NP 90 69 07 06 | Certification of Employer Workplace Safety Program Premium Credit |
| NP 95 76 07 14 | Louisiana Notice of Election/Revocation of Coverage |
| OC 72 31 07 01 | Certification of Drug-Free Workplace Premium Credit Program |
| WC 34 45 11 99 | Penalties For Illegally Hiring Minors |

- This Workers Compensation and Employees Liability policy is auditable. Please refer to the conditions of the policy for details or contact your agent.

- This policy will be direct billed. You may choose to combine any number of policies on one bill with your billing account. Please contact your agent for more information.

NP 95 76 07 14

# LOUISIANA
# NOTICE OF ELECTION/REVOCATION OF COVERAGE
## Under the Louisiana Workers' Compensation Act



_____   _____
Federal Employer Identification Number (FEIN)   Company Name

_____   _____   _____   _____
Address                                          City, State          Zip Code

Officer* / Sole Proprietor / Partner* / LLC Member*:

____ I, the undersigned officer / sole proprietor / partner / LLC member of the above named entity, do hereby ***ELECT TO BE EXEMPT FROM COVERAGE*** under the Louisiana Workers' Compensation Act L.S.A.R.S.23:1035(A), effective on the date indicated below. It is further agreed that this election shall be in effect until the undersigned gives the carrier written notice to the contrary. I also certify that I qualify for the election according to L.S.A.R.S. 23:1035 and 12:1301(A)(13).

____ I, the undersigned officer / sole proprietor / partner / LLC member of the above named entity, do hereby ***REVOKE THE EXEMPTION FROM COVERAGE*** executed earlier and ***elect to be covered*** under the Louisiana Workers' Compensation Act L.S.A.R.S. 23:1035(A), effective on the date indicated below.

*An Officer / Partner / LLC member electing to be exempt from coverage must have at least 10% ownership in the company listed above. Each Officer / Sole Proprietor / Partner / LLC member must sign a separate form.

_____   _____
Signature                                         Date

_____   _____
Print name and title                              Date of Birth or Social Security Number

_____   _____   _____
Address                                          City, State          Zip Code

_____
Agency name

_____   _____   _____
Address                                          City, State          Zip Code

Please return the signed and completed form to the address below:

Liberty Mutual Insurance
1913 E Kentucky Avenue Suite 1
Ruston LA 71270

Telephone 1-800-551-5100

This page intentionally left blank.

## DEDUCTIBLE NOTICE OF ELECTION

Texas law permits an employer to obtain workers compensation insurance with a deductible. The insurance applies only to benefits payable under Texas workers compensation law. When a deductible is elected, the policyholder is required to reimburse the insurance carrier for benefits payable under the law up to the deductible amount and a credit is applied to the policy. Premium credits are determined based on the deductible selected and the hazard group. The hazard group is determined by the classification that produces the largest amount of estimated Texas standard premium.

You are not required to choose a deductible. If you do choose one, your insurance company will pay the deductible amount for you, but you must reimburse the insurance company within 30 days after they send you notice that payment is due. If you fail to reimburse the insurance company, they may cancel the policy upon ten days written notice, and any resulting premium may be applied to the deductible amount owed.

If a deductible amount is desired, please indicate below.

☐   Yes, I want a deductible of (select only one):

    1.  $_____ per accident

    2.  $_____ per claim

    3.  $_____ medical-only

    applied to benefits payable under the Texas Workers Compensation Law. I understand that the company will pay the deductible amount and seek reimbursement _____.

                                               (monthly, quarterly or other)

☐   No, I do not want a deductible applied to benefits payable under the Texas Workers Compensation Law.

☐   Yes, I do want a deductible policy, but am unable to obtain one for the following reason: _____

_____

The deductible plans have been explained to me.

_____        _____

    Signature and Title                              Date

_____        _____

    Employer Name (print or type)                  Address

Ohio Security Insurance Company
        Insurance Company

XWS (17) 57616446        11/02/2016
    Policy No.                 Effective Date

DNE-1A (Ed. 6-14)

© Copyright 2014 National Council on Compensation Insurance, Inc. All Rights Reserved.

NP 70 04 07 16

# IMPORTANT  NOTICE
# TO POLICYHOLDERS

## Drug-Free  Workplace  Premium  Credit  Program

To promote  safety  in the workplace,  we will support our policyholders  and, where legally allowed,  reward you with a drug-testing   credit.  To be eligible  for the  credit,  you must  adopt  and maintain  a drug-free workplace  program  that meets  our standard  program  rules  and all relevant  state and federal  drug testing laws.

Send us a copy of your substance  abuse policy along  with the completed  certification  form, which is attached  to your insurance  policy.  This will give us an overview  of your current  drug-testin g program  so we can contact  you to determine  eligibility   for a credit.

For assistance  or questions,  contact  our Risk Control  department  for a Workplace  Programs  specialist  at 866-757-7324.  We can provide  general  information   about drug testing  and also direct  you to resources  to help you qualify  for state specific  programs.

We encourage  you to protect  the safety  of your workers  and take the responsibility   of developing  a Drug-Free Workplace  Program!

Risk Control  Department
Attn:  Drug-Free  Workplace  Team
P.O. Box 188060
Fairfield,  OH 45018

NP 70 53 01 00

**VIRGINIA  NOTICE**

# IMPORTANT   CONTACT   INFORMATION



In the event you need to contact someone about this insurance for any reason, please contact your agent. If you have additional  questions  you may contact Liberty Mutual Insurance at the following  address:

P.O. Box 188060
Fairfield,  Ohio  45018
1-800-843-6446

If you have been unable to contact or obtain satisfaction  from the company  or agent, you may contact the Virginia  State Corporation  Commission's  Bureau of Insurance  at:

Property  and Casualty Division
State Corporation  Commission
Bureau  of Insurance
P.O. Box 1157
Richmond,  VA 23218

In-state  toll-free  calls: 1-800-552-7945
Out-of-state  calls:  804-371-9741

Written  correspondence  is preferable  so that a record of your inquiry  is maintained.  When contacting  your agent, company  or the Bureau of Insurance,  have your policy  number  available.

**The Ohio Casualty Insurance Company**
**West American Insurance Company**
**American Fire & Casualty Company**
**Ohio Security Insurance Company**

**TEXAS**
**IMPORTANT NOTICE**
**IMPORTANT CONTACT INFORMATION**

To obtain information or make a complaint:

You may call Liberty Mutual Insurance's toll-free telephone number for information or to make a complaint at

**1-800-443-2534**

You may also write to Liberty Mutual Insurance at:

Liberty Mutual Insurance
P.O. Box 833906
Richardson, Texas 75083-3906

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at

**1-800-252-3439**

You may write the Texas Department of Insurance
P.O. Box 149104
Austin, TX 78714-9104
FAX# (512) 475-1771

Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim you should contact the agent or Liberty Mutual Insurance first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.

---

**TEXAS**
**AVISO IMPORTANTE**
**INFORMACION IMPORTANTE DE COMUNICARSE**

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de Liberty Mutual Insurance para informacion o para someter una queja al

**1-800-443-2534**

Usted tambien puede escribir a Liberty Mutual Insurance:

Liberty Mutual Insurance
P.O. Box 833906
Richardson, Texas 75083-3906

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas
P.O. Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771

Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o Liberty Mutual Insurance primero. Si no se resuelve la disputa, puede entonces comunicarse con el departmento (TDI).

**UNA ESTE AVISO A SU POLIZA:**

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

---

NP 70 81 06 01

# FLORIDA  NOTICE

The following   statement  is added  to the policy:

Any  questions  or problems  concerning  your  policy,  please  contact:

**A.**   Your  agent,

**B.**   Your  local  Liberty  Mutual  Insurance  Servicing  Office



MAILING  ADDRESS:

P.O. Box  49130
Charlotte,  NC 28277-9130
704-759-7661

## FORM 09-1

**NOTICE TO EMPLOYER: If you have a Drug-Free Workplace Program established and maintained in accordance with Florida law, and you would like to apply for the 5% premium credit that is available, please complete this form for each policy period in which you would like to receive the credit and forward it to your insurer.**

### APPLICATION FOR DRUG-FREE WORKPLACE PREMIUM CREDIT PROGRAM

Name of Employer: _____

Date Program Implemented: _____

**Testing:**

Procedures for drug testing have been established and/or drug testing has been conducted in the following areas:

\_\_\_\_ Job applicant                          \_\_\_\_ Routine fitness for duty

\_\_\_\_ Reasonable suspicion               \_\_\_\_ Follow-up testing to Employee Assistance Program

**Notice of Employer's Drug Testing Policy:**

\_\_\_\_ Copy to all employees prior to testing          \_\_\_\_ Show notice of drug testing on vacancy announcements

\_\_\_\_ Posted on employer's premises                    \_\_\_\_ Copies available in personnel office or other suitable locations

\_\_\_\_ Copy to job applicants prior to testing

\_\_\_\_ General notice given 60 days prior to testing    \_\_\_\_ No notice required because the employer had a drug testing program in place prior to July 1, 1990

**Education:**

\_\_\_\_ Resource file on providers
\_\_\_\_ Employee Assistance Program
\_\_\_\_ Education

Name of Medical Review Officer: _____

A.   Name of approved Agency for Health Care Administration  Lab or United States Department of Health and Human Services Certified Laboratory: _____

B.   Phone #: (      )_____

C.   Address: _____

Your certification is subject to physical verification by the insurer. Your policy is subject to additional premium for reimbursement of premium credit, and cancellation provisions of the policy if it is determined that you misrepresented your compliance with Florida law. Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

_____          _____
Employer Name                                    Officer/Owner Signature*

_____          _____
Date                                                      Title

* Application must be signed by an officer or owner.

**THE ABOVE SIGNED CERTIFIES THAT THIS INFORMATION IS A TRUE AND FACTUAL DEPICTION OF THEIR CURRENT PROGRAM.**

_____      _____      _____
Notary Public's Signature              Date                    Exp. of Commission

©2004 National Council on Compensation Insurance, Inc.                    NC3010 (TB00002)

NP 71 87 07 04

12        of 128

NP 74 44 09 06

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
## ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

Please refer any questions you may have to your insurance agent.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© 2011 Liberty Mutual Insurance. All rights reserved.

Cover Page

# TEXAS WORKERS COMPENSATION
# POLICYHOLDER NOTICE

**Your policy is issued in one of the following companies:**

**American Fire and Casualty Company**
**Ohio Casualty Insurance Company**
**Ohio Security Insurance Company**
**West American Insurance Company**

**Pursuant to Texas Labor Code §411.066, Liberty Mutual Insurance is required to notify its policyholders that accident prevention services are available from Liberty Mutual Insurance at no additional charge. These services may include surveys, recommendations, training programs, consultations, analyses of accident causes, industrial hygiene, and industrial health services. Liberty Mutual Insurance is also required to provide return-to-work coordination services as required by Texas Labor Code §413.021 and to notify you of the availability of the return-to-work reimbursement program for employers under Texas Labor Code §413.022. If you would like more information, contact Liberty Mutual Insurance at 1-866-757-7324 and RCConsultingCenter@LibertyMutual.com for accident prevention services, or 1-877-397-2255 and RTWTexas@LibertyMutual.com for return-to-work coordination services. For information about these requirements call the Texas Department of Insurance, Division of Workers' Compensation (TDI-DWC) at 1-800-687-7080 or for information about the return-to-work reimbursement program for employers call the TDI-DWC at (512) 804-5000. If Liberty Mutual Insurance fails to respond to your request for accident prevention services or return-to-work coordination services, you may file a complaint with the TDI-DWC in writing at http://www.tdi.texas.gov or by mail to Texas Department of Insurance, Division of Workers' Compensation, MS-8, at 7551 Metro Center Drive, Austin, Texas 78744-1645.**

 © 2013 Liberty Mutual Insurance. All rights reserved.

**NP 88 61 04 10**

# South Carolina Workers Compensation Deductible Program

South Carolina Law requires all insurers offering Workers Compensation insurance in South Carolina to offer employers the option of a deductible, subject to the insurer's determination of the employer's financial ability to pay the deductible. Deductibles are available for medical and indemnity benefits in the amounts of $100, $200, $300, $400, $500, $1,000, $1,500, $2,000 or $2,500, per claim. You may choose only one deductible amount.

As an employer, you can accept or reject this deductible offering. If a deductible has not been included in your quotation or on your policy and you are interested in a deductible option, please contact your independent agent.

**NP 88 91 04 10**

## Florida  Workers  Compensation  Deductible  Program

Florida Law requires  all insurers  offering  Workers Compensation  insurance  in Florida to offer employers  the option  of a deductible,  subject to the insurer's  determination  of the employer's  financial  ability  to pay the deductible.   A medical and indemnity   benefit  deductible  option  in the amount  of $2,500 is available  in Florida.

As an employer,   you can accept or reject this deductible  offering.   If a deductible  has not been included  in your quotation  or on your policy  and you are interested  in a deductible  option,  please contact your indepen- dent agent.

# IMPORTANT  POLICYHOLDER INFORMATION
# CONCERNING  BILLING PRACTICES



**Dear Valued Policyholder:** This insert provides you with important information about our policy billing practices that may affect you. Please review it carefully and contact your agent if you have any questions.

**Premium Notice:** We will mail you a policy Premium Notice separately. The Premium Notice will provide you with specifics regarding your agent, the account and policy billed, the billing company, payment plan, policy number, transaction dates, description of transactions, charges/credits, policy amount balance, minimum amount, and payment due date. This insert explains fees that may apply to and be shown on your Premium Notice.

**Available Premium Payment Plans:**

- **Annual Payment Plan:** When this plan applies, you have elected to pay the entire premium amount balance shown on your Premium Notice in full. No installment billing fee applies when the Annual Payment Plan applies.

- **Installment Payment Plan:** When this plan applies, you have elected to pay your policy premium in installments (e.g.: quarterly or monthly installments - Installment Payment Plans vary by state). As noted below, an installment fee may apply when the Installment Payment Plan applies.

The Premium Payment Plan that applies to your policy is shown on the top of your Premium Notice. Please contact your agent if you want to change your Payment Plan election.

**Installment Payment Plan Fee:** If you elected to pay your premiums in installments using the Installment Premium Payment Plan, an installment billing fee applies to each installment bill. The installment billing charge will not apply, however, if you pay the entire balance due when you receive the bill for the first installment. Because the amount of the installment charge varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Dishonored Payment Fee:** Your financial institution may refuse to honor the premium payment withdrawal request you submit to us due to insufficient funds in your account or for some other reason. If that is the case, and your premium payment withdrawal request is returned to us dishonored, a payment return fee will apply. Because the amount of the return fee varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Late Payment Fee:** If we do not receive the minimum amount due on or before the date or time the payment is due, as indicated on your Premium Notice, you will receive a policy cancellation notice effective at a future date that will also reflect a late payment fee charge. Issuance of the cancellation notice due to non-payment of a scheduled installment(s) may result in the billing and collection of all or part of any outstanding premiums due for the policy period. Late Payment Fees vary from state to state and are not applicable in some states.

**Special Note:** Please note that some states do not permit the charging of certain fees. Therefore, if your state does not allow the charging of an Installment Payment Plan, Dishonored Payment or Late Payment Fee, the disallowed fee will not be charged and will not be included on your Premium Notice.

**EFT-Automatic Withdrawals Payment Option:** When you select this option, you will not be sent Premium Notices and, in most cases, will not be charged installment fees. For more information on our EFT-Automatic Withdrawals payment option, refer to the attached policyholder plan notice and enrollment sheet.

Once again, please contact your agent if you have any questions about the above billing practice information.

**Thank you for selecting us to service your insurance needs.**

NP 90 69 07 06

## CERTIFICATION OF EMPLOYER WORKPLACE SAFETY PROGRAM PREMIUM CREDIT

Employer Name:  <u>CLEARCOMM OF TAMPABAY, INC.</u>

Name of Contact Person: _____   Telephone No.: _____

Policy No.: <u>57616446</u> _____   Effective Date of Policy: <u>11/02/2016</u>

I am submitting  a copy of my workplace  safety program which meets the requirements  of Section 440.1025, Florida Statutes. I certify that this safety program has been implemented in my workplace and is being maintained as submitted to my carrier.

This is to certify that my workplace safety program meets or exceeds the following provisions as provided for in Section 440.1025, Florida Statutes:

1) Written safety policy and safety rules
2) Safety inspections
3) Preventive maintenance
4) Safety training
5) First aid
6) Accident investigation
7) Necessary record keeping

The workplace safety program and application I am submitting for the purpose of obtaining a premium credit do not contain any false, incomplete, or misleading information. I attest to the accuracy of the information submitted. I am aware that I may be subject to an on-site inspection by my carrier, for the purpose of validating the accuracy of this information.

I am aware that any person who submits an application that contains false, misleading, or incomplete information provided with the purpose of avoiding or reducing the amount of premiums for workers' compensation coverage is a felony of the second degree, punishable as provided in Sections 775.082, 775.083 or 775.084 Florida Statutes, or as otherwise punishable as provided under the law.

State of Florida
County of _____

_____
(Signature)

Sworn to, or affirmed, and subscribed before me

this _____ day of _____

_____
(Print Name and Title)

20 ____ , by _____

_____
(Date)

_____
(Signature of Notary)

_____
(Expiration Date and Number)

(NC3011)
Form  SAFETY 09-3

©  Copyright 1994-2006 National  Council on Compensation Insurance, Inc. All Rights Reserved.

NP 95 76 07 14

# LOUISIANA
# NOTICE  OF  ELECTION/REVOCATION  OF  COVERAGE
## Under  the  Louisiana  Workers'  Compensation  Act

_____        _____

Federal  Employer  Identification  Number  (FEIN)        Company  Name

_____

Address                                          City, State                Zip Code

Officer*  / Sole Proprietor  / Partner*  / LLC Member*:

____ I, the undersigned  officer / sole proprietor  / partner / LLC member  of the above named  entity, do hereby ***ELECT TO BE EXEMPT FROM COVERAGE*** under the Louisiana Workers' Compensation  Act L.S.A.R.S.23:1035(A),  effective  on the date indicated below. It is further  agreed that this election shall be in effect until the undersigned  gives the carrier written  notice to the contrary.  I also certify that I qualify  for the election  according  to L.S.A.R.S.  23:1035 and 12:1301(A)(13).

____ I, the undersigned  officer / sole proprietor  / partner / LLC member  of the above named  entity, do hereby ***REVOKE THE EXEMPTION FROM COVERAGE*** executed  earlier  and ***elect  to be covered*** under the Louisiana Workers'  Compensation  Act L.S.A.R.S. 23:1035(A),  effective  on the date indicated below.

*An Officer  / Partner / LLC member  electing  to be exempt  from coverage
must  have at least  10% ownership  in the company  listed above. Each
Officer / Sole Proprietor  / Partner / LLC member  must sign a separate form.

_____        _____

Signature                                          Date

_____        _____

Print  name and title                              Date of Birth  or Social Security  Number

_____

Address                                          City, State                Zip Code

_____

Agency  name

_____

Address                                          City, State                Zip Code

Please  return  the signed  and completed  form  to the address  below:

Liberty  Mutual  Insurance
1913 E Kentucky  Avenue  Suite 1
Ruston  LA 71270

Telephone  1-800-551-5100

**OC 72 31 07 01**

# CERTIFICATION  OF DRUG-FREE WORKPLACE
# PREMIUM  CREDIT PROGRAM

Name of Employer:  _____

Address:  _____

Contact  Person:  _____   Phone  Number:  _____

Date Drug Testing  Began:  _____   Insurance  Policy  Number:  _____

**Testing:**

Use the following   options  for all tests that apply =     A = All Employees,  S = Safety  Sensitive
                                                         D = DOT Only,  V = Named  Drivers,  N = None

_____   Post-Job  Offer (Pre- employment)          _____   Post-Accident
_____   Reasonable  Suspicion  or Cause            _____   Random _____ % tested  on an annual  basis
_____   Follow-up  to Rehabilitation              _____   Other

**Notice  Given To Employees:** (Check all that  apply)
_____   Each employee  was given  a copy of the company's  Drug-Free  Workplace  policy.
_____   Notice  was given to job applicants  prior  to testing

**\*\*  Please attach  a copy of your company's  Drug-Free  Workplace  Program  policy \*\***

**Education/Training:**
_____   Training  was conducted  at commencement   of drug testing  program  for:
         _____   Employees                       _____   Supervisors  on Reasonable  Cause

_____   Annual  Training  is conducted  for:
         _____   Employees                       _____   Supervisors  on Reasonable  Cause

_____   Other  Training:  _____

**Rehabilitation:**
_____   Company-sponsored   Employee  Assistance  Program
_____   List of rehabilitation   providers  or hotlines  provided/posted  to employees

**Laboratory  and MRO:**

Name of SAMHSA-certified   laboratory:  _____

Name of Medical  Review  Officer:  _____

_____         _____        _____

Officer/Owner  Name              Officer/Owner  Signature          Date

**THE ABOVE CERTIFIES THAT THIS INFORMATION  IS A TRUE AND FACTUAL DEPICTION
OF THEIR CURRENT DRUG-FREE WORKPLACE PROGRAM AND AGREES TO ABIDE BY
THE ATTACHED RULES**

## IMPORTANT  NOTICE  FOR MARYLAND

## PENALTIES  FOR ILLEGALLY HIRING  MINORS

## WORKERS  COMPENSATION   AND
## EMPLOYERS  LIABILITY  INSURANCE



IN COMPLIANCE  WITH  MARYLAND  LAW, YOU  ARE HEREBY NOTIFIED OF THE FOLLOWING  INFORMA-TION CONCERNING  EMPLOYMENT  OF MINORS:

(1)  THE EMPLOYER MUST  HAVE A WORK PERMIT FOR EACH EMPLOYEE WHO IS A MINOR,  AS REQUIRED IN TITLE 3, SUBTITLE  2 OF THE LABOR AND EMPLOYMENT  ARTICLE;

(2)  IF THE EMPLOYER DOES NOT HAVE A WORK PERMIT FOR AN EMPLOYEE WHO IS A MINOR, THE STATE WORKERS' COMPENSATION  COMMISSION  MAY AWARD TWICE THE COMPENSA-TION AND DEATH BENEFITS OTHERWISE ALLOWED UNDER TITLE 9, SUBTITLE  6 OF THE LABOR AND EMPLOYMENT  ARTICLE IN A CLAIM BY THAT EMPLOYEE OR THAT EMPLOYEE'S DEPENDENT; AND

(3)  THE EMPLOYER IS SOLELY LIABLE FOR ANY INCREASE IN COMPENSATION  OR DEATH BENEFITS IN A CLAIM BY A MINOR EMPLOYEE FOR WHOM THE EMPLOYER DOES NOT HAVE A WORK PERMIT OR A DEPENDENT OF THAT EMPLOYEE.

**WC 34 45 11 99**

This page intentionally left blank.

Workers Compensation And Employers Liability Insurance Policy WC 00 00 01 A

**Liberty Mutual.** INSURANCE

Coverage provided by
*Ohio Security Insurance Company*

Policy Number:
**XWS (17) 57 61 64 46**

Prior Policy Number:
**NEW**

NCCI Co. No. 19291

Risk ID **913819993**

# Workers Compensation and Employers Liability Insurance Policy Information Page

See Risk ID Extension Page



**ITEM 1: The Insured & Mailing Address**

CLEARCOMM OF TAMPABAY, INC.
PO Box 10216
Largo, FL 33773

**Agent Mailing Address & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC
280 N HIGH ST STE 300
COLUMBUS, OH 43215-2535

___Individual  ___Partnership
X  Corporation or

Other workplaces not shown above:

**FEIN:** 364743346    **NAICS:** 713120

**ITEM 2**   **The policy period is** from   11/02/2016  to  11/02/2017      12:01 am Standard Time at the insured's mailing address.

**ITEM 3**   **A. Workers Compensation Insurance:** Part One of the policy applies to the Workers Compensation Law of the states listed here:   TX  DC  LA  MD  PA  VA  SC  FL

**B. Employers Liability Insurance:** Part Two of the policy applies to work in each state listed in Item 3.A.
The limits of our liability under Part Two are:

| | | |
|---|---|---|
| Bodily Injury by Accident | $1,000,000 | each accident |
| Bodily Injury by Disease | $1,000,000 | policy limit |
| Bodily Injury by Disease | $1,000,000 | each employee |

**C. Other States Insurance:** Part Three of the policy applies to the states, if any, listed here: See Extension of Information  Page
**D. This policy includes these endorsements and schedules:** See Policy Forms and Endorsements Summary

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications,  Rates and Rating Plans. All information  required below is subject to verification  and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| See Extension of Information  Page(s) | | | | |
| Total Estimated  Annual Premium | | | | $39,747.00 |
| Total Surcharges  and Assessments | | | | $184.00 |

| | | | | |
|---|---|---|---|---|
| **Minimum Premium**   $755.00 | DC | Total Estimated  Cost | | $39,931.00 |
| If indicated  below, interim  adjustments  of premiums  shall be made. | | | | |
| | | Deposit Premium | | $39,931.00 |

Servicing  Office     Ohio Regional Office
and Issue Date        11/22/16

Countersigned  by: _____

*To report a claim,  call  your Agent or 1-800-362-0000*
**WC 00 00 01 A (WC 30 10 E)**

©  1987 National Council on Compensation Insurance, Inc.

This page intentionally left blank.

# Liberty Mutual.
### INSURANCE

*Coverage Is Provided In*
*Ohio Security Insurance Company*

**Policy Number:**
**XWS (17) 57 61 64 46**
Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From** **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. 19291

## Workers Compensation and Employers Liability Insurance Policy Information Page

**Named Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

## EXTENSION OF INFORMATION PAGE

## NAME AND LOCATION SCHEDULE

| | | | |
|---|---|---|---|
| Named Insured | CSN | | |
| 001 CLEARCOMM OF TAMPABAY, INC. | 001 | Entity: CORPORATION | FEIN: 364743346 |
| Additional Named Insured | CSN | | |
| 002 CLEARCOMM BAWA INC | 001 | Entity: CORPORATION | FEIN: 364743346 |
| Additional Named Insured | CSN | | |
| 003 WIRELESS WORKS LLC | 001 | Entity: LIMITED LIABILITY CO | FEIN: 364743346 |
| Additional Named Insured | CSN | | |
| 004 CLEAR COMM PENN INC | 001 | Entity: CORPORATION | FEIN: 364743346 |
| Additional Named Insured | CSN | | |
| 005 CLEARCOMM NA INC | 001 | Entity: CORPORATION | FEIN: 364743346 |
| Additional Named Insured | CSN | | |
| 006 CLEARCOMM OF TEXAS, INC | 001 | Entity: CORPORATION | FEIN: 364743346 |
| Additional Named Insured | CSN | | |
| 007 CLEARCOMM SOVA, INC | 001 | Entity: CORPORATION | FEIN: 364743346 |
| Additional Named Insured | CSN | | |
| 008 CLEARCOMM NC INC | 001 | Entity: CORPORATION | FEIN: 364743346 |
| Additional Named Insured | CSN | | |
| 009 METROPAY INC | 001 | Entity: CORPORATION | FEIN: 364743346 |

Servicing Office
and Issue Date

Ohio Regional Office
11/22/16

Countersigned by: _____

**To report a claim, call your Agent or 1-800-362-0000**
**WC 99 06 42 A**

This page intentionally left blank.

**Liberty Mutual. INSURANCE**

Coverage Is Provided In

*Ohio Security Insurance Company*

Policy Number
**XWS (17) 57 61 64 46**
Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From** ___ **To** ___
12:01 am StandardTime
at Insured'sMailingAddress

NCCI Co. No. 19291

**Workers Compensation and Employers Liability Insurance Policy Information Page**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## EXTENSION OF INFORMATION PAGE

| Name Link Code | Location Description | Exposure Record Link | No. of Employees | |
|---|---|---|---|---|
| 001 | 1346 Good Hope Rd SE<br>Washington, DC 20020-6910 | 00003 | 2 | NAICS: 713120 |
| 001 | 1903A Michigan Ave NE<br>Washington, DC 20018-3334 | 00004 | 2 | NAICS: 713120 |
| 001 | 3232 Georgia Ave NW Suite102<br>WASHINGTON, DC 20010 | 00005 | 2 | NAICS: 713120 |
| 001 | 1410 N Capitol St NW 1sf Flr<br>WASHINGTON, DC 20002 | 00058 | 2 | NAICS: 713120 |
| 001 | 3909 14th St NW<br>Washington, DC 20011-5438 | 00060 | 2 | NAICS: 713120 |
| 001 | 2305 Benning Rd NE<br>Washington, DC 20002-4826 | 00061 | 2 | NAICS: 713120 |
| 001 | 4548 S Suncoast Blvd<br>Homosassa, FL 34446-1103 | 00034 | 2 | NAICS: 713120 |
| 001 | 210 US HWY 41 S<br>INVERNESS, FL 34450 | 00035 | 2 | NAICS: 713120 |

| Servicing Office and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 42 A**

This page intentionally left blank.

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
*Ohio Security Insurance Company*

Policy Number
**XWS (17) 57 61 64 46**

Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From**            **To**
12:01 am StandardTime
at Insured'sMailingAddress

NCCI Co. No.  | 19291 |

**Workers Compensation and Employers Liability Insurance Policy Information Page**

| **Named Insured** | **Agent** |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## EXTENSION OF INFORMATION PAGE

| Name Link Code | Location Description | Exposure Record Link | No. of Employees | |
|---|---|---|---|---|
| 001 | 5480 Spring Hill Dr<br>Spring Hill, FL 34606-4559 | 00036 | 2 | NAICS: 713120 |
| 001 | 8482 Lockwood Ridge Rd<br>Sarasota, FL 34243-2920 | 00038 | 2 | NAICS: 713120 |
| 001 | 4033 Mariner Blvd<br>Spring Hill, FL 34609-2467 | 00039 | 2 | NAICS: 713120 |
| 001 | 11051 Spring Hill Dr<br>Spring Hill, FL 34608-5049 | 00040 | 2 | NAICS: 713120 |
| 001 | 3780 Tampa Rd<br>Oldsmar, FL 34677-3041 | 00041 | 2 | NAICS: 713120 |
| 001 | 3386 Tampa Rd<br>Palm Harbor, FL 34684-3425 | 00042 | 2 | NAICS: 713120 |
| 001 | 10091 Us Highway 19<br>Port Richey, FL 34668-3742 | 00043 | 2 | NAICS: 713120 |
| 001 | 1611 SE Us Highway 19<br>Crystal River, FL 34429-4830 | 00044 | 2 | NAICS: 713120 |
| 001 | 4385 Commercial Way<br>Weeki Wachee, FL 34606-1963 | 00045 | 2 | NAICS: 713120 |
| 001 | 1100 N Tuttle Ave Unit 4<br>Sarasota, FL 34237-3012 | 00046 | 2 | NAICS: 713120 |
| 001 | 6224 Commercial Way<br>Weeki Wachee, FL 34613-6325 | 00047 | 2 | NAICS: 713120 |

| Servicing Office and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*
**WC 99 06 42 A**

This page intentionally left blank.

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In The
*Ohio Security Insurance Company*

Policy Number
XWS (17) 57 61 64 46

Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From**              **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. | 19291 |

**Workers Compensation and Employers Liability Insurance Policy Information Page**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## EXTENSION OF INFORMATION PAGE

| Name Link Code | Location Description | Exposure Record Link | No. of Employees | |
|---|---|---|---|---|
| 001 | 36948 State Road 54<br>Zephyrhills, FL 33541-6915 | 00048 | 2 | NAICS: 713120 |
| 001 | 6581 102nd Ave<br>PINELLAS PARK, FL 33782 | 00059 | 2 | NAICS: 713120 |
| 007 | 14312 Spring Hill Dr<br>Spring Hill, FL 34609-5263 | 00032 | 2 | NAICS: 713120 |
| 009 | 1801 NW Us Highway 19<br>Crystal River, FL 34428-6133 | 00033 | 2 | NAICS: 713120 |
| 001 | 4428 Youree Dr<br>Shreveport, LA 71105-3621 | 00095 | 2 | NAICS: 713120 |
| 001 | 638 Reisterstown Rd Ste 12<br>Baltimore, MD 21208-5112 | 00006 | 2 | NAICS: 713120 |
| 001 | 7730 Wise Ave<br>Dundalk, MD 21222-3200 | 00007 | 2 | NAICS: 713120 |
| 001 | 6846 Liberty Rd<br>RANDALLSTOWN, MD 21133 | 00008 | 2 | NAICS: 713120 |
| 001 | 5403 East Dr<br>Arbutus, MD 21227-2605 | 00009 | 2 | NAICS: 713120 |
| 001 | 7000 Arundel Mills Circle 55<br>HANOVER, MD 21076 | 00010 | 2 | NAICS: 713120 |
| 001 | 1134 S Charles St<br>Baltimore, MD 21230-4240 | 00011 | 2 | NAICS: 713120 |

| Servicing Office and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*
**WC 99 06 42 A**

This page intentionally left blank.

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
**Ohio Security Insurance Company**

Policy Number
**XWS (17) 57 61 64 46**
Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From**      **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. [19291]

**Workers Compensation and Employers Liability Insurance Policy Information Page**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744<br>INSURANCE INTERMEDIARIES INC |

## EXTENSION OF INFORMATION PAGE

| Name Link Code | Location Description | Exposure Record Link | No. of Employees | |
|---|---|---|---|---|
| 001 | 10300 Little Patuxent Parkway 65<br>COLUMBIA, MD 21044 | 00012 | 2 | NAICS: 713120 |
| 001 | 6000 Greenbelt Rd Ste 52<br>Greenbelt, MD 20770-1018 | 00014 | 2 | NAICS: 713120 |
| 001 | 3222 Greenmount Ave<br>Baltimore, MD 21218-3438 | 00015 | 2 | NAICS: 713120 |
| 001 | 229 N Howard St<br>Baltimore, MD 21201-3555 | 00016 | 2 | NAICS: 713120 |
| 001 | 8610 Washington Blvd Ste 106<br>Jessup, MD 20794-9601 | 00018 | 2 | NAICS: 713120 |
| 001 | 400 West Lexington St E LM 10/11<br>1-74-CU<br>BALTIMORE, MD 21201 | 00019 | 2 | NAICS: 713120 |
| 001 | 5138 Park Heights Ave<br>Baltimore, MD 21215-5817 | 00020 | 2 | NAICS: 713120 |
| 001 | 114 E Patapsco Ave<br>Brooklyn, MD 21225-1745 | 00021 | 2 | NAICS: 713120 |
| 001 | 1640-1642 Pennsylvania Ave<br>Baltimore, MD 21217-3115 | 00022 | 2 | NAICS: 713120 |
| 001 | 41 Shipping Pl Ste 1ST<br>Dundalk, MD 21222-4393 | 00025 | 2 | NAICS: 713120 |
| 001 | 224 N Eutaw St<br>Baltimore, MD 21201-1709 | 00029 | 2 | NAICS: 713120 |

Servicing Office and Issue Date: Ohio Regional Office 11/22/16

Countersigned by: _____

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 42 A**

This page intentionally left blank.

**Liberty Mutual. INSURANCE**

*Coverage Is Provided In*
**Ohio Security Insurance Company**

Policy Number
**XWS (17) 57 61 64 46**

Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From**          **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No.  19291

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**Named Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

## EXTENSION OF INFORMATION PAGE

| Name Link Code | Location Description | Exposure Record Link | No. of Employees | |
|---|---|---|---|---|
| 001 | 2463 Chillum Rd A-15<br>HYATTSVILLE, MD 20782 | 00030 | 2 | NAICS: 713120 |
| 001 | 950 Largo Town Center Dr No 2<br>UPPER MARLBORO, MD 20774 | 00031 | 2 | NAICS: 713120 |
| 001 | 6901 Security Blvd Ste 885<br>Windsor Mill, MD 21244-8415 | 00070 | 2 | NAICS: 713120 |
| 001 | 8200 Perry Hall Blvd 5517-5518<br>NOTTINGHAM, MD 21236 | 00071 | 2 | NAICS: 713120 |
| 001 | 9125 Riggs Rd<br>Adelphi, MD 20783-1637 | 00076 | 2 | NAICS: 713120 |
| 001 | 2230 Veirs Mill Rd<br>Rockville, MD 20851-1827 | 00077 | 2 | NAICS: 713120 |
| 001 | 1052 MAIDEN CHOICE LANE<br>ARBUTUS, MD 21227 | 00078 | 2 | NAICS: 713120 |
| 001 | 5284 Randolph Rd<br>Rockville, MD 20852-2116 | 00079 | 2 | NAICS: 713120 |
| 001 | 4739 Westland Blvd<br>Arbutus, MD 21227-1320 | 00080 | 2 | NAICS: 713120 |
| 001 | 820 Largo Center Dr<br>Upper Marlboro, MD 20774-3705 | 00081 | 2 | NAICS: 713120 |
| 001 | 9 W Patapsco Ave<br>Baltimore, MD 21225-1604 | 00082 | 2 | NAICS: 713120 |

Servicing Office
and Issue Date

Ohio Regional Office
11/22/16

Countersigned by: _____

*To report a claim, call your Agent or 1-800-362-0000*
**WC 99 06 42 A**

This page intentionally left blank.

**Liberty Mutual.**
**INSURANCE**

*Coverage Is Provided In:*
*Ohio Security Insurance Company*

Policy Number
**XWS (17) 57 61 64 46**
Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From**                    **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No.   19291

**Workers Compensation and Employers Liability Insurance Policy Information Page**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## EXTENSION OF INFORMATION PAGE

| Name Link Code | Location Description | Exposure Record Link | No. of Employees | |
|---|---|---|---|---|
| 001 | 6776 Reisterstown Rd<br>Baltimore, MD 21215-2346 | 00083 | 2 | NAICS: 713120 |
| 001 | 3765 Old Court Rd<br>Pikesville, MD 21208-3902 | 00084 | 2 | NAICS: 713120 |
| 001 | 801 Hungerford Dr<br>Rockville, MD 20850-1727 | 00085 | 2 | NAICS: 713120 |
| 001 | 9846 Liberty Rd<br>Randallstown, MD 21133-2007 | 00092 | 2 | NAICS: 713120 |
| 001 | 5562 Silver Hill Rd<br>District Heights, MD 20747-1104 | 00093 | 2 | NAICS: 713120 |
| 002 | 7553 Ritchie Hwy<br>Glen Burnie, MD 21061-3716 | 00013 | 2 | NAICS: 713120 |
| 002 | 10610 Baltimore Ave Unit B<br>Beltsville, MD 20705-2142 | 00026 | 2 | NAICS: 713120 |
| 005 | 7387A Baltimore-Annaplois Blvd<br>Glen Burnie, MD 21061-3222 | 00028 | 2 | NAICS: 713120 |
| 001 | 921 N 3rd St<br>Harrisburg, PA 17102-2064 | 00056 | 2 | NAICS: 713120 |
| 001 | 4600 Jonestown Rd<br>Harrisburg, PA 17109-6214 | 00057 | 2 | NAICS: 713120 |
| 001 | 404 E High St<br>Carlisle, PA 17013-2606 | 00069 | 2 | NAICS: 713120 |

| Servicing Office<br>and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*
**WC 99 06 42 A**

This page intentionally left blank.

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In:
**Ohio Security Insurance Company**

Policy Number:
**XWS (17) 57 61 64 46**

Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From**          **To**
12:01 am StandardTime
at Insured'sMailingAddress

NCCI Co. No. 19291

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**Named Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

## EXTENSION OF INFORMATION PAGE

| Name Link Code | Location Description | Exposure Record Link | No. of Employees | |
|---|---|---|---|---|
| 001 | 4702 Carlisle Pike Ste 28<br>Mechanicsburg,  PA 17050-3099 | 00074 | 2 | NAICS: 713120 |
| 001 | 807 Bowman St<br>Lebanon, PA 17046-8430 | 00086 | 2 | NAICS: 713120 |
| 001 | 2701 Macarthur Rd<br>Whitehall, PA 18052-3632 | 00087 | 2 | NAICS: 713120 |
| 001 | 1600 Lincoln Way E Unit C<br>Chambersburg, PA 17202-3346 | 00088 | 2 | NAICS: 713120 |
| 001 | 2429 EASTON-NAZARETHRD<br>EASTON, PA 18045 | 00089 | 2 | NAICS: 713120 |
| 001 | 1200 Market St Unit 368<br>Lemoyne, PA 17043-1417 | 00090 | 2 | NAICS: 713120 |
| 001 | 1604 S 4th St<br>Allentown, PA 18103-4922 | 00091 | 2 | NAICS: 713120 |
| 004 | 2501 Paxton St<br>Harrisburg, PA 17111-1034 | 00055 | 2 | NAICS: 713120 |
| 001 | 3023 Wade Hampton Blvd<br>Taylors, SC 29687-2700 | 00049 | 2 | NAICS: 713120 |
| 001 | 201 Mauldin St<br>Greenville, SC 29601 | 00050 | 2 | NAICS: 713120 |
| 001 | 1779 Woodruff  Rd SteB<br>GREENVILLE, SC 29607 | 00051 | 2 | NAICS: 713120 |

| Servicing Office and Issue Date | Ohio Regional Office 11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim,  call your Agent or  1-800-362-0000*
**WC 99 06 42 A**

This page intentionally left blank.

**Liberty Mutual.**
**INSURANCE**

*Coverage Is Provided In The*
**Ohio Security Insurance Company**

Policy Number
**XWS (17) 57 61 64 46**

Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From**                    **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No.   19291

**Workers Compensation and Employers Liability Insurance Policy Information Page**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## EXTENSION OF INFORMATION PAGE

| Name Link Code | Location Description | Exposure Record Link | No. of Employees | |
|---|---|---|---|---|
| 001 | 1170 Woodruff Rd<br>Greenville, SC 29607-4154 | 00052 | 2 | NAICS: 713120 |
| 001 | 609 White Horse Rd<br>Greenville, SC 29605-3531 | 00053 | 2 | NAICS: 713120 |
| 001 | 704 Easley Bridge Rd<br>Greenville, SC 29611-5124 | 00054 | 2 | NAICS: 713120 |
| 008 | 570 W Washington St<br>Greenville, SC 29601-1923 | 00075 | 2 | NAICS: 713120 |
| 006 | 900 E Mccart St<br>Krum, TX 76249-7165 | 00094 | 2 | NAICS: 713120 |
| 001 | 910 Great Bridge Blvd<br>Chesapeake, VA 23320-6642 | 00062 | 2 | NAICS: 713120 |
| 001 | 43 Hidenwood Shopping Ctr<br>Newport News, VA 23606-2200 | 00064 | 2 | NAICS: 713120 |
| 001 | 1075 George Washington Hwy S<br>Chesapeake, VA 23323-6339 | 00065 | 2 | NAICS: 713120 |
| 001 | 1241 Frederick Blvd<br>111<br>Portsmouth, VA 23707-4113 | 00068 | 2 | NAICS: 713120 |
| 001 | 4200 Portsmouth Blvd<br>Chesapeake, VA 23321-2100 | 00072 | 2 | NAICS: 713120 |
| 001 | 1714 W Ocean View Ave<br>Norfolk, VA 23503-1502 | 00073 | 2 | NAICS: 713120 |

| Servicing Office and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*
**WC 99 06 42 A**

This page intentionally left blank.

# Liberty Mutual
## INSURANCE

Coverage Is Provided In

**Ohio Security Insurance Company**

Policy Number
**XWS (17) 57 61 64 46**

Policy Period:
**From** 11/02/2016 **To** 11/02/2017

Endorsement Period:
**From**                    **To**

12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No.  19291

## Workers Compensation and Employers Liability Insurance Policy Information Page

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## EXTENSION OF INFORMATION PAGE

| Name Link Code | Location Description | Exposure Record Link | No. of Employees | |
|---|---|---|---|---|
| 003 | 810 High St Portsmouth, VA 23704-3334 | 00063 | 2 | NAICS: 713120 |

Servicing Office
and Issue Date

Ohio Regional Office
11/22/16

Countersigned by: _____

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 42 A**

This page intentionally left blank.

**Liberty Mutual**
INSURANCE

Coverage Is Provided In:
*Ohio Security Insurance Company*

Policy Number
XWS (17) 57 61 64 46

Policy Period:
**From** 11/02/2016 **To** 11/02/2017

Endorsement Period:
**From** To

12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. 19291

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**Named Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

## EXTENSION OF INFORMATION PAGE

## RISK IDENTIFICATION NUMBER EXTENSION - continued

This extension lists additional RISK ID Numbers that were not printed on the Information Page.

Servicing Office and Issue Date
Ohio Regional Office
11/22/16

Countersigned by: _____

*To report a claim, call your Agent or 1-800-362-0000*
**WC 99 06 42 A**

This page intentionally left blank.

# Liberty Mutual.
**INSURANCE**

*Ohio Security Insurance Company*

**Policy Number**
**XWS (17) 57 61 64 46**

Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From** **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. [ 19291 ]

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**Named Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

## EXTENSION OF INFORMATION PAGE

**ITEM 3**   **C. Other States Insurance:** Part Three of the policy applies to the states, if any, listed here:

**All states except North Dakota, Ohio, Washington, Wyoming and states designated in Item 3.A. on the Information Page.**

Servicing Office   Ohio Regional Office
and Issue Date      11/22/16

Countersigned by: _____

*To report a claim, call your Agent or 1-800-362-0000*
**WC 99 06 42 A**

This page intentionally left blank.

# Liberty Mutual. INSURANCE

*Coverage Is Provided In The*
**Ohio Security Insurance Company**

**Policy Number**
**XWS (17) 57 61 64 46**

Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From** _____ **To** _____
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. **19291**

## Workers Compensation and Employers Liability Insurance Policy Information Page

**Named Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**          State: DISTRICT OF COLUMBIA

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| CLEARCOMM OF TAMPABAY, INC. | | | | |
| 1346 Good Hope Rd SE<br>Washington, DC 20020-6910<br>NLC 001 CSN 001 state 08 exp rec link 00003<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 1.18 | 295.00 |
| 1903A Michigan Ave NE<br>Washington, DC 20018-3334<br>NLC 001 CSN 001 state 08 exp rec link 00004<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 1.18 | 295.00 |
| 3232 Georgia Ave NW Suite102<br>WASHINGTON, DC 20010<br>NLC 001 CSN 001 state 08 exp rec link 00005<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 1.18 | 295.00 |
| 1410 N Capitol St NW 1sf Flr<br>WASHINGTON, DC 20002<br>NLC 001 CSN 001 state 08 exp rec link 00058<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 1.18 | 295.00 |

| Servicing Office and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

This page intentionally left blank.



**Liberty Mutual.**
**INSURANCE**

*Coverage Is Provided In*
*Ohio Security Insurance Company*

**XWS (17) 57 61 64 46**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017

Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. | 19291 |

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE** **STATE:** DISTRICT OF COLUMBIA - continued

**ITEM 4** The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 3909 14th St NW Washington, DC 20011-5438 NLC 001 CSN 001 state 08 exp rec link 00060 Store: Retail NOC | 8017 | 25,000.00 | 1.18 | 295.00 |
| 2305 Benning Rd NE Washington, DC 20002-4826 NLC 001 CSN 001 state 08 exp rec link 00061 Store: Retail NOC | 8017 | 25,000.00 | 1.18 | 295.00 |
| Waiver of Subrogation Premium | 0930 | | | 250.00 |
| Premium for Increased Limits Part Two | 9812 | | 1.1000% | 19.00 |
| Total Subject Premium | | | | 2,039.00 |
| Premium Modified to Reflect Experience Mod. Of | 9898 | | .820 | 1,672.00 |
| Price Point Modification | 9732 | credit | .818 ( | 304.00) |
| Total Estimated Annual Standard Premium | | | | 1,368.00 |
| Premium Discount, if applicable | 0063 | | 3.1000%( | 42.00) |
| Terrorism | 9740 | 150,000.00 | .07 | 105.00 |
| Catastrophe (Other than Certified Acts of Terror.) | 9741 | 150,000.00 | .02 | 30.00 |
| Total Estimated Annual Premium | | | | 1,461.00 |
| Workers' Compensation Policyholder Surcharge | 0935 | | 1.6600% | 23.00 |

Servicing Office and Issue Date | Ohio Regional Office 11/22/16

Countersigned by: _____

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.**
INSURANCE

*Ohio Security Insurance Company*

**XWS (17) 57 61 64 46**
Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

**Workers Compensation and Employers Liability Insurance Policy Information Page**

NCCI Co. No. | 19291 |

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

---

**EXTENSION OF INFORMATION PAGE**  **STATE:** DISTRICT OF COLUMBIA - continued

**ITEM 4** The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| Total Estimated Cost | | | | 1,484.00 |

---

Servicing Office and Issue Date | Ohio Regional Office 11/22/16 | Countersigned by: _____

**To report a claim, call your Agent or 1-800-362-0000**

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In
*Ohio Security Insurance Company*

**XWS (17) 57 61 64 46**
Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From**        **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. | 19291

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**Named Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent**

(800) 444-1744
INSURANCE INTERMEDIARIES INC



**EXTENSION OF INFORMATION PAGE**          State: FLORIDA

**ITEM 4**    The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| CLEARCOMM OF TAMPABAY, INC. | | | | |
| 4548 S Suncoast Blvd<br>Homosassa, FL 34446-1103<br>NLC 001 CSN 001 state 09 exp rec link 00034<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.00 | 500.00 |
| 210 US HWY 41 S<br>INVERNESS, FL 34450<br>NLC 001 CSN 001 state 09 exp rec link 00035<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.00 | 500.00 |
| 5480 Spring Hill Dr<br>Spring Hill, FL 34606-4559<br>NLC 001 CSN 001 state 09 exp rec link 00036<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.00 | 500.00 |
| 8482 Lockwood Ridge Rd<br>Sarasota, FL 34243-2920<br>NLC 001 CSN 001 state 09 exp rec link 00038<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.00 | 500.00 |

| Servicing Office and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

This page intentionally left blank.

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In The
**Ohio Security Insurance Company**

**XWS (17) 57 61 64 46**
Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No.  19291

Workers Compensation and
Employers Liability Insurance Policy
Information Page

**ITEM 1: The Insured**                          Agent & Phone No.

CLEARCOMM OF TAMPABAY, INC.              (800) 444-1744
                                         INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**        **STATE:** FLORIDA - continued

**ITEM 4**  The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 4033 Mariner Blvd<br>Spring Hill, FL 34609-2467<br>NLC 001 CSN 001 state 09 exp rec link 00039<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.00 | 500.00 |
| 11051 Spring Hill Dr<br>Spring Hill, FL 34608-5049<br>NLC 001 CSN 001 state 09 exp rec link 00040<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.00 | 500.00 |
| 3780 Tampa Rd<br>Oldsmar, FL 34677-3041<br>NLC 001 CSN 001 state 09 exp rec link 00041<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.00 | 500.00 |
| 3386 Tampa Rd<br>Palm Harbor, FL 34684-3425<br>NLC 001 CSN 001 state 09 exp rec link 00042<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.00 | 500.00 |

Servicing Office   Ohio Regional Office       Countersigned by: _____
and Issue Date     11/22/16

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

Liberty Mutual. INSURANCE

*Coverage is provided in the*
**Ohio Security Insurance Company**

Workers Compensation and
Employers Liability Insurance Policy
Information Page

**XWS (17) 57 61 64 46**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

**NCCI Co. No.** 19291

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

---

**EXTENSION OF INFORMATION PAGE** **STATE:** FLORIDA - continued

**ITEM 4** The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 10091 Us Highway 19 Port Richey, FL 34668-3742 NLC 001 CSN 001 state 09 exp rec link 00043 Store: Retail NOC | 8017 | 25,000.00 | 2.00 | 500.00 |
| 1611 SE Us Highway 19 Crystal River, FL 34429-4830 NLC 001 CSN 001 state 09 exp rec link 00044 Store: Retail NOC | 8017 | 25,000.00 | 2.00 | 500.00 |
| 4385 Commercial Way Weeki Wachee, FL 34606-1963 NLC 001 CSN 001 state 09 exp rec link 00045 Store: Retail NOC | 8017 | 25,000.00 | 2.00 | 500.00 |
| 1100 N Tuttle Ave Unit 4 Sarasota, FL 34237-3012 NLC 001 CSN 001 state 09 exp rec link 00046 Store: Retail NOC | 8017 | 25,000.00 | 2.00 | 500.00 |

| Servicing Office and Issue Date | Ohio Regional Office 11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

*Coverage Is Provided In*

**Liberty Mutual.**
**INSURANCE**

*Ohio Security Insurance Company*

NCCI Co. No. [19291]

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**XWS (17) 57 61 64 46**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017

Endorsement Period:
**From:**             **To**

12:01 am Standard Time
at Insured's Mailing Address

---

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

---

**EXTENSION OF INFORMATION PAGE**          **STATE:** FLORIDA - continued

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 6224 Commercial Way<br>Weeki Wachee, FL 34613-6325<br>NLC 001 CSN 001 state 09 exp rec link 00047<br>Store: Retail NOC | 8017 | 25,000.00 | 2.00 | 500.00 |
| 36948 State Road 54<br>Zephyrhills, FL 33541-6915<br>NLC 001 CSN 001 state 09 exp rec link 00048<br>Store: Retail NOC | 8017 | 25,000.00 | 2.00 | 500.00 |
| 6581 102nd Ave<br>PINELLAS PARK, FL 33782<br>NLC 001 CSN 001 state 09 exp rec link 00059<br>Store: Retail NOC | 8017 | 25,000.00 | 2.00 | 500.00 |
| CLEARCOMM SOVA, INC<br><br>14312 Spring Hill Dr<br>Spring Hill, FL 34609-5263<br>NLC 007 CSN 001 state 09 exp rec link 00032<br>Store: Retail NOC | 8017 | 25,000.00 | 2.00 | 500.00 |

---

Servicing Office and Issue Date          Ohio Regional Office
11/22/16

Countersigned by: _____

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.**
**INSURANCE**

*Coverage Is Provided In*
**Ohio Security Insurance Company**

Workers Compensation and Employers Liability Insurance Policy Information Page

**XWS (17) 57 61 64 46**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. 19291

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**    **STATE:** FLORIDA - continued

**ITEM 4**  The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| METROPAY INC | | | | |
| 1801 NW Us Highway 19 | | | | |
| Crystal River, FL 34428-6133 | | | | |
| NLC 009 CSN 001 state 09 exp rec link 00033 | | | | |
| Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.00 | 500.00 |
| Waiver of Subrogation Premium | 0930 | | | 250.00 |
| Premium for Increased Limits Part Two | 9812 | | .014% | 119.00 |
| Total Subject Premium | | | | 8,869.00 |
| Premium Modified to Reflect Experience Mod. Of | 9898 | | .820 | 7,273.00 |
| Total Estimated Annual Standard Premium | | | | 7,273.00 |
| Premium Discount, if applicable | 0063 | | .038 ( | 276.00) |
| Terrorism | 9740 | 425,000.00 | .02 | 85.00 |
| Total Estimated Annual Premium | | | | 7,082.00 |

Servicing Office and Issue Date

Ohio Regional Office
11/22/16

Countersigned by: _____

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual**
**INSURANCE**

*Coverage Is Provided In*
*Ohio Security Insurance Company*

Policy Number:
**XWS (17) 57 61 64 46**
Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From** _____ **To** _____
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. [19291]

**Workers Compensation and Employers Liability Insurance Policy Information Page**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |



57616446

006428

560

of 128

65

## EXTENSION OF INFORMATION PAGE          State: LOUISIANA

**ITEM 4**  The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| CLEARCOMM OF TAMPABAY, INC. | | | | |
| 4428 Youree Dr | | | | |
| Shreveport, LA 71105-3621 | | | | |
| NLC 001 CSN 001 state 17 exp rec link 00095 | | | | |
| Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 3.53 | 883.00 |
| Premium for Increased Limits Part Two | 9812 | | .0140% | 12.00 |
| Total Subject Premium | | | | 895.00 |
| Premium Modified to Reflect Experience Mod. Of | 9898 | | .820 | 734.00 |
| Price Point Modification | 9732 | credit | .846 ( | 113.00) |
| Total Estimated Annual Standard Premium | | | | 621.00 |
| Waiver of Subrogation Premium | 9118 | | | 250.00 |
| Premium Discount, if applicable | 0063 | | .0310%( | 27.00) |
| Terrorism | 9740 | 25,000.00 | .02 | 5.00 |
| Catastrophe (Other than Certified Acts of Terror.) | 9741 | 25,000.00 | .02 | 5.00 |
| Total Estimated Annual Premium | | | | 854.00 |

| Servicing Office and Issue Date | Ohio Regional Office 11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

This page intentionally left blank.

# Liberty Mutual.
**INSURANCE**

*Coverage Is Provided In*
**Ohio Security Insurance Company**

**XWS (17) 57 61 64 46**

Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From**        **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No.   19291

## Workers Compensation and Employers Liability Insurance Policy Information Page

**Named Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**      State: MARYLAND

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| CLEARCOMM OF TAMPABAY, INC. | | | | |
| 638 Reisterstown Rd Ste 12 Baltimore, MD 21208-5112 NLC 001 CSN 001 state 19 exp rec link 00006 Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 7730 Wise Ave Dundalk, MD 21222-3200 NLC 001 CSN 001 state 19 exp rec link 00007 Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 6846 Liberty Rd RANDALLSTOWN, MD 21133 NLC 001 CSN 001 state 19 exp rec link 00008 Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 5403 East Dr Arbutus, MD 21227-2605 NLC 001 CSN 001 state 19 exp rec link 00009 Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |

| Servicing Office and Issue Date | Ohio Regional Office 11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

This page intentionally left blank.

# Liberty Mutual.
**INSURANCE**

**Ohio Security Insurance Company**

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**XWS (17) 57 61 64 46**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:**                    **To**
12:01 am Standard Time
at Insured's Mailing Address

**NCCI Co. No.** 19291

---

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

---

**EXTENSION OF INFORMATION PAGE**      **STATE:** MARYLAND - continued

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 7000 Arundel Mills Circle 55<br>HANOVER, MD 21076<br>NLC 001 CSN 001 state 19 exp rec link 00010<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 1134 S Charles St<br>Baltimore, MD 21230-4240<br>NLC 001 CSN 001 state 19 exp rec link 00011<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 10300 Little Patuxent Parkway 65<br>COLUMBIA, MD 21044<br>NLC 001 CSN 001 state 19 exp rec link 00012<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 6000 Greenbelt Rd Ste 52<br>Greenbelt, MD 20770-1018<br>NLC 001 CSN 001 state 19 exp rec link 00014<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |

---

Servicing Office and Issue Date      Ohio Regional Office      Countersigned by: _____
11/22/16

**To report a claim, call your Agent or 1-800-362-0000**

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In
**Ohio Security Insurance Company**

**XWS (17) 57 61 64 46**
Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. 19291

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**          **STATE:** MARYLAND - continued

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 3222 Greenmount Ave<br>Baltimore, MD 21218-3438<br>NLC 001 CSN 001 state 19 exp rec link 00015<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 229 N Howard St<br>Baltimore, MD 21201-3555<br>NLC 001 CSN 001 state 19 exp rec link 00016<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 8610 Washington Blvd Ste 106<br>Jessup, MD 20794-9601<br>NLC 001 CSN 001 state 19 exp rec link 00018<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 400 West Lexington St E LM 10/11<br>BALTIMORE, MD 21201<br>NLC 001 CSN 001 state 19 exp rec link 00019<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |

Servicing Office and Issue Date      Ohio Regional Office      Countersigned by: _____
11/22/16

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.** INSURANCE

*Coverage Is Provided In*
**Ohio Security Insurance Company**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. 19291

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**  **STATE:** MARYLAND - continued

**ITEM 4**  The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 5138 Park Heights Ave<br>Baltimore, MD 21215-5817<br>NLC 001 CSN 001 state 19 exp rec link 00020<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 114 E Patapsco Ave<br>Brooklyn, MD 21225-1745<br>NLC 001 CSN 001 state 19 exp rec link 00021<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 1640-1642 Pennsylvania Ave<br>Baltimore, MD 21217-3115<br>NLC 001 CSN 001 state 19 exp rec link 00022<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 41 Shipping Pl Ste 1ST<br>Dundalk, MD 21222-4393<br>NLC 001 CSN 001 state 19 exp rec link 00025<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |

| Servicing Office and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.**
**INSURANCE**

*Coverage Is Provided In*
*Ohio Security Insurance Company*

**XWS (17) 57 61 64 46**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

**NCCI Co. No.** 19291

**Workers Compensation and**
**Employers Liability Insurance Policy**
**Information Page**

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE** **STATE:** MARYLAND - continued

**ITEM 4** The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 224 N Eutaw St<br>Baltimore, MD 21201-1709<br>NLC 001 CSN 001 state 19 exp rec link 00029<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 2463 Chillum Rd A-15<br>HYATTSVILLE, MD 20782<br>NLC 001 CSN 001 state 19 exp rec link 00030<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 950 Largo Town Center Dr No 2<br>UPPER MARLBORO, MD 20774<br>NLC 001 CSN 001 state 19 exp rec link 00031<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 6901 Security Blvd Ste 885<br>Windsor Mill, MD 21244-8415<br>NLC 001 CSN 001 state 19 exp rec link 00070<br>Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |

Servicing Office
and Issue Date

Ohio Regional Office
11/22/16

Countersigned by: _____

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

# Liberty Mutual.
**INSURANCE**

Coverage Is Provided In The
**Ohio Security Insurance Company**

**XWS (17) 57 61 64 46**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017

Endorsement Period:
**From:**      **To**

12:01 am Standard Time
at Insured's Mailing Address

**NCCI Co. No.** [19291]

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**     **STATE:** MARYLAND - continued

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 8200 Perry Hall Blvd 5517-5518 NOTTINGHAM, MD 21236 NLC 001 CSN 001 state 19 exp rec link 00071 Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 9125 Riggs Rd Adelphi, MD 20783-1637 NLC 001 CSN 001 state 19 exp rec link 00076 Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 2230 Veirs Mill Rd Rockville, MD 20851-1827 NLC 001 CSN 001 state 19 exp rec link 00077 Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |
| 1052 MAIDEN CHOICE LANE ARBUTUS, MD 21227 NLC 001 CSN 001 state 19 exp rec link 00078 Store: Retail NOC | 8017 | 25,000.00 | 2.27 | 568.00 |

Servicing Office and Issue Date    Ohio Regional Office   11/22/16

Countersigned by: _____

**To report a claim, call your Agent or 1-800-362-0000**

**WC 99 06 48 B**

This page intentionally left blank.

# Liberty Mutual.
## INSURANCE

**Ohio Security Insurance Company**

**XWS (17) 57 61 64 46**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017

Endorsement Period:
**From:** **To**

12:01 am Standard Time
at Insured's Mailing Address

**NCCI Co. No.** | 19291 |

**Workers Compensation and Employers Liability Insurance Policy Information Page**

---

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

---

**EXTENSION OF INFORMATION PAGE**      **STATE:** MARYLAND - continued

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 5284 Randolph Rd<br>Rockville, MD 20852-2116<br>NLC 001 CSN 001 state 19 exp rec link 00079<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.27 | 568.00 |
| 4739 Westland Blvd<br>Arbutus, MD 21227-1320<br>NLC 001 CSN 001 state 19 exp rec link 00080<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.27 | 568.00 |
| 820 Largo Center Dr<br>Upper Marlboro, MD 20774-3705<br>NLC 001 CSN 001 state 19 exp rec link 00081<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.27 | 568.00 |
| 9 W Patapsco Ave<br>Baltimore, MD 21225-1604<br>NLC 001 CSN 001 state 19 exp rec link 00082<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.27 | 568.00 |

---

| Servicing Office and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.**
INSURANCE

Coverage Is Provided In
**Ohio Security Insurance Company**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. 19291

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE** **STATE:** MARYLAND - continued

**ITEM 4** The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 6776 Reisterstown Rd<br>Baltimore, MD 21215-2346<br>NLC 001 CSN 001 state 19 exp rec link 00083<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.27 | 568.00 |
| 3765 Old Court Rd<br>Pikesville, MD 21208-3902<br>NLC 001 CSN 001 state 19 exp rec link 00084<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.27 | 568.00 |
| 801 Hungerford Dr<br>Rockville, MD 20850-1727<br>NLC 001 CSN 001 state 19 exp rec link 00085<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.27 | 568.00 |
| 9846 Liberty Rd<br>Randallstown, MD 21133-2007<br>NLC 001 CSN 001 state 19 exp rec link 00092<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.27 | 568.00 |

| Servicing Office and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In
*Ohio Security Insurance Company*

XWS (17) 57 61 64 46

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. 19291

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**      **STATE:**   MARYLAND - continued

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 5562 Silver Hill Rd<br>District Heights, MD 20747-1104<br>NLC 001 CSN 001 state 19 exp rec link 00093<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.27 | 568.00 |
| CLEARCOMM BAWA INC | | | | |
| 7553 Ritchie Hwy<br>Glen Burnie, MD 21061-3716<br>NLC 002 CSN 001 state 19 exp rec link 00013<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.27 | 568.00 |
| 10610 Baltimore Ave Unit B<br>Beltsville, MD 20705-2142<br>NLC 002 CSN 001 state 19 exp rec link 00026<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.27 | 568.00 |
| CLEARCOMM NA INC | | | | |
| 7387A Baltimore-Annaplois Blvd<br>Glen Burnie, MD 21061-3222<br>NLC 005 CSN 001 state 19 exp rec link 00028<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.27 | 568.00 |

Servicing Office   Ohio Regional Office          Countersigned by: _____
and Issue Date     11/22/16

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

# Liberty Mutual. INSURANCE

*Coverage Is Provided In* **The**
*Ohio Security Insurance  Company*

**NCCI Co. No.** | 19291 |

## Workers  Compensation  and Employers  Liability  Insurance  Policy Information  Page

**XWS (17) 57 61 64 46**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement  Period:
**From:**                          **To**
12:01 am StandardTime
at Insured'sMailingAddress

---

**ITEM 1: The Insured**                                      **Agent & Phone No.**

CLEARCOMM  OF TAMPABAY,  INC.                    (800)  444-1744
                                                 INSURANCE  INTERMEDIARIES  INC

---

**EXTENSION OF INFORMATION PAGE**          **STATE:**  MARYLAND - continued

**ITEM 4**   The  premium  for this policy will be determined  by our Manuals  of Rules, Classifications,  Rates and Rating  Plans.
All information  required  below is subject to verification  and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| Waiver of Subrogation Premium | 0930 | | | 250.00 |
| Premium for Increased Limits Part Two | 9812 | | .0110% | 225.00 |
| Total Subject Premium | | | | 20,923.00 |
| Premium Modified to Reflect Experience Mod. Of | 9898 | | .820 | 17,157.00 |
| Price Point Modification | 9732 | | .836 ( | 2,814.00) |
| Total Estimated Annual Standard Premium | | | | 14,343.00 |
| Premium Discount, if applicable | 0063 | | .0310%( | 445.00) |
| Foreign Terrorism | 9740 | 900,000.00 | .05 | 450.00 |
| Catastrophe Prov. Domestic Terror., EQ., Ind. Acc. | 9741 | 900,000.00 | .02 | 180.00 |
| Total Estimated Annual Premium | | | | 14,528.00 |

Servicing Office      Ohio Regional Office              Countersigned  by: _____
and Issue Date        11/22/16

*To report a claim,  call your Agent or  1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.**
**INSURANCE**

*Coverage Is Provided In*
*Ohio Security Insurance Company*

**XWS (17) 57 61 64 46**

Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From**              **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. | 19291 |

**Workers Compensation and Employers Liability Insurance Policy Information Page**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
|  | INSURANCE INTERMEDIARIES INC |

**EXTENSION OF INFORMATION PAGE**          State: PENNSYLVANIA

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| CLEARCOMM OF TAMPABAY, INC. | | | | |
| 921 N 3rd St<br>Harrisburg, PA 17102-2064<br>NLC 001 CSN 001 state 37 exp rec link 00056<br>Retail Store NOC OC | | | | |
| | 0928 | 25,000.00 | 3.36 | 840.00 |
| 4600 Jonestown Rd<br>Harrisburg, PA 17109-6214<br>NLC 001 CSN 001 state 37 exp rec link 00057<br>Retail Store NOC OC | | | | |
| | 0928 | 25,000.00 | 3.36 | 840.00 |
| 404 E High St<br>Carlisle, PA 17013-2606<br>NLC 001 CSN 001 state 37 exp rec link 00069<br>Store Retail NOC | | | | |
| | 0928 | 25,000.00 | 3.36 | 840.00 |
| 4702 Carlisle Pike Ste 28<br>Mechanicsburg, PA 17050-3099<br>NLC 001 CSN 001 state 37 exp rec link 00074<br>Retail Store NOC OC | | | | |
| | 0928 | 25,000.00 | 3.36 | 840.00 |

| Servicing Office and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

| 11/22/16 | 57616446 | N0200579 | 560 | OCAOPPNO | AGENT COPY | 006428 | PAGE 87 OF 128 |

This page intentionally left blank.

Coverage Is Provided In

**Liberty Mutual.**
INSURANCE

Ohio Security Insurance Company

**XWS (17) 57 61 64 46**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** To
12:01 am Standard Time
at Insured's Mailing Address

**NCCI Co. No.** 19291

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**     **STATE:** PENNSYLVANIA - continued

**ITEM 4** The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 807 Bowman St<br>Lebanon, PA 17046-8430<br>NLC 001 CSN 001 state 37 exp rec link 00086<br>Retail Store NOC OC | 0928 | 25,000.00 | 3.36 | 840.00 |
| 2701 Macarthur Rd<br>Whitehall, PA 18052-3632<br>NLC 001 CSN 001 state 37 exp rec link 00087<br>Retail Store NOC OC | 0928 | 25,000.00 | 3.36 | 840.00 |
| 1600 Lincoln Way E Unit C<br>Chambersburg, PA 17202-3346<br>NLC 001 CSN 001 state 37 exp rec link 00088<br>Retail Store NOC OC | 0928 | 25,000.00 | 3.36 | 840.00 |
| 2429 EASTON-NAZARETH RD<br>EASTON, PA 18045<br>NLC 001 CSN 001 state 37 exp rec link 00089<br>Retail Store NOC OC | 0928 | 25,000.00 | 3.36 | 840.00 |

| Servicing Office and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.**
**INSURANCE**

*Coverage Is Provided In*
**Ohio Security Insurance Company**

**XWS (17) 57 61 64 46**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:**      **To**
12:01 am Standard Time
at Insured's Mailing Address

**NCCI Co. No.** | 19291 |

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**ITEM 1: The Insured**      **Agent & Phone No.**

CLEARCOMM OF TAMPABAY, INC.      (800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**      **STATE:** PENNSYLVANIA - continued

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 1200 Market St Unit 368<br>Lemoyne, PA 17043-1417<br>NLC 001 CSN 001 state 37 exp rec link 00090<br>Retail Store NOC OC | | | | |
| | 0928 | 25,000.00 | 3.36 | 840.00 |
| 1604 S 4th St<br>Allentown, PA 18103-4922<br>NLC 001 CSN 001 state 37 exp rec link 00091<br>Retail Store NOC OC | | | | |
| | 0928 | 25,000.00 | 3.36 | 840.00 |
| CLEAR COMM PENN INC | | | | |
| 2501 Paxton St<br>Harrisburg, PA 17111-1034<br>NLC 004 CSN 001 state 37 exp rec link 00055<br>Retail Store NOC OC | | | | |
| | 0928 | 25,000.00 | 3.36 | 840.00 |
| Premium for Increased Limits Part Two | 9812 | | .0140% | 129.00 |
| Waiver of Subrogation Premium | 0930 | | | 250.00 |
| Total Subject Premium | | | | 9,619.00 |
| Total Estimated Annual Standard Premium | | | | 9,619.00 |
| Premium Discount, if applicable | 0063 | | .0310%( | 298.00) |

| Servicing Office and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: _____ |
|---|---|---|

**To report a claim, call your Agent or 1-800-362-0000**

**WC 99 06 48 B**

This page intentionally left blank.

# Liberty Mutual
### INSURANCE

Ohio Security Insurance Company

XWS (17) 57 61 64 46

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. 19291

## Workers Compensation and Employers Liability Insurance Policy Information Page

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC



**EXTENSION OF INFORMATION PAGE**      **STATE:** PENNSYLVANIA - continued

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| Terrorism | 9740 | 275,000.00 | .03 | 83.00 |
| Catastrophe (Other than Certified Acts of Terror.) | 9741 | 275,000.00 | .02 | 55.00 |
| Total Estimated Annual Premium | | | | 9,459.00 |
| Employers Assessment PA | 0938 | | .0170 | 161.00 |
| Total Estimated Cost | | | | 9,620.00 |

Servicing Office   Ohio Regional Office
and Issue Date     11/22/16

Countersigned by: _____

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In The
*Ohio Security Insurance Company*

Policy Number
**XWS (17) 57 61 64 46**
Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From**                    **To**
12:01 am StandardTime
at Insured'sMailingAddress

NCCI Co. No. | 19291 |

**Workers Compensation and Employers Liability Insurance Policy Information Page**

| **Named Insured** | **Agent** |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

**EXTENSION OF INFORMATION PAGE**          State: SOUTH CAROLINA

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| **Classifications** | **Code No.** | **Premium Basis - Total Estimated Annual Remuneration** | **Rate per $100 of Remuneration** | **Estimated Annual Premium** |
|---|---|---|---|---|
| CLEARCOMM OF TAMPABAY, INC. | | | | |
| 3023 Wade Hampton Blvd Taylors, SC 29687-2700 NLC 001 CSN 001 state 39 exp rec link 00049 Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.39 | 598.00 |
| 201 Mauldin St Greenville, SC 29601 NLC 001 CSN 001 state 39 exp rec link 00050 Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.39 | 598.00 |
| 1779 Woodruff Rd SteB GREENVILLE, SC 29607 NLC 001 CSN 001 state 39 exp rec link 00051 Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.39 | 598.00 |
| 1170 Woodruff Rd Greenville, SC 29607-4154 NLC 001 CSN 001 state 39 exp rec link 00052 Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.39 | 598.00 |

| Servicing Office and Issue Date | Ohio Regional Office 11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

This page intentionally left blank.

**Liberty Mutual. INSURANCE**

*Coverage Is Provided In The*
*Ohio Security Insurance Company*

**XWS (17) 57 61 64 46**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. | 19291 |

**Workers Compensation and Employers Liability Insurance Policy Information Page**

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**     **STATE:** SOUTH CAROLINA - continued

**ITEM 4**  The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 609 White Horse Rd<br>Greenville, SC 29605-3531<br>NLC 001 CSN 001 state 39 exp rec link 00053<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.39 | 598.00 |
| 704 Easley Bridge Rd<br>Greenville, SC 29611-5124<br>NLC 001 CSN 001 state 39 exp rec link 00054<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.39 | 598.00 |
| CLEARCOMM NC INC | | | | |
| 570 W Washington St<br>Greenville, SC 29601-1923<br>NLC 008 CSN 001 state 39 exp rec link 00075<br>Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 2.39 | 598.00 |
| Waiver of Subrogation Premium | 0930 | | | 250.00 |
| Premium for Increased Limits Part Two | 9812 | | .0110% | 46.00 |
| Total Subject Premium | | | | 4,482.00 |
| Premium Modified to Reflect Experience Mod. Of | 9898 | | .820 | 3,675.00 |
| Price Point Modification | 9732 | credit | .791 ( | 768.00) |

| Servicing Office and Issue Date | Ohio Regional Office<br>11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.**
INSURANCE

*Ohio Security Insurance Company*

Workers Compensation and
Employers Liability Insurance Policy
Information Page

NCCI Co. No. | 19291 |

XWS (17) 57 61 64 46

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

**ITEM 1: The Insured**                                    **Agent & Phone No.**

CLEARCOMM OF TAMPABAY, INC.                    (800) 444-1744
                                               INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**          **STATE:** SOUTH CAROLINA - continued

**ITEM 4**  The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| Total Estimated Annual Standard Premium | | | | 2,907.00 |
| Premium Discount, if applicable | 0063 | | .0380%( | 110.00) |
| Terrorism | 9740 | 175,000.00 | .02 | 35.00 |
| Catastrophe (Other than Certified Acts of Terror.) | 9741 | 175,000.00 | .02 | 35.00 |
| Total Estimated Annual Premium | | | | 2,867.00 |

Servicing Office     Ohio Regional Office              Countersigned by: _____
and Issue Date       11/22/16

*To report a claim, call your Agent or 1-800-362-0000*

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.**
INSURANCE

*Coverage Is Provided In*
*Ohio Security Insurance Company*

Policy Number
**XWS (17) 57 61 64 46**

Policy Period:
**From** 11/02/2016 **To** 11/02/2017

Endorsement Period:
**From**      **To**

12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. [19291]

**Workers Compensation and Employers Liability Insurance Policy Information Page**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

**EXTENSION OF INFORMATION PAGE**      State: TEXAS

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| CLEARCOMM OF TEXAS, INC | | | | |
| 900 E Mccart St | | | | |
| Krum, TX 76249-7165 | | | | |
| NLC 006 CSN 001 state 42 exp rec link 00094 | | | | |
| Store: Retail NOC & Drivers | | | | |
| | 8017 | 25,000.00 | 1.51 | 378.00 |
| Blanket Waiver of Subrogation Premium | 0930 | | | 8.00 |
| Premium for Increased Limits Part Two | 9812 | | .0140% | 5.00 |
| Total Subject Premium | | | | 391.00 |
| Premium Modified to Reflect Experience Mod. Of | 9898 | | .820 | 321.00 |
| Price Point Modification | 9732 | | .989 ( | 4.00) |
| Total Estimated Annual Standard Premium | | | | 317.00 |
| Premium Discount, if applicable | 0063 | | .0830%( | 26.00) |
| Terrorism | 9740 | 25,000.00 | .02 | 5.00 |
| Total Estimated Annual Premium | | | | 296.00 |

| Servicing Office and Issue Date | Ohio Regional Office 11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

This page intentionally left blank.

**Liberty Mutual** INSURANCE

*Coverage Is Provided In:*
*Ohio Security Insurance Company*

Policy Number
**XWS (17) 57 61 64 46**
Policy Period:
**From** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From          To**
12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. 19291

**Workers Compensation and Employers Liability Insurance Policy Information Page**

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 INSURANCE INTERMEDIARIES INC |



**EXTENSION OF INFORMATION PAGE**          State: VIRGINIA

**ITEM 4**  The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| CLEARCOMM OF TAMPABAY, INC. | | | | |
| 910 Great Bridge Blvd Chesapeake, VA 23320-6642 NLC 001 CSN 001 state 45 exp rec link 00062 Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 1.90 | 475.00 |
| 43 Hidenwood Shopping Ctr Newport News, VA 23606-2200 NLC 001 CSN 001 state 45 exp rec link 00064 Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 1.90 | 475.00 |
| 1075 George Washington Hwy S Chesapeake, VA 23323-6339 NLC 001 CSN 001 state 45 exp rec link 00065 Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 1.90 | 475.00 |
| 1241 Frederick Blvd Portsmouth, VA 23707-4113 NLC 001 CSN 001 state 45 exp rec link 00068 Store: Retail NOC | | | | |
| | 8017 | 25,000.00 | 1.90 | 475.00 |

| Servicing Office and Issue Date | Ohio Regional Office 11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

This page intentionally left blank.

# Liberty Mutual.
INSURANCE

**Ohio Security Insurance Company**

**XWS (17) 57 61 64 46**

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017

Endorsement Period:
**From:** To
12:01 am StandardTime
at Insured'sMailingAddress

**NCCI Co. No.** 19291

Workers Compensation and
Employers Liability Insurance Policy
Information Page

**ITEM 1: The Insured**

**Agent & Phone No.**

CLEARCOMM OF TAMPABAY, INC.

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**        **STATE:** VIRGINIA - continued

**ITEM 4**  The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| 4200 Portsmouth Blvd Chesapeake, VA 23321-2100 NLC 001 CSN 001 state 45 exp rec link 00072 Store: Retail NOC | 8017 | 25,000.00 | 1.90 | 475.00 |
| 1714 W Ocean View Ave Norfolk, VA 23503-1502 NLC 001 CSN 001 state 45 exp rec link 00073 Store: Retail NOC | 8017 | 25,000.00 | 1.90 | 475.00 |
| WIRELESS WORKS LLC | | | | |
| 810 High St Portsmouth, VA 23704-3334 NLC 003 CSN 001 state 45 exp rec link 00063 Store: Retail NOC | 8017 | 25,000.00 | 1.90 | 475.00 |
| Waiver of Subrogation Premium | 0930 | | | 250.00 |
| Premium for Increased Limits Part Two | 9812 | | .0110% | 37.00 |
| Total Subject Premium | | | | 3,612.00 |
| Premium Modified to Reflect Experience Mod. Of | 9898 | | .820 | 2,962.00 |
| Total Estimated Annual Standard Premium | | | | 2,962.00 |

Servicing Office   Ohio Regional Office              Countersigned by: _____
and Issue Date     11/22/16

**To report a claim, call your Agent or 1-800-362-0000**

**WC 99 06 48 B**

This page intentionally left blank.

**Liberty Mutual.**
**INSURANCE**

Coverage Is Provided In
**Ohio Security Insurance Company**

Workers Compensation and
Employers Liability Insurance Policy
Information Page

NCCI Co. No. [19291]

XWS (17) 57 61 64 46

Policy Period:
**From:** 11/02/2016 **To** 11/02/2017
Endorsement Period:
**From:** **To**
12:01 am Standard Time
at Insured's Mailing Address

**ITEM 1: The Insured**

CLEARCOMM OF TAMPABAY, INC.

**Agent & Phone No.**

(800) 444-1744
INSURANCE INTERMEDIARIES INC

**EXTENSION OF INFORMATION PAGE**          **STATE:** VIRGINIA - continued

**ITEM 4**   The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis - Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| Premium Discount, if applicable | 0063 | | .0310%( | 92.00) |
| Expense Constant | 0900 | | | 260.00 |
| Terrorism | 9740 | 175,000.00 | .04 | 70.00 |
| Total Estimated Annual Premium | | | | 3,200.00 |

Servicing Office   Ohio Regional Office       Countersigned by: _____
and Issue Date    11/22/16

**To report a claim, call your Agent or 1-800-362-0000**

**WC 99 06 48 B**

This page intentionally left blank.

## Ohio Security Insurance Company

**Policy Number**
**XWS (17) 57 61 64 46**

Policy Period:
**From** 11/02/2016 **To** 11/02/2017

Endorsement Period:
**From**                    **To**

12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No.   19291

## Workers Compensation and Employers Liability Insurance Policy Information Page

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 INSURANCE INTERMEDIARIES INC |



## EXTENSION OF INFORMATION PAGE

## POLICY FORMS AND ENDORSEMENTS



This section lists all the Forms and Endorsements that make up your policy. Refer to these documents as needed for detailed information concerning your coverage.

| FORM NUMBER | TITLE | STATE(S) Applicable |
|---|---|---|
| DNE-1A | Deductible Notice of Election | TX |
| WC 00 03 10 | Sole Proprietors, Partners, Officers and Others Coverage Endorsement | MD DC SC LA PA VA FL |
| WC 00 03 13 | Waiver of Our Right to Recover from Others Endorsement | MD DC SC LA PA VA FL |
| WC 00 04 06 | Premium Discount Endorsement | MD DC SC LA PA VA TX |
| WC 00 04 06 A | Premium Discount Endorsement | FL |
| WC 00 04 14 | Notification of Change in Ownership Endorsement | FL MD DC SC LA VA TX |
| WC 00 04 19 | Premium Due Date Endorsement | MD DC SC LA PA VA FL |
| WC 00 04 21 D | Catastrophe (Other Than Certified Acts of Terrorism) Premium Endorsement | MD DC SC LA PA |
| WC 00 04 22 B | Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement | MD DC SC LA PA VA TX |
| WC 08 06 01 | District of Columbia Cancelation Endorsement | DC |
| WC 09 03 03 | Florida Employers Liability Coverage Endorsement | FL |
| WC 09 04 03 B | Florida Terrorism Risk Insurance Program Reauthorization Act Endorsement | FL |





| Servicing Office and Issue Date | Ohio Regional Office 11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

This page intentionally left blank.

**Liberty Mutual. INSURANCE**

Policy Number
**XWS (17) 57 61 64 46**

Policy Period:
**From** 11/02/2016 **To** 11/02/2017

Endorsement Period:
**From**            **To**

12:01 am Standard Time
at Insured's Mailing Address

NCCI Co. No. [19291]

## Workers Compensation and Employers Liability Insurance Policy Information Page

| Named Insured | Agent |
|---|---|
| CLEARCOMM OF TAMPABAY, INC. | (800) 444-1744 |
| | INSURANCE INTERMEDIARIES INC |

## EXTENSION OF INFORMATION PAGE

## POLICY FORMS AND ENDORSEMENTS  - continued

This section lists all the Forms and Endorsements that make up your policy. Refer to these documents as needed for detailed information concerning your coverage.

| FORM NUMBER | TITLE | STATE(S) Applicable |
|---|---|---|
| WC 09 04 07 | Florida Non-Cooperation With Premium Audit Endorsement | FL |
| WC 09 06 06 | Florida Employment and Wage Information Release Endorsement | FL |
| WC 17 03 03 | Louisiana Duty to Defend Endorsement | LA |
| WC 17 06 01 F | Louisiana Amendatory Endorsement | LA |
| WC 17 06 02 A | Louisiana Cost Containment Act Endorsement | LA |
| WC 19 06 01 F | Maryland Cancellation and Nonrenewal Endorsement | MD |
| WC 19 06 02 | Maryland Notification of 45-Day Underwriting Period Endorsement | MD |
| WC 37 04 05 | Pennsylvania Merit Rating Plan Endorsement | PA |
| WC 37 06 01 | Special Pennsylvania Endorsement--Inspection Of Manuals | PA |
| WC 37 06 02 | Pennsylvania Notice | PA |
| WC 37 06 03 A | Pennsylvania Act 86-1986 Endorsement | PA |
| WC 37 06 04 | Pennsylvania Employer Assessment Endorsement | PA |
| WC 42 03 01 H | Texas Amendatory Endorsement | TX |
| WC 42 03 04 B | Texas Waiver of Our Right To Recover From Others Endorsement | TX |
| WC 42 03 10 | Texas Sole Proprietors, Partners, Officers and Others Coverage Endorsement | TX |
| WC 42 04 07 | Texas - Audit Premium And Retrospective Premium Endorsement | TX |
| WC 45 06 02 | Virginia Amendatory Endorsement | VA |
| WC 99 04 20 | Texas Terrorism Premium Endorsement | TX |
| WC 99 06 14 | Participating Provision Endorsement | FL |

| Servicing Office and Issue Date | Ohio Regional Office 11/22/16 | Countersigned by: _____ |
|---|---|---|

*To report a claim, call your Agent or 1-800-362-0000*

This page intentionally left blank.

**WORKERS COMPENSATION  AND EMPLOYERS LIABILITY INSURANCE  POLICY**          **WC 00 03 10**
(Ed. 4-84)

### SOLE PROPRIETORS, PARTNERS, OFFICERS AND OTHERS COVERAGE ENDORSEMENT

An election  was made by or on behalf of each person described  in the Schedule  to be subject to the workers compensation   law of the state named in the Schedule.  The premium  basis for the policy  includes  the remuneration   of such persons.

Schedule

Persons                                                                                               State

Sole  Proprietor:
                                                                                         DC

Partners:
                                                                                         DC

                                                                                         DC

Officers:
Yousef Sihweil                                                                           DC
Omar Masir
Noor Masri

                                                                                         DC

Others:
                                                                                         DC

**WC 00 03 10**
(Ed. 4-84)                                       1 of 2

Copyright 1983 National  Council on Compensation Insurance, Inc.

**WC 00 03 10**                    **WORKERS COMPENSATION  AND EMPLOYERS LIABILITY INSURANCE  POLICY**
(Ed. 4-84)

This endorsement  changes  the policy  to which  it is attached  and is effective  on the date issued  unless
otherwise  stated.

**(The information  below is required  only when  this endorsement  is issued subsequent  to preparation  of
the policy.)**

Endorsement  Effective                              Endorsement  No.   0001

Policy  Effective   11/02/2016                       Premium

State

Policy  No.   XWS  (17) 57 61 64 46

Insured    CLEARCOMM  OF TAMPABAY,  INC.

Insurance  Company   Ohio Security  Insurance  Company         19291

Countersigned  by  _____

**WC 00 03 10**
(Ed. 4-84)                              2 of 2

Copyright 1983 National  Council on Compensation Insurance, Inc.

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**    **WC 00 03 13**
(Ed. 4-84)



### WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.)

This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

Schedule

BLANKET

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

| | |
|---|---|
| Endorsement Effective | Endorsement No. 0002 |
| Policy Effective   11/02/2016 | Premium |
| State | |
| Policy No.   XWS (17) 57 61 64 46 | |
| Insured   CLEARCOMM OF TAMPABAY, INC. | |

Insurance Company   Ohio Security Insurance Company        19291

Countersigned by _____

**WC 00 03 13**
(Ed. 4-84)

Copyright 1983 National Council on Compensation Insurance, Inc.

This page intentionally left blank.

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**                    WC 00 04 06
                                                                                      (Ed. 4-84)

---

### PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

Schedule

1. **State**                                    **Estimated Eligible Premium**

| | First | Next | Next | |
|---|---|---|---|---|
| | $5,000 | $95,000 | $400,000 | Balance |
| TEXAS | Nil | 9.5% | 11.9% | 12.4% |
| | $5,000 | $95,000 | $400,000 | Balance |
| DISTRICT OF COLUMBIA | Nil | 3.5% | 5.0% | 7.0% |
| LOUISIANA | | | | |
| MARYLAND | | | | |
| PENNSYLVANIA | | | | |
| VIRGINIA | | | | |
| | $10,000 | $190,000 | $1,550,000 | BALANCE |
| SOUTH CAROLINA | NIL | 5.1% | 6.5% | 7.5% |

2. Average percentage discount:

**WC 00 04 06**                               1 of 2
(Ed. 4-84)

© **1995 National Council on Compensation Insurance, Inc.**

**WORKERS COMPENSATION  AND EMPLOYERS LIABILITY INSURANCE  POLICY**   WC 00 04 06
(Ed. 4-84)

## PREMIUM  DISCOUNT  ENDORSEMENT

3.   Other policies:


4.   If there are no entries in Items 1, 2 and 3 of the Schedule, see the Premium Discount Endorsement attached to your policy number:

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement  Effective                              Endorsement  No.   0003

Policy Effective   11/02/2016                       Premium

State

Policy No.   XWS (17) 57 61 64 46

Insured    CLEARCOMM OF TAMPABAY,  INC.


Insurance Company   Ohio Security Insurance Company      19291

                              Countersigned   by _____

**WC 00 04 06**
(Ed. 4-84)                                      2   of   2

© **1995 National Council on Compensation Insurance, Inc.**

**WORKERS COMPENSATION  AND EMPLOYERS LIABILITY INSURANCE  POLICY**   **WC 00 04 06 A**
(Ed. 8-95)

### PREMIUM  DISCOUNT  ENDORSEMENT

The premium  for this policy  and the policies,  if any, listed in Item 3 of the Schedule  may be eligible  for a discount.  This endorsement  shows  your estimated  discount  in Items 1 or 2 of the Schedule.  The final calculation  of premium  discount will be determined  by our manuals and your premium  basis as determined by audit.  Premium  subject to retrospective  rating is not subject to premium  discount.

Schedule



1.  **State**                                 **Estimated  Eligible  Premium**

|  | First | Next | Next |  |
| --- | --- | --- | --- | --- |
|  | $10,000 | $190,000 | $1,550,000 | BALANCE |
| FLORIDA | NIL | 5.1% | 6.5% | 7.5% |

2.   Average  percentage  discount:

**WC 00 04 06 A**                                    1   of   2
(Ed. 8-95)

© **1995 National  Council on Compensation Insurance, Inc.**

**WORKERS COMPENSATION  AND EMPLOYERS LIABILITY INSURANCE  POLICY**   WC 00 04 06 A
(Ed. 8-95)

### PREMIUM  DISCOUNT  ENDORSEMENT

3.   Other  policies:

4.   If there  are  no  entries  in  Items  1,  2  and  3  of  the  Schedule,  see  the  Premium  Discount  Endorsement
attached  to  your  policy  number:

This  endorsement  changes  the  policy  to  which  it  is  attached  and  effective  on  the  date  issued  unless  other-
wise  stated.

**(The information  below  is required  only  when  this  endorsement  is  issued  subsequent  to  preparation  of
the  policy.)**

Endorsement  Effective                             Endorsement  No.   0004

Policy  Effective   11/02/2016                      Premium

State

Policy  No.   XWS  (17)  57 61 64 46

Insured    CLEARCOMM  OF  TAMPABAY,  INC.

Insurance  Company    Ohio  Security  Insurance  Company        19291

Countersigned   by  _____

**WC 00 04 06 A**
(Ed. 8-95)                                          2   of   2

© **1995 National  Council on Compensation Insurance, Inc.**

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**                    **WC 00 04 21 D**
(Ed. 1-15)

## CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of a Catastrophe (other than Certified Acts of Terrorism) as that term is defined below. Your policy provides coverage for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism). This premium charge does not provide funding for Certified Acts of Terrorism contemplated under the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 B), attached to this policy.

For purposes of this endorsement, the following definitions apply:

- Catastrophe (other than Certified Acts of Terrorism): Any single event, resulting from an Earthquake, Noncertified Act of Terrorism, or Catastrophic Industrial Accident, which results in aggregate workers compensation losses in excess of $50 million.

- Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity.

- Noncertified Act of Terrorism: An event that is not certified as an Act of Terrorism by the Secretary of Treasury pursuant to the Terrorism Risk Insurance Act of 2002 (as amended) but that meets all of the following criteria:

  a. It is an act that is violent or dangerous to human life, property, or infrastructure;

  b. The act results in damage within the United States, or outside of the United States in the case of the premises of United States missions or air carriers or vessels as those terms are defined in the Terrorism Risk Insurance Act of 2002 (as amended); and

  c. It is an act that has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

- Catastrophic Industrial Accident: A chemical release, large explosion, or small blast that is localized in nature and affects workers in a small perimeter the size of a building.

The premium charge for the coverage your policy provides for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism) is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate | Premium |
|-------|------|---------|
|       |      |         |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                          Endorsement No.  0004

Policy Effective   11/02/2016                   Premium

State

Policy No.  XWS (17) 57 61 64 46

Insured   CLEARCOMM OF TAMPABAY, INC.


Insurance Company   Ohio Security Insurance Company          19291

Countersigned by  _____

**WC 00 04 21 D**
(Ed. 1-15)

© Copyright 2015 National Council on Compensation Insurance, Inc. All Rights Reserved.

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

WC 00 04 22 B
(Ed. 1-15)

## TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT DISCLOSURE ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2015. It serves to notify you of certain limitations under the Act, and that your insurance carrier is charging premium for losses that may occur in the event of an Act of Terrorism.

Your policy provides coverage for workers compensation losses caused by Acts of Terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

**Definitions**

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto, including any amendments resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2015.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States as meeting all of the following requirements:

a. The act is an act of terrorism.

b. The act is violent or dangerous to human life, property or infrastructure.

c. The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.

d. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means any loss resulting from an act of terrorism (and, except for Pennsylvan ia, including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2015, and ending on December 31, 2020, an amount equal to 20% of our direct earned premiums, during the immediately preceding calendar year.

**Limitation of Liability**

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a calendar year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**

1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceed:

   a. $100,000,000, with respect to such Insured Losses occurring in calendar year 2015, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.

   b. $120,000,000, with respect to such Insured Losses occurring in calendar year 2016, the United States Government would pay 84% of our Insured Losses that exceed our Insurer Deductible.

WC 00 04 22 B
(Ed. 1-15)

© Copyright 2015 National Council on Compensation Insurance, Inc. All Rights Reserved.

**WC 00 04 22 B**                    WORKERS COMPENSATION  AND EMPLOYERS LIABILITY INSURANCE  POLICY
(Ed. 1-15)

    c.  $140,000,000, with  respect to such Insured Losses occurring  in calendar year 2017, the United States Government  would pay 83% of our Insured Losses that exceed our Insurer Deductible.

    d.  $160,000,000, with  respect to such Insured Losses occurring  in calendar year 2018, the United States Government  would pay 82% of our Insured Losses that exceed our Insurer Deductible.

    e.  $180,000,000, with  respect to such Insured Losses occurring  in calendar year 2019, the United States Government  would pay 81% of our Insured Losses that exceed our Insurer Deductible.

    f.  $200,000,000, with  respect to such Insured Losses occurring  in calendar year 2020, the United States Government  would pay 80% of our Insured Losses that exceed our Insurer Deductible.

2. Notwithstanding   item 1 above, the United States Government  will  not make any payment  under the Act for any portion  of Insured Losses that exceed $100,000,000,000.

3. The premium  charge for the coverage your policy provides  for Insured Losses is included  in the amount shown  in Item 4 of the Information   Page or in the Schedule  below.

## Schedule

| State | Rate | Premium |
|-------|------|---------|

This endorsement  changes the policy  to which  it is attached  and is effective  on the date issued  unless otherwise  stated.

**(The information  below is required  only when this endorsement  is issued subsequent  to preparation  of the policy.)**

Endorsement  Effective                                  Endorsement  No.   0004

Policy Effective    11/02/2016                          Premium

State

Policy No.   XWS (17) 57 61 64 46

Insured    CLEARCOMM  OF TAMPABAY,  INC.

Insurance  Company    Ohio Security  Insurance  Company          19291

                                        Countersigned  by  _____

**WC 00 04 22 B**
(Ed. 1-15)

© Copyright 2015 National  Council on Compensation Insurance, Inc. All Rights Reserved.

**WORKERS COMPENSATION  AND EMPLOYERS LIABILITY INSURANCE  POLICY**     **WC 37 06 04**

(Ed. 10-99)

### PENNSYLVANIA

### EMPLOYER ASSESSMENT ENDORSEMENT

Act 57 of 1997 requires that "...the assessments for the maintenance  of the Subsequent  Injury Fund, the Workmen's  Compensation  Supersedes Fund and the Workmen's  Compensation  Administration   Fund under sections 306.2, 443 and 446 of the act of June 2, 1915 (P.L. 736, No. 338), known as the "Workers'  Compensation Act, shall be imposed, collected and remitted  through insurers in accordance with regulations  promulgated by the Department  of Labor and Industry."

### EMPLOYER ASSESSMENT  FORMULA:

| | | |
|---|---|---|
| **Employer Assessment** | = Act 57 of 1997 Employer  **X** Assessment  Factor | Employer  Assessment Premium  Base |

**Act 57 of 1997 Employer Assessment Factor**

A factor  expressed to four decimal  places proposed  by the Pennsylvania  Compensation  Rating Bureau and approved  by the Pennsylvania  Insurance  Commissioner.

**Employer Assessment Premium Base**

Calculation  of Employer  Assessment  Premium  Base proceeds  by adding  back to the total policy  premium the amount  of any Small  Deductible  Premium  Credit or Large Deductible  Premium  Credit.

### CODE 0938

**EMPLOYER ASSESSMENT FACTOR**

**EMPLOYER ASSESSMENT**

0.017

161.00

This endorsement  changes the policy  to which  it is attached  and is effective  on the date issued unless otherwise  stated.

**(The information  below  is required  only when this endorsement  is issued subsequent  to preparation  of the policy.)**

Endorsement  Effective

Endorsement  No.  0004

Policy  Effective   11/02/2016

Premium

State

Policy  No.   XWS  (17) 57 61 64 46

Insured    CLEARCOMM  OF TAMPABAY,  INC.

Insurance  Company   Ohio Security  Insurance  Company        19291

Countersigned  by _____

**WC 37 06 04**
(Ed. 10-99)
**Copyright, 1999 Pennsylvania Compensation Rating Bureau**

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**   WC 42 03 04 B
(Ed. 6-14)



### TEXAS WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

The premium for this endorsement is shown in the Schedule.

**Schedule**

**1.**   Specific Waiver

Name of person or organization

X   Blanket Waiver

Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.

2.   Operations:
All Texas Operations

3.   Premium

The premium charge for this endorsement shall be 2              percent of the premium developed on payroll in connection with work performed for the above person(s) or organization(s) arising out of the operations described.

4.   Advance Premium

**WC 42 03 04 B**
(Ed. 6-14)

1 of 2

© Copyright 2014 National Council on Compensation Insurance, Inc. All Rights Reserved.

**WC 42 03 04 B**                WORKERS COMPENSATION  AND EMPLOYERS LIABILITY INSURANCE  POLICY
(Ed. 6-14)

This endorsement  changes the policy  to which  it is attached  and is effective  on the date issued  unless otherwise  stated.

**(The information  below is required  only when  this endorsement  is issued subsequent  to preparation  of the policy.)**

Endorsement  Effective                                    Endorsement  No.   0004

Policy  Effective   11/02/2016                            Premium

State

Policy  No.   XWS  (17) 57 61 64 46

Insured    CLEARCOMM  OF TAMPABAY,  INC.


Insurance  Company    Ohio Security  Insurance  Company        19291

**WC 42 03 04 B**                            Countersigned  by  _____
(Ed. 6-14)

© Copyright 2014 National  Council on Compensation Insurance, Inc. All Rights Reserved.

**WORKERS COMPENSATION  AND EMPLOYERS LIABILITY INSURANCE  POLICY**       **WC 42 03 10**
(Ed. 1-97)

---

### SOLE PROPRIETORS, PARTNERS, OFFICERS AND OTHERS COVERAGE ENDORSEMENT

Pursuant to Section 406.097, Labor Code, sole proprietors,  partner(s) or corporate  executive  officer(s) of the named insured are covered under this workers' compensation  policy, unless  specifically  excluded  from coverage through  an endorsement  to the policy. Such persons may be named in the Schedule below and the premium  basis for the policy shall include their remuneration.

For employees  excluded  from workers' compensation  coverage by law, an election  has been made by or on behalf of each person described in "Others"  in the Schedule to be subject to the workers'  compensation  law of the state named in the Schedule.  Such persons shall be named in the Schedule below and the premium basis for the policy shall include their remuneration.

Schedule

Persons                                                                                    State
Sole Proprietors:

Partners:

Officers:
Yousef Sihweil
Omar Masir
Noor Masri

**WC 42 03 10**
(Ed. 1-97)                                                 1 of 2

**WC 42 03 10**                    **WORKERS COMPENSATION  AND EMPLOYERS LIABILITY INSURANCE  POLICY**
(Ed. 1-97)

Others:

This endorsement  changes the policy  to which  it is attached  and is effective  on the date issued  unless otherwise  stated.

**(The information  below  is required  only when  this endorsement  is issued subsequent  to preparation  of the policy.)**

Endorsement  Effective                              Endorsement  No.   0004

Policy  Effective    11/02/2016                      Premium

State

Policy  No.   XWS  (17) 57 61 64 46

Insured    CLEARCOMM  OF TAMPABAY,  INC.

Insurance  Company    Ohio Security  Insurance  Company          19291

                              Countersigned   by  _____



# OUTSTANDING
## BALANCE DUE

| ACCOUNT NUMBER | COMPANY |
|---|---|
| 701976650 | 02 |

| ACCOUNT OF: | NOTICE DATE | AMOUNT DUE |
|---|---|---|
| CLEARCOMM OF TAMPABAY, INC. | 04/27/2018 | $97,105.76 |

**Liberty Mutual INSURANCE**

62 Maple Avenue
Keene, NH 03431

Â  Please reference your account number on all correspondence
Â  Return this stub with your payment
Â  Make check payable and remit to:

Member Companies:
OHIO SECURITY INSURANCE COMPANY
THE OHIO CASUALTY INSURANCE COMPANY

LIBERTY MUTUAL INSURANCE
PO BOX 2051
KEENE NH 03431 7051

02701976650 000000000 0009710576 0009710576 4 0

---

| ACCOUNT OF: | COMPANY | ACCOUNT | AGENT: |
|---|---|---|---|
| CLEARCOMM OF TAMPABAY, INC. | 02 | 701976650 | AGENT CODE: 0024902 |
| 119 ROESLER RD | | | TELEPHONE: (800) 444-1744 |
| GLEN BURNIE MD 21060 | | | INSURANCE INTERMEDIARIES INC |
| | | | 280 N HIGH ST STE 300 |
| | | | COLUMBUS OH 43215-2535 |

For Billing Inquiries: 1-866-290-2920
mybusinessonline.libertymutual.com

Please be advised that this is second notification of balance due. Our records indicate that the amount due as indicated has not been paid. if the balance is still unpaid after 15 days, the account may be placed in collections.

If payment has been sent, please disregard this notice.

Customer Accounting - Direct Bill

| POLICY NUMBER | PREMIUM/FEES | AUDIT ADJUSTMENT/ CANCEL CREDIT | CREDITS/ PAYMENTS | AMOUNT DUE |
|---|---|---|---|---|
| BZS57616446 | 77,885.86 | 48,773.10- | | 29,112.76 |
| USO57616446 | 3,248.00 | 2,029.00- | | 1,219.00 |
| XWS57616446 | 115,525.00 | | 48,758.00- | 66,767.00 |
| SERVICE FEES | 7.00 | | | 7.00 |
| ACCOUNT SUMMARY | 196,665.86 | 50,802.10- | 48,758.00- | 97,105.76 |

| STATEMENT ISSUED TO: |
|---|

CLEARCOMM OF TAMPABAY, INC.
119 ROESLER RD
GLEN BURNIE MD 21060



Exhibit
4
Ohio Security v. Clearcomm

I14310

**ADDRESS CHANGE:**  NAME _____

STREET _____

CITY/STATE/ZIP _____

ACCOUNT NO. _____